affordable and prevent foreclosure. In 2012, Mr. Draper submitted a complete application for a loan modification to FNF Servicing, Inc.

1264.   After sending FNF Servicing, Inc. the completed modification application, Mr. Draper was placed into a trial period. However, FNF Servicing, Inc. increased the amount of his monthly payment, so Mr. Draper could not afford to participate in the modification.

1265.   Despite the explicit instructions from the VA, Mr. Draper's request for assistance went ignored. FNF Servicing, Inc. never evaluated his financial circumstances or established the reason for his default. Instead, his loan was referred to foreclosure.

1266.   FNF Servicing, Inc. never offered nor made any attempts to arrange a face-to-face interview with the Plaintiff.

1267.   In approximately 2011, the Defendants began sending various correspondences to Mr. Draper in an attempt to collect the alleged debt and further threatened that if the amounts demanded were not paid, they would conduct an alleged foreclosure sale. Upon information and belief, Defendants maintain copies of these letters in their records.

1268.   Upon information and belief, these correspondences were form correspondences that the Defendants sent to every consumer who they attempted to collect a debt and conduct a foreclosure sale on their home.

1269.   Upon information and belief, in their initial correspondence to Mr. Draper and the putative class members, Defendants identify the relevant loan servicers as the creditor to whom the debt is owed, rather than the investor or owner of Mr. Draper's and the putative class members' note.

1270.   Upon information and belief, this correspondence to Mr. Draper and the putative class members also stated that that his promissory note or other evidence of his indebtedness

secured by the deed of trust on the subject property was unavailable at the time that the letter was sent.

1271. Va. Code § 55-59.1 provides the following:

§ 55-59.1. Notices required before sale by trustee to owners, lienors, etc.; if note lost.

...

B. If a note or other evidence of indebtedness secured by a deed of trust is lost or for any reason cannot be produced and the beneficiary submits to the trustee an affidavit to that effect, the trustee may nonetheless proceed to sale, provided the beneficiary has given written notice to the person required to pay the instrument that the instrument is unavailable and a request for sale will be made of the trustee upon expiration of 14 days from the date of mailing of the notice. The notice shall be sent by certified mail, return receipt requested, to the last known address of the person required to pay the instrument as reflected in the records of the beneficiary and shall include the name and mailing address of the trustee.

1272. Upon information and belief, the beneficiary of the note had not submitted to the trustee an affidavit to the effect that the note or other evidence of indebtedness secured by the subject deed of trust is lost or for any reason could not have been produced.

1273. Upon information and belief, Defendants also sent Mr. Draper a letter providing him with notice of the foreclosure sale and further included a copy of the alleged substitute trustee appointment document.

1274. Upon information and belief, the letter was sent by Defendant Shapiro on behalf of Defendant PFCV, and the foreclosure notice provided contact information for the alleged trustee as c/o Defendant Shapiro. This demonstrates the impartiality and impropriety of Defendant PFCV as substitute trustee under Mr. Draper's Deed of Trust.

1275. The correspondence from Defendants to Mr. Draper and the putative class members demonstrates that one or more of the Defendants' statements were false.

1276.  The various letters to Mr. Draper and putative class further included an alleged Substitution of Trustee document dated April 11, 2011, which was filed in the Chesterfield County Circuit Court on May 16, 2011.

1277.  This document stated that Freedom Mortgage Corporation was the Noteholder of Mr. Draper's mortgage loan at the time that it was prepared.  Upon information and belief, this statement was false.

1278.  The Substitution of Trustee document stated that Freedom Mortgage Corporation had appointed Defendant PFCV as substitute trustee.

1279.  Defendants claim that the Substitution of Trustee document gives them the authority to foreclose on Mr. Draper's home, by appointing Defendant PFCV each as substitute trustees.

1280.  Mr. Draper's Deed of Trust contains specific provisions for the sale of his Note and the change of loan servicer. Specifically, section 20 states:

> The Note (together with this Security Instrument) can be sold one or more times without prior notice to the Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to the sale of the Note.

1281.  Mr. Draper's Deed of Trust explicitly recognizes a difference between the "Loan Servicer" and the "Noteholder".

1282.  In section 24, Mr. Draper's Deed of Trust provides that only the "Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder."

1283.  Section 22 of Mr. Draper's Deed of Trust provides the Lender with the right of acceleration and to invoke a power of sale.

1284. Mr. Draper's Deed of Trust identifies the Lender of his mortgage as Freedom Mortgage Corporation. However, upon information and belief, that was the noteholder of Mr. Draper's loan at the time that the Substitution of Trustee document was prepared.

1285. The Substitution of Trustee document was purportedly signed by Carole L. Bass, a vice president for LoanCare, a Division of FNF Servicing, acting as "Attorney-in-Fact" for the purported Noteholder, Freedom Mortgage Corporation. LoanCare was not an "attorney-in-fact" for Freedom Mortgage Corporation.

1286. Further, at the time that the Substitution of Trustee document was prepared, LoanCare was not the party secured by the Deed of Trust, nor did it hold greater than 50% of the monetary obligations secured by the Deed of Trust.

1287. Therefore, this document was defective, particularly given that Virginia Code §55-59(9) requires that only the party secured by the deed of trust or the holders of greater than 50% of the monetary obligations secured thereby have the right to appoint a substitute trustee.

1288. The document was thereafter allegedly notarized. Even after that, the date on the notary block was filled out, presumably once the first page of the document was created so that the dates would match.

1289. Upon information and belief, the individuals who signed any sworn statements on behalf of the "Noteholders" or thereafter allegedly notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing. Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

1290.   In short - at no time did the alleged Substitute Trustee, Defendant PFCV, actually provide the requisite notice of the foreclosure sale in a manner that complied with Virginia law.

1291.   Further, Defendants had access to a copy of the Deed of Trust and knew or should have known that Mr. Draper's loan was a VA loan and the noteholder was required to comply with Title 38 of the United States Code and Regulations implemented by the VA, in that they were expressly incorporated into Mr. Draper's Deed of Trust.

1292.   Because of this, Defendants, as fiduciary, had a duty to ensure that these requirements were followed prior to the acceleration of the mortgage loan that was subject to the Deed of Trust.

1293.   Specifically, the Deed of Trust states: "the provision that the Lender may accelerate payment of the secured indebtedness pursuant to Covenant 18 of the Security Instrument, are hereby amended or negated to the extent necessary to conform such instruments to said Title or Regulations."

1294.   Despite this express mandate in the Deed of Trust, prior to conducting the foreclosure sale, aside from a one page referral form, Defendants did not require *any* documents from the lender, servicer or noteholder confirming that Title 38 or the relevant regulations were followed.

1295.   Because the Defendants were allegedly appointed substitute trustee, they had a fiduciary duty under the Deed of Trust to ensure that the prerequisites to acceleration and foreclosure were followed.

1296.   Defendants breached this duty to Mr. Draper and the putative class members.

### *Defendants Foreclose on Mr. Draper's Home*

1297. Defendants' correspondence to Mr. Draper stated that his home would be foreclosed and sold unless he paid the entire balance they claimed was due on the Note in full prior to the date of the scheduled foreclosure sale.

1298. The foreclosure sale allegedly took place on May 10, 2012 and a trustee's deed dated May 10, 2012 (hereafter "the Trustee's Deed"), which purported to convey the property to a Grantee, was subsequently filed in the Chesterfield County Circuit Court on August 16, 2012.

1299. The Trustee's Deed stated that Freedom Mortgage Corporation was the current Noteholder and Defendant PFCV was the current Substitute Trustees. Upon information and belief, these statements were false.

1300. Upon information and belief, the individuals who signed the sworn statements on the Trustee's Deed purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing. Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

1301. Furthermore, according to Mr. Draper's Deed of Trust, in the event of a foreclosure sale, the Trustee is required to deliver title to the highest bidder at the sale.

1302. Trustees failed to deliver the Trustee's Deed conveying property to the highest bidder, and instead conveyed the property to a third party who was not the highest bidder at the auction.

1303. Upon information and belief, the Defendants thereafter filed a foreclosure accounting statement with the Circuit Court Commissioner of Accounts for Chesterfield County (hereafter "the Accounting Statement").

1304. Upon information and belief, the Defendants made certain misrepresentations about the accounting of the proceeds obtained from the foreclosure sale.

1305. Defendants made further misrepresentations to the Commissioner when they submitted the fraudulently created substitute trustee and trustee's deed documents, which the Commissioner relied on when it thereafter approved the accounting of the foreclosure sale.

1306. Defendants knew or should have known that this and each of the foregoing misrepresentations that they made were false.

1307. As a result of the acts and omissions of the Defendants, Mr. Draper has suffered actual damages and injury, including but not limited to, emotional distress, mental anguish, and suffering.

### AA. <u>Defendants' Specific Conduct Regarding Sean Craft</u>

1308. Mr. Craft borrowed $185,200.00 for his mortgage, as evidenced by a promissory note ("Note"), dated March 22, 2007. The Note was payable to National City Bank.

1309. The Note was secured by a Deed of Trust dated March 22, 2007 and recorded in the Clerk's office of Circuit Court of Richmond City. Mr. Craft's Note and Deed of Trust obligated him to repay National City Bank.

1310. Upon information and belief, PNC Mortgage acquired the servicing rights of the loan. As servicer, PNC Mortgage acted on behalf of the owner of the loan to conduct certain customary servicing functions such as collecting and recording payments, communicating with the homeowner, and assessing late fees.

1311. Around 2010, Mr. Craft began experiencing financial hardship and fell behind on his mortgage. In order to avoid foreclosure and save his home, Mr. Craft attempted to obtain a loan modification from PNC Mortgage.

1312. Mr. Craft submitted a complete loan application in or around 2011. PNC Mortgage told him that he had not submitted all of the required information. Mr. Craft then resubmitted all required documents in order to comply with PNC Mortgage's requirements.

1313. Despite Mr. Craft's cooperation with PNC Mortgage, they denied his application for a loan modification because he was unemployed.

1314. In approximately 2011, the Defendants began sending various correspondences to Mr. Craft in an attempt to collect the alleged debt and further threatened that if the amounts demanded were not paid, they would conduct an alleged foreclosure sale. Upon information and belief, Defendants maintain copies of these letters in their records.

1315. Upon information and belief, these correspondences were form correspondences that the Defendants sent to every consumer from whom they attempted to collect a debt and thereafter conduct a foreclosure sale on their home.

1316. Upon information and belief, in their initial correspondence to Mr. Craft and the putative class members, Defendants identify the relevant loan servicers as the creditor to whom the debt is owed, rather than the investor or owner of Mr. Craft's and the putative class members' note.

1317. Upon information and belief, this correspondence to Mr. Craft and the putative class members also stated that that his promissory note or other evidence of his indebtedness secured by the deed of trust on the subject property was unavailable at the time that the letter was sent.

1318. Va. Code § 55-59.1 provides the following:

§ 55-59.1. Notices required before sale by trustee to owners, lienors, etc.; if note lost.

     ...

B. If a note or other evidence of indebtedness secured by a deed of trust is lost or for any reason cannot be produced and the beneficiary submits to the trustee an affidavit to that effect, the trustee may nonetheless proceed to sale, provided the beneficiary has given written notice to the person required to pay the instrument that the instrument is unavailable and a request for sale will be made of the trustee upon expiration of 14 days from the date of mailing of the notice. The notice shall be sent by certified mail, return receipt requested, to the last known address of the person required to pay the instrument as reflected in the records of the beneficiary and shall include the name and mailing address of the trustee.

1319.   Upon information and belief, the beneficiary of the note had not submitted to the trustee an affidavit to the effect that the note or other evidence of indebtedness secured by the subject deed of trust is lost or for any reason could not have been produced.

1320.   Upon information and belief, Defendants also sent Mr. Craft a letter providing him with notice of the foreclosure sale and further included a copy of the alleged substitute trustee appointment document.

1321.   Upon information and belief, the letter was sent by Defendant Shapiro on behalf of Defendant PFCV, and the foreclosure notice provided contact information for the alleged trustee as c/o Defendant Shapiro. This demonstrates the impartiality and impropriety of Defendant PFCV as substitute trustee under Mr. Craft's Deed of Trust.

1322.   The correspondence from Defendants to Mr. Craft and the putative class members demonstrates that one or more of the Defendants' statements were false.

1323.   The various letters to Mr. Craft and putative class further included an alleged Substitution of Trustee document. The Substitution of Trustee document sent to Mr. Craft was dated January 30, 2012 and was filed in the Richmond City Circuit Court on March 2, 2012.

1324.   This document stated that PNC Mortgage, a Division of PNC Bank, National Association was the Noteholder of Mr. Craft's mortgage loan at the time that it was prepared. Upon information and belief, this statement was false.

1325. Accordingly, at the time that the Substitution of Trustee document was prepared, PNC Mortgage, a Division of PNC Bank, National Association was not secured by the Deed of Trust, nor did it hold more than 50% of the monetary obligations secured thereby.

1326. The Substitution of Trustee document stated that PNC Mortgage, a Division of PNC Bank, National Association had appointed Defendant PFCV as substitute trustee. Upon information and belief, this information is false, particularly given that Virginia Code §55-59(9) requires that only the party secured by the deed of trust or the holders of greater than 50% of the monetary obligations secured thereby have the right to appoint a substitute trustee.

1327. Defendants claim that the Substitution of Trustee document gives them the authority to foreclose on Mr. Craft's home, by appointing Defendant PFCV as substitute trustee.

1328. Mr. Craft's Deed of Trust contains specific provisions for the sale of his Note and the change of loan servicer. Specifically, section 20 states:

> The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to the sale of the Note.

1329. Mr. Craft's Deed of Trust explicitly recognizes a difference between the "Loan Servicer" and the "Noteholder".

1330. In section 24, Mr. Craft's Deed of Trust provides that only the "Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder."

1331. Section 22 of Mr. Craft's Deed of Trust provides the Lender with the right of acceleration and to invoke a power of sale.

1332. Mr. Craft's Deed of Trust identifies the Lender of his mortgage as National City Bank. Any authority to appoint a substitute trustee would have to come from National City Bank or a subsequent noteholder. No such authority appears to exist.

1333. The Substitution of Trustee document was purportedly signed by Crissy Winchester, an "authorized signer" for the purported Noteholder – PNC Mortgage, a Division of PNC Bank, National Association. The document was thereafter allegedly notarized. Even after that, the date on the notary block was filled out, presumably once the first page of the document was created so that the dates would match.

1334. Upon information and belief, the individuals who signed any sworn statements on behalf of the "Noteholders" or thereafter allegedly notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing. Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

1335. The Defendants failed to disclose the creditor to whom the debt was owed and the noteholder of his loan in their correspondences to Mr. Craft, and further falsely represented in the substitution of trustee document that PNC Mortgage, a Division of PNC Bank, National Association was the current noteholder of his loan.

1336. In short - at no time did the alleged Substitute Trustee, Defendant PFCV, actually provide the requisite notice of the foreclosure sale in a manner that complied with Virginia law.

### *Defendants Foreclose on Mr. Craft's Home*

1337.  Defendants' correspondence to Mr. Craft stated that his home would be foreclosed and sold unless he paid the entire balance they claimed was due on the Note in full prior to the date of the scheduled foreclosure sale.

1338.  The foreclosure sale allegedly took place on March 22, 2012 and a trustee's deed dated April 12, 2012 ("the Trustee's Deed"), which purported to convey the property to a Grantee, was subsequently filed in the Richmond City Circuit Court on April 17, 2012.

1339.  The Trustee's Deed stated that PFCV was the current Substitute Trustee and Noteholder. Upon information and belief, these statements were false.

1340.  Upon information and belief, the individuals who signed the sworn statements on the Trustee's Deed purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing.  Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

1341.  Furthermore, according to Mr. Craft's Deed of Trust, in the event of a foreclosure sale, the Trustee is required to deliver title to the highest bidder at the sale.

1342.  The Trustee failed to deliver the Trustee's Deed conveying the property to the highest bidder, and instead conveyed the property to a third party who was not the highest bidder at the auction.

1343.  Upon information and belief, the Defendants thereafter filed a foreclosure accounting statement with the Circuit Court Commissioner of Accounts for Richmond City ("the Accounting Statement").

1344.  Upon information and belief, the Defendants made certain misrepresentations about the accounting of the proceeds obtained from the foreclosure sale.

1345. Defendants made further misrepresentations to the Commissioner when they submitted the fraudulently created substitute trustee and trustee's deed documents, which the Commissioner relied on when it thereafter approved the accounting of the foreclosure sale.

1346. Defendants knew or should have known that this and each of the foregoing misrepresentations that they made were false.

1347. As a result of the acts and omissions of the Defendants, Mr. Craft has suffered actual damages and injury, including but not limited to, emotional distress, mental anguish, and suffering.

**BB. Defendants' Specific Conduct Regarding Christopher Tomasek**

1348. Mr. Tomasek borrowed $120,000.00 for his mortgage, as evidenced by a promissory note ("Note"), dated February 29, 2008. The Note was payable to Lendia, LLC.

1349. The Note was secured by a Deed of Trust dated February 29, 2008 and recorded in the Clerk's office of Circuit Court of Henrico County. Mr. Tomasek's Note and Deed of Trust obligated him to repay Lendia, LLC.

1350. At this time, the Deed of Trust was assigned a Mortgage Identification Number ("MIN") so that the servicing rights and ownership rights of the mortgage loan can be tracked electronically on MERS.

1351. Upon information and belief, CitiMortgage, Inc. acquired the servicing rights of the loan. As servicer, CitiMortgage, Inc. acted on behalf of the owner of the loan to conduct certain customary servicing functions such as collecting and recording payments, communicating with the homeowner, and assessing late fees.

1352. Around 2010, Mr. Tomasek began experiencing financial hardship and fell behind on his mortgage.

1353. In approximately 2011, the Defendants began sending various correspondences to Mr. Tomasek in an attempt to collect the alleged debt and further threatened that if the amounts demanded were not paid, they would conduct an alleged foreclosure sale. Upon information and belief, Defendants maintain copies of these letters in their records.

1354. Upon information and belief, these correspondences were form correspondences that the Defendants sent to every consumer from whom they attempted to collect a debt and thereafter conduct a foreclosure sale on their home.

1355. Upon information and belief, in their initial correspondence to Mr. Tomasek and the putative class members, Defendants identify the relevant loan servicers as the creditor to whom the debt is owed, rather than the investor or owner of Mr. Tomasek's and the putative class members' note.

1356. Upon information and belief, this correspondence to Mr. Tomasek and the putative class members also stated that that his promissory note or other evidence of his indebtedness secured by the deed of trust on the subject property was unavailable at the time that the letter was sent.

1357. Va. Code § 55-59.1 provides the following:

§ 55-59.1. Notices required before sale by trustee to owners, lienors, etc.; if note lost.

> ...
>> B. If a note or other evidence of indebtedness secured by a deed of trust is lost or for any reason cannot be produced and the beneficiary submits to the trustee an affidavit to that effect, the trustee may nonetheless proceed to sale, provided the beneficiary has given written notice to the person required to pay the instrument that the instrument is unavailable and a request for sale will be made of the trustee upon expiration of 14 days from the date of mailing of the notice. The notice shall be sent by certified mail, return receipt requested, to the last known address of the person required to pay the instrument as reflected in the records of the beneficiary and shall include the name and mailing address of the trustee.

1358.   Upon information and belief, the beneficiary of the note had not submitted to the trustee an affidavit to the effect that the note or other evidence of indebtedness secured by the subject deed of trust is lost or for any reason could not have been produced.

1359.   Upon information and belief, Defendants also sent Mr. Tomasek a letter providing him with notice of the foreclosure sale and further included a copy of the alleged substitute trustee appointment document.

1360.   Upon information and belief, the letter was sent by Defendant Shapiro on behalf of Defendant PFCV, and the foreclosure notice provided contact information for the alleged trustee as c/o Defendant Shapiro. This demonstrates the impartiality and impropriety of Defendant PFCV as substitute trustee under Mr. Tomasek's Deed of Trust.

1361.   The correspondence from Defendants to Mr. Tomasek and the putative class members demonstrates that one or more of the Defendants' statements were false.

1362.   The various letters to Mr. Tomasek and putative class further included an alleged Substitution of Trustee document. The Substitution of Trustee document sent to Mr. Tomasek was dated September 27, 2011 and was filed in the Henrico County Circuit Court on October 17, 2011.

1363.   This document stated that Citibank, Inc. was the Noteholder of Mr. Tomasek's mortgage loan at the time that it was prepared.  Upon information and belief, this statement was false.

1364.   Upon information and belief, at the time that the Substitution of Trustee document was prepared, Citibank, Inc. was not secured by the Deed of Trust, nor did it hold more than 50% of the monetary obligations secured thereby.

1365.  The Substitution of Trustee document stated that Citibank, Inc. had appointed Defendant PFCV as substitute trustee. Upon information and belief, this information is false, particularly given that Virginia Code §55-59(9) requires that only the party secured by the deed of trust or the holders of greater than 50% of the monetary obligations secured thereby have the right to appoint a substitute trustee.

1366.  Defendants claim that the Substitution of Trustee document gives them the authority to foreclose on Mr. Tomasek's home, by appointing Defendant PFCV as substitute trustee.

1367.  Mr. Tomasek's Deed of Trust contains specific provisions for the sale of his Note and the change of loan servicer. Specifically, section 20 states:

> The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to the sale of the Note.

1368.  Mr. Tomasek's Deed of Trust explicitly recognizes a difference between the "Loan Servicer" and the "Noteholder".

1369.  In section 24, Mr. Tomasek's Deed of Trust provides that only the "Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder."

1370.  Section 22 of Mr. Tomasek's Deed of Trust provides the Lender with the right of acceleration and to invoke a power of sale.

1371. Mr. Tomasek's Deed of Trust identifies the Lender of his mortgage as Lendia, LLC. Any authority to appoint a substitute trustee would have to come from Lendia, LLC or a subsequent noteholder. No such authority appears to exist.

1372. The Substitution of Trustee document was purportedly signed by Michael Gervich, an assistant vice president for the purported Noteholder – Citibank, Inc. The document was thereafter allegedly notarized. Even after that, the date on the notary block was filled out, presumably once the first page of the document was created so that the dates would match.

1373. Upon information and belief, the individuals who signed any sworn statements on behalf of the "Noteholders" or thereafter allegedly notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing. Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

1374. The Defendants failed to disclose the creditor to whom the debt was owed and the noteholder of his loan in their correspondences to Mr. Tomasek, and further falsely represented in the substitution of trustee document that Citibank, Inc. was the current noteholder of his loan.

1375. In short - at no time did the alleged Substitute Trustee, Defendant PFCV, actually provide the requisite notice of the foreclosure sale in a manner that complied with Virginia law.

### Defendants Foreclose on Mr. Tomasek's Home

1376. Defendants' correspondence to Mr. Tomasek stated that his home would be foreclosed and sold unless he paid the entire balance they claimed was due on the Note in full prior to the date of the scheduled foreclosure sale.

1377. The foreclosure sale allegedly took place on April 19, 2012 and a trustee's deed dated June 22, 2012 ("the Trustee's Deed"), which purported to convey the property to a Grantee, was subsequently filed in the Henrico County Circuit Court on June 28, 2012.

1378. The Trustee's Deed stated that PFCV was the current Substitute Trustee and Noteholder. Upon information and belief, these statements were false.

1379. Upon information and belief, the individuals who signed the sworn statements on the Trustee's Deed purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing. Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

1380. Furthermore, according to Mr. Tomasek's Deed of Trust, in the event of a foreclosure sale, the Trustee is required to deliver title to the highest bidder at the sale.

1381. The Trustee failed to deliver the Trustee's Deed conveying the property to the highest bidder, and instead conveyed the property to a third party who was not the highest bidder at the auction.

1382. Upon information and belief, the Defendants thereafter filed a foreclosure accounting statement with the Circuit Court Commissioner of Accounts for Henrico County ("the Accounting Statement").

1383. Upon information and belief, the Defendants made certain misrepresentations about the accounting of the proceeds obtained from the foreclosure sale.

1384. Upon information and belief, Defendants made further misrepresentations to the Commissioner when they submitted the fraudulently created substitute trustee and trustee's deed

documents, which the Commissioner relied on when it thereafter approved the accounting of the foreclosure sale.

1385.  Defendants knew or should have known that this and each of the foregoing misrepresentations that they made were false.

1386.  As a result of the acts and omissions of the Defendants, Mr. Tomasek has suffered actual damages and injury, including but not limited to, emotional distress, mental anguish, and suffering.

### CC.   Defendants' Specific Conduct Regarding Robert Smolinski

1387.  Mr. Smolinski borrowed $95,730.00 for his mortgage, as evidenced by a promissory note ("Note"), dated August 9, 2007. The Note was payable to Freedom Mortgage Corporation.

1388.  The Note was secured by a Deed of Trust dated August 9, 2007 and recorded in the Clerk's office of Circuit Court of King and Queen County. Mr. Smolinski's Note and Deed of Trust obligated him to repay Freedom Mortgage Corporation.

1389.  At this time, the Deed of Trust was assigned a Mortgage Identification Number ("MIN") so that the servicing rights and ownership rights of the mortgage loan can be tracked electronically on MERS.

1390.  Upon information and belief, Cenlar, F.S.B. acquired the servicing rights of the loan. As servicer, Cenlar, F.S.B. acted on behalf of the owner of the loan to conduct certain customary servicing functions such as collecting and recording payments, communicating with the homeowner, and assessing late fees.

1391. Around 2011, Mr. Smolinski began experiencing financial hardship and fell behind on his mortgage. In an attempt to avoid foreclosure and save his home, Mr. Smolinski applied for a loan modification.

1392. Mr. Smolinski complied with all of the conditions of the loan modification, but was denied. The bank never provided Mr. Smolinski with an explanation as to why he was denied the modification.

1393. In approximately 2011, the Defendants began sending various correspondences to Mr. Smolinski in an attempt to collect the alleged debt and further threatened that if the amounts demanded were not paid, they would conduct an alleged foreclosure sale. Upon information and belief, Defendants maintain copies of these letters in their records.

1394. Upon information and belief, these correspondences were form correspondences that the Defendants sent to every consumer from whom they attempted to collect a debt and thereafter conduct a foreclosure sale on their home.

1395. Upon information and belief, in their initial correspondence to Mr. Smolinski and the putative class members, Defendants identify the relevant loan servicers as the creditor to whom the debt is owed, rather than the investor or owner of Mr. Smolinski's and the putative class members' note.

1396. Upon information and belief, this correspondence to Mr. Smolinski and the putative class members also stated that that his promissory note or other evidence of his indebtedness secured by the deed of trust on the subject property was unavailable at the time that the letter was sent.

1397. Va. Code § 55-59.1 provides the following:

§ 55-59.1. Notices required before sale by trustee to owners, lienors, etc.; if note lost.

...

> B. If a note or other evidence of indebtedness secured by a deed of trust is lost or for any reason cannot be produced and the beneficiary submits to the trustee an affidavit to that effect, the trustee may nonetheless proceed to sale, provided the beneficiary has given written notice to the person required to pay the instrument that the instrument is unavailable and a request for sale will be made of the trustee upon expiration of 14 days from the date of mailing of the notice. The notice shall be sent by certified mail, return receipt requested, to the last known address of the person required to pay the instrument as reflected in the records of the beneficiary and shall include the name and mailing address of the trustee.

1398.   Upon information and belief, the beneficiary of the note had not submitted to the trustee an affidavit to the effect that the note or other evidence of indebtedness secured by the subject deed of trust is lost or for any reason could not have been produced.

1399.   Upon information and belief, Defendants also sent Mr. Smolinski a letter providing him with notice of the foreclosure sale and further included a copy of the alleged substitute trustee appointment document.

1400.   Upon information and belief, the letter was sent by Defendant Shapiro on behalf of Defendant PFCV, and the foreclosure notice provided contact information for the alleged trustee as c/o Defendant Shapiro. This demonstrates the impartiality and impropriety of Defendant PFCV as substitute trustee under Mr. Smolinski's Deed of Trust.

1401.   The correspondence from Defendants to Mr. Smolinski and the putative class members demonstrates that one or more of the Defendants' statements were false.

1402.   The various letters to Mr. Smolinski and putative class further included an alleged Substitution of Trustee document. The Substitution of Trustee document sent to Mr. Smolinski was dated November 28, 2011 and was filed in the King and Queen County Circuit Court on May 23, 2012.

1403.  This document stated that Cenlar, F.S.B. was the Noteholder of Mr. Smolinski's mortgage loan at the time that it was prepared.  Upon information and belief, this statement was false.

1404.  Accordingly, at the time that the Substitution of Trustee document was prepared, Cenlar, F.S.B. was not secured by the Deed of Trust, nor did it hold more than 50% of the monetary obligations secured thereby.

1405.  The Substitution of Trustee document stated that Cenlar, F.S.B. had appointed Defendant PFCV as substitute trustee.  Upon information and belief, this information is false, particularly given that Virginia Code §55-59(9) requires that only the party secured by the deed of trust or the holders of greater than 50% of the monetary obligations secured thereby have the right to appoint a substitute trustee.

1406.  Defendants claim that the Substitution of Trustee document gives them the authority to foreclose on Mr. Smolinski's home, by appointing Defendant PFCV as substitute trustee.

1407.  Mr. Smolinski's Deed of Trust contains specific provisions for the sale of his Note and the change of loan servicer. Specifically, section 20 states:

> The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to the sale of the Note.

1408.  Mr. Smolinski's Deed of Trust explicitly recognizes a difference between the "Loan Servicer" and the "Noteholder".

1409. In section 24, Mr. Smolinski's Deed of Trust provides that only the "Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder."

1410. Section 22 of Mr. Smolinski's Deed of Trust provides the Lender with the right of acceleration and to invoke a power of sale.

1411. Mr. Smolinski's Deed of Trust identifies the Lender of his mortgage as Freedom Mortgage Corporation. Any authority to appoint a substitute trustee would have to come from Freedom Mortgage Corporation or a subsequent noteholder. No such authority appears to exist.

1412. The Substitution of Trustee document was purportedly signed by Michael Blair, a vice president for the purported Noteholder – Cenlar, F.S.B. The document was thereafter allegedly notarized. Even after that, the date on the notary block was filled out, presumably once the first page of the document was created so that the dates would match.

1413. Upon information and belief, the individuals who signed any sworn statements on behalf of the "Noteholders" or thereafter allegedly notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing. Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

1414. The Defendants failed to disclose the creditor to whom the debt was owed and the noteholder of his loan in their correspondences to Mr. Smolinski, and further falsely represented in the substitution of trustee document that Cenlar, F.S.B. was the current noteholder of his loan.

1415. In short - at no time did the alleged Substitute Trustee, Defendant PFCV, actually provide the requisite notice of the foreclosure sale in a manner that complied with Virginia law.

*Defendants Foreclose on Mr. Smolinski's Home*

1416.  Defendants' correspondence to Mr. Smolinski stated that his home would be foreclosed and sold unless he paid the entire balance they claimed was due on the Note in full prior to the date of the scheduled foreclosure sale.

1417.  The foreclosure sale allegedly took place on June 25, 2012 and a trustee's deed dated July 23, 2012 ("the Trustee's Deed"), which purported to convey the property to a Grantee, was subsequently filed in the King and Queen County Circuit Court on July 26, 2012.

1418.  The Trustee's Deed stated that PFCV was the current Substitute Trustee and Noteholder. Upon information and belief, these statements were false.

1419.  Upon information and belief, the individuals who signed the sworn statements on the Trustee's Deed purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing.  Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

1420.  Furthermore, according to Mr. Smolinski's Deed of Trust, in the event of a foreclosure sale, the Trustee is required to deliver title to the highest bidder at the sale.

1421.  The Trustee failed to deliver the Trustee's Deed conveying the property to the highest bidder, and instead conveyed the property to a third party who was not the highest bidder at the auction.

1422.  Upon information and belief, the Defendants thereafter filed a foreclosure accounting statement with the Circuit Court Commissioner of Accounts for King and Queen County ("the Accounting Statement").

1423.   Upon information and belief, the Defendants made certain misrepresentations about the accounting of the proceeds obtained from the foreclosure sale.

1424.   Upon information and belief, Defendants made further misrepresentations to the Commissioner when they submitted the fraudulently created substitute trustee and trustee's deed documents, which the Commissioner relied on when it thereafter approved the accounting of the foreclosure sale.

1425.   Defendants knew or should have known that this and each of the foregoing misrepresentations that they made were false.

1426.   As a result of the acts and omissions of the Defendants, Mr. Smolinski has suffered actual damages and injury, including but not limited to, emotional distress, mental anguish, and suffering.

### DD.   Defendants' Specific Conduct Regarding Ben Parakuo Naiterra

1427.   Mr. Parakuo Naiterra borrowed $175,160 for his mortgage, as evidenced by a promissory note dated August 28, 2006 ("the Note"). The Note was payable to GMAC Mortgage Corporation.

1428.   The Note was secured by a Deed of Trust dated August 28, 2006 and recorded in the Clerk's office of the Circuit Court of Chesterfield County.

1429.   Mr. Parakuo Naiterra's Note and Deed of Trust obligated him to repay GMAC Mortgage Corporation.

1430.   The Deed of Trust has a Mortgage Identification Number ("MIN") so that the servicing rights and ownership rights of the mortgage loan can be tracked electronically on the Mortgage Electronic Registration System ("MERS").

1431. Upon information and belief, Federal National Mortgage Association ("Fannie Mae") purchased Mr. Parakuo Naiterra's loan subsequent to its origination.

1432. In accordance with the Deed of Trust, Fannie Mae was under no obligation to provide and, in fact, provided no documentation of the sale to Mr. Parakuo Naiterra.

1433. Mr. Parakuo Naiterra's loan was thereafter serviced by GMAC Mortgage, LLC ("GMAC"). As a servicer, GMAC acted on behalf of the owner of the loan to conduct certain customary servicing functions, such as collecting and recording payments, communicating with the homeowner, and assessing various fees.

1434. Mr. Parakuo Naiterra regularly made his payments to GMAC until he began to experience financial difficulties. In an attempt to avoid foreclosure and save his home, Mr. Parakuo Naiterra applied for a loan modification. However, he was told that he did not qualify based on his income.

1435. In approximately 2011, the Defendants began sending various correspondences to Mr. Parakuo Naiterra in an attempt to collect the alleged debt and further threatened that if the amounts demanded were not paid, they would conduct a foreclosure sale.

1436. Upon information and belief, these correspondences were form correspondences that the Defendants sent to every consumer from whom they attempted to collect a debt and thereafter conduct a foreclosure sale on their home. Therefore, upon information and belief, these form correspondences were sent not only to Mr. Parakuo Naiterra, but to the putative class members as well.

1437. Upon information and belief, Defendants maintain copies of these letters in their records.

1438.   Upon information and belief, these correspondences were form correspondences that the Defendants sent to every consumer from whom they attempted to collect a debt and thereafter conduct a foreclosure sale on their home.

1439.   Upon information and belief, in their initial correspondence to Mr. Parakuo Naiterra and the putative class members, Defendants identify the relevant loan servicers as the creditor to whom the debt is owed, rather than the investor or owner of Mr. Parakuo Naiterra's and the putative class members' note.

1440.   Upon information and belief, this correspondence to Mr. Parakuo Naiterra and the putative class members also stated that that his promissory note or other evidence of his indebtedness secured by the deed of trust on the subject property was unavailable at the time that the letter was sent.

1441.   Va. Code § 55-59.1 provides the following:

§ 55-59.1. Notices required before sale by trustee to owners, lienors, etc.; if note lost.

> ...
> B. If a note or other evidence of indebtedness secured by a deed of trust is lost or for any reason cannot be produced and the beneficiary submits to the trustee an affidavit to that effect, the trustee may nonetheless proceed to sale, provided the beneficiary has given written notice to the person required to pay the instrument that the instrument is unavailable and a request for sale will be made of the trustee upon expiration of 14 days from the date of mailing of the notice. The notice shall be sent by certified mail, return receipt requested, to the last known address of the person required to pay the instrument as reflected in the records of the beneficiary and shall include the name and mailing address of the trustee.

1442.   Upon information and belief, the beneficiary of the note had not submitted to the trustee an affidavit to the effect that the note or other evidence of indebtedness secured by the subject deed of trust is lost or for any reason could not have been produced.

1443. Upon information and belief, Defendants also sent Mr. Parakuo Naiterra a letter providing him with notice of the foreclosure sale and further included a copy of the alleged substitute trustee appointment document.

1444. Upon information and belief, the letter was sent by Defendant Shapiro on behalf of Defendant PFCV, and the foreclosure notice provided contact information for the alleged trustee as c/o Defendant Shapiro. This demonstrates the impartiality and impropriety of Defendant PFCV as substitute trustee under Mr. Parakuo Naiterra's Deed of Trust.

1445. The correspondence from Defendants to Mr. Parakuo Naiterra and the putative class members demonstrates that one or more of the Defendants' statements were false.

1446. The various letters to the Mr. Parakuo Naiterra and putative class further included an alleged Substitution of Trustee document.

1447. The Substitution of Trustee document that Defendants sent to Mr. Parakuo Naiterra was dated July 26, 2011 and was subsequently filed in the Chesterfield County Circuit Court on September 8, 2011.

1448. This document stated that GMAC was the Noteholder of Mr. Parakuo Naiterra's mortgage loan at the time that it was prepared. Upon information and belief, this statement was false.

1449. Upon information and belief, GMAC was merely the servicer of Mr. Parakuo Naiterra's loan. Therefore, at the time that the Substitution of Trustee document was prepared, GMAC was not secured by the Deed of Trust, nor did it hold more than 50% of the monetary obligations secured thereby.

1450. The Substitution of Trustee document stated that the identified entity had appointed Defendant PFCV as substitute trustee. This statement is false, particularly given that

219

Virginia Code §55-59(9) requires that only the party secured by the deed of trust or the holders of greater than 50% of the monetary obligations secured thereby have the right to appoint a substitute trustee.

1451. Defendants claim that the Substitution of Trustee document gives them the authority to foreclose on Mr. Parakuo Naiterra's home, by appointing Defendant PFCV as substitute trustee.

1452. Mr. Parakuo Naiterra's Deed of Trust contains specific provisions for the sale of his Note and the change of loan servicer. Specifically, section 20 states:

> The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to the sale of the Note.

1453. Mr. Parakuo Naiterra's Deed of Trust explicitly recognizes a difference between the "Loan Servicer" and the "Noteholder".

1454. In section 24, Mr. Parakuo Naiterra's Deed of Trust provides that only the "Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder."

1455. Section 22 of Mr. Parakuo Naiterra's Deed of Trust provides the Lender with the right of acceleration and to invoke a power of sale.

1456. Mr. Parakuo Naiterra's Deed of Trust identifies the Lender of his mortgage as GMAC Mortgage Corporation. However, upon information and belief, Fannie Mae was the Noteholder at the time the Substitution of Trustee document was created.

1457.  Any authority to appoint a substitute trustee would have to come from Fannie Mae. No such authority appears to exist.

1458.  The Substitution of Trustee document was purportedly signed by an "Authorized Officer" of GMAC, the claimed noteholder, and was thereafter allegedly notarized. At some point after that, the date on the notary block was filled out, presumably once the first page of the document was created so that the dates would match.

1459.  Upon information and belief, the individuals who signed any sworn statements on behalf of the "Noteholders" or thereafter allegedly notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing.  Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

1460.  The Defendants failed to disclose that Fannie Mae was the creditor to whom the debt was owed and the noteholder of his loan in their correspondences to Mr. Parakuo Naiterra, and further the Defendants falsely represented in the substitution of trustee document that GMAC was the current noteholder of his loan.

1461.  In short - at no time did the alleged Substitute Trustee, Defendant PFCV, actually provide the requisite notice of the foreclosure sale in a manner that complied with Virginia law.

*Defendants Foreclose on Mr. Parakuo Naiterra's Home*

1462.  Defendants' correspondence to Mr. Parakuo Naiterra stated that his home would be foreclosed and sold unless he paid the entire balance they claimed was due on the Note in full prior to the date of the scheduled foreclosure sale.

1463. The foreclosure sale allegedly took place on September 8, 2011 and a trustee's deed dated October 18, 2011 ("the Trustee's Deed"), which purported to convey the property to a Grantee, was subsequently filed in the Chesterfield County Circuit Court on October 20, 2011.

1464. The Trustee's Deed stated that PFCV was the current Substitute Trustee and Noteholder. These statements were false.

1465. Upon information and belief, the individuals who signed the sworn statements on the Trustee's Deed purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing. Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

1466. Furthermore, according to Mr. Parakuo Naiterra's Deed of Trust, in the event of a foreclosure sale, the Trustee is required to deliver title to the highest bidder at the sale.

1467. The Trustee failed to deliver the Trustee's Deed conveying the property to the highest bidder, and instead conveyed the property to a third party who was not the highest bidder at the auction.

1468. The Defendants thereafter filed a foreclosure accounting statement with the Chesterfield County Circuit Court's Commissioner of Accounts (the "Accounting Statement"). The Accounting Statement was filed in the Chesterfield County Circuit Court on May 14, 2012.

1469. Upon information and belief, the Defendants made certain misrepresentations about the accounting of the proceeds obtained from the foreclosure sale.

1470. Defendants made further misrepresentations to the Commissioner when they submitted the fraudulently created substitute trustee and trustee's deed documents, which the Commissioner relied on when it thereafter approved the accounting of the foreclosure sale.

1471.   Defendants knew or should have known that this and each of the foregoing misrepresentations that they made were false.

1472.   As a result of the acts and omissions of the Defendants, Mr. Parakuo Naiterra has suffered actual damages and injury, including but not limited to, emotional distress, mental anguish, and suffering.

### EE.   Defendants' Specific Conduct Regarding George Boyd

1473.   Plaintiff Boyd borrowed $212,625.00 in order to finance his home, as evidenced by a promissory note dated August 15, 2008 ("the Note"). The Note was payable to Member Options, LLC (hereafter "Member Options").

1474.   The Note was secured by a Deed of Trust dated August 15, 2008 and recorded in the Clerk's office of the Henrico County Circuit Court.

1475.   Plaintiff's Note and Deed of Trust obligated him to repay Member Options.

1476.   The Deed of Trust has a Mortgage Identification Number ("MIN") so that the servicing rights and ownership rights of the mortgage loan can be tracked electronically on the Mortgage Electronic Registration System ("MERS").

1477.   At some point, PHH Mortgage Corporation (hereafter "PHH") became the servicer of Plaintiff's loan. As servicer, PHH acted on behalf of the owner of the loan to conduct certain customary servicing functions such as collecting and recording payments, communicating with the homeowner, and assessing late fees.

1478.   PHH was not the owner of Plaintiff's loan. Upon information and belief, EverBank was the owner of Plaintiff's mortgage loan.

1479.   Plaintiff regularly made his payments to PHH until he began to experience financial difficulties.

1480.   Around 2011, Plaintiff contacted his mortgage servicer, PHH, in an effort to pursue loss mitigation options and submitted a completed loan modification application. Following its submission, and resubmission after PHH lost his first application, Plaintiff diligently called PHH to inquire about its status and whether he was approved, and each time PHH informed him that it was under review and he would receive a decision any day.

1481.   However, Plaintiff never received a response approving or denying his loan modification request prior to the foreclosure sale.

1482.   In approximately late 2011, the Defendants began sending various correspondences to the Plaintiff in an attempt to collect the alleged debt and further threatened that if the amounts demanded were not paid, they would conduct a foreclosure sale.

1483.   Upon information and belief, these correspondences were form correspondences that the Defendants sent to every consumer from whom they attempted to collect a debt and thereafter conduct a foreclosure sale on their home. Therefore, upon information and belief, these form correspondences were sent not only to the Plaintiff, but to the putative class members as well.

1484.   Upon information and belief, Defendants maintain copies of these letters in their records.

1485.   Upon information and belief, Defendants sent Plaintiff an initial correspondence in late 2011 that stated that the Defendants had been instructed to initiate foreclosure proceedings on Plaintiff's home.

1486.   The correspondence contained a disclosure stating, "THIS IS A COMMUNICATION FROM A DEBT COLLECTOR."

1487.  The FDCPA, at 15 U.S.C. § 1692g, requires that debt collectors provide certain disclosures to consumers within five days of their initial communications with them, including the name of the creditor to whom the debt is owed.

1488.  Upon information and belief, in their initial (and subsequent) correspondence to the Plaintiff and the putative class members, Defendants identify the relevant loan servicers as the creditor to whom the debt is owed, rather than the investor or owner of Plaintiff's and the putative class members' note.

1489.  For example, the subject line of the correspondence to Plaintiff stated that the Holder of Plaintiff's loan is PHH. This statement was false.

1490.  Defendants therefore failed to accurately identify the creditor to whom the debt is owed as required by 15 U.S.C. § 1692g(a)(2).  *See, e.g., Sparkman v. Zwicker & Associates, P.C.*, 374 F.Supp. 293, 3001-01 (E.D.N.Y. 2005).

1491.  The FDCPA, at 15 U.S.C. § 1692g, further requires that debt collectors provide certain disclosures to consumers within five days of their initial communications with them, including, for example, the following statement regarding their thirty day validation rights:

> a statement that if the consumer notifies the debt collector *in writing* within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector

15 U.S.C. § 1692g(4) (emphasis added).

1492.  Defendants initial letter to the Plaintiff, as well as those to the putative class members, contains the following statement about Plaintiff's thirty day validation rights:

> If you notify us within thirty (30) days of the date you received this letter that you are disputing the debt or any portion thereof, or if you notify us within thirty (30) days of the date you received this letter that you want to know the name of the original creditor if that creditor is different from our

client . . . then we will obtain and mail to you verification of the debt and/or the name and address of the original creditor.

1493. Defendants failed to disclose to the Plaintiff and the putative class members that their validation request must be *in writing* in order to trigger the Defendants' duty to provide the requested information. Defendants' disclosure was therefore defective.

1494. Further, none of Defendants' subsequent letters to the Plaintiff and the putative class members actually identifies the actual creditor or provides the proper disclosures as required by the FDCPA, at 15 U.S.C. § 1692g.

1495. This correspondence to the Plaintiff and the putative class members also states that "on behalf of the referenced deed of trust beneficiary, you are hereby notified that the promissory note or other evidence of indebtedness secured by the deed of trust on the subject property is unavailable at this time."

1496. Upon information and belief, the original note evidencing Plaintiff's indebtedness has not been lost, misplaced or destroyed, making Defendants' representation false.

1497. Va. Code § 55-59.1 provides the following:

§ 55-59.1. Notices required before sale by trustee to owners, lienors, etc.; if note lost.

. . .

B. If a note or other evidence of indebtedness secured by a deed of trust is lost or for any reason cannot be produced and the beneficiary submits to the trustee an affidavit to that effect, the trustee may nonetheless proceed to sale, provided the beneficiary has given written notice to the person required to pay the instrument that the instrument is unavailable and a request for sale will be made of the trustee upon expiration of 14 days from the date of mailing of the notice. The notice shall be sent by certified mail, return receipt requested, to the last known address of the person required to pay the instrument as reflected in the records of the beneficiary and shall include the name and mailing address of the trustee.

226

1498.   Upon information and belief, the beneficiary of the note had not submitted to the trustee an affidavit to the effect that the note or other evidence of indebtedness secured by the subject deed of trust is lost or for any reason could not have been produced.

1499.   Upon information and belief, the Defendants also sent Plaintiff at least one letter providing him with notice of the foreclosure sale "in accordance with Virginia Code § 55-59.1(A) and the terms of the referenced deed of trust" and included a copy of the alleged substitute trustee appointment document.

1500.   The letter was sent by Defendant Shapiro on behalf of Defendant PFCV, and the foreclosure notice provided contact information for the alleged trustee as c/o Defendant Shapiro. This demonstrates the impartiality and impropriety of Defendant PFCV as substitute trustee under Plaintiff's Deed of Trust.

1501.   The correspondence from Defendants to the Plaintiff and the putative class members further demonstrates that one or more of the Defendants' statements were false.

1502.   Upon information and belief, PHH was never a "creditor to whom the debt was owed" under the FDCPA or even a beneficiary of Plaintiff's Deed of Trust. Rather, PHH is merely the collection servicer of Plaintiff's mortgage loan, despite the Defendants' initial correspondence indicating otherwise.

1503.   Further, upon information and belief, the note was never lost, misplaced or destroyed as the Defendants indicated in their initial correspondence.

1504.   Defendants knew or should have known that this and each of the foregoing misrepresentations they made were false.

1505.   The various letters to the Plaintiff and putative class members further included an alleged Substitution of Trustee document.

227

1506.  The Substitution of Trustee document that Defendants sent to the Plaintiff was dated September 7, 2011 and was subsequently filed in the Henrico County Circuit Court on September 20, 2011.

1507.  This document stated that PHH was the Noteholder of Plaintiff's mortgage loan at the time that it was prepared.  Upon information and belief, this statement was false.

1508.  The Substitution of Trustee document stated that PHH had appointed Defendant PFCV as substitute trustee.

1509.  Defendants claim that the Substitution of Trustee document gives them the authority to foreclose on Plaintiff's home, by appointing Defendant PFCV as substitute trustee.

1510.  Section 9(a) of Plaintiff's Deed of Trust states that "Lender may, except as limited by regulations issued by the Secretary [of Housing and Urban Development], in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument . . . ."

1511.  Plaintiff's Deed of Trust goes on to state in section 9(d): "This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary [of Housing and Urban Development]."

1512.  In section 20, Plaintiff's Deed of Trust provides that only the "Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder."

1513.  Section 18 of Plaintiff's Deed of Trust provides the Lender with the right of acceleration and to invoke a power of sale, as permitted by applicable law, which includes the HUD Regulations.

1514.   Plaintiff's Deed of Trust identifies the Lender of his mortgage as Member Options.

1515.   Any appointment of a substitute trustee would have to have been made by Member Options or a subsequent noteholder, not a loan servicer. This is particularly true given that Virginia Code §55-59(9) provides that only the party secured by the deed of trust or the holders of greater than 50% of the monetary obligations secured thereby have the right to appoint a substitute trustee.

1516.   The Substitution of Trustee document was purportedly signed by an "Assistant Vice President" of PHH, the claimed noteholder, and was thereafter allegedly notarized. At some point after that, the date on the notary block was filled out, presumably once the first page of the document was created so that the dates would match.

1517.   Upon information and belief, the individuals who signed any sworn statements on behalf of the "Noteholder" or thereafter allegedly notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing.   Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

1518.   The Defendants failed to disclose the actual creditor to whom the debt was owed and the Noteholder of his loan in their correspondences to Plaintiff, and further the Defendants falsely represented in the substitution of trustee document that PHH was the current Noteholder of Plaintiff's loan.

1519.   In short - at no time did the alleged Substitute Trustee, Defendant PFCV, actually provide the requisite notice of the foreclosure sale in a manner that complied with Virginia law.

1520.   Plaintiff's mortgage loan was an FHA guaranteed loan.

1521.   The requirements of 24 C.F.R. § 203.604 were incorporated as conditions precedent to a foreclosure sale of Plaintiff's home under the Deed of Trust.

1522.   PHH has multiple offices within 200 miles of the Plaintiff and his home.

1523.   Neither Plaintiff's creditor, nor PHH, Defendants or any other person or entity has complied with the above-alleged regulatory requirements.   No face-to-face meeting has been attempted.

1524.   Because the FHA required face-to-face meeting prerequisite has not been attempted, let alone accomplished, the Plaintiff's Deed of Trust does not authorize foreclosure and did not authorize Defendants to proceed with a foreclosure sale.

1525.   As substitute trustee under Plaintiff's Deed of Trust, Defendant PFCV had a duty to ensure that the requirements of the Deed of Trust were met prior to conducting a foreclosure sale of Plaintiff's home.

1526.   Both Defendants failed to do so, and thus conducted a foreclosure sale without any authority to do so.

### Defendants Foreclose on Mr. Boyd's Home

1527.   Defendants' correspondence to Plaintiff stated that the Plaintiff's home would be foreclosed and sold unless Plaintiff paid the entire balance they claimed was due on the Note in full prior to the date of the scheduled foreclosure sale.

1528.   The foreclosure sale allegedly took place on December 5, 2011 and a trustee's deed dated December 22, 2011 (hereafter "the Trustee's Deed"), which purported to convey the property to a Grantee, was subsequently filed in the Henrico County Circuit Court on January 30, 2012.

1529.   The Trustee's Deed stated that Defendant PFCV was the substitute trustee and current Noteholder. Upon information and belief, these statements were false.

1530.   Upon information and belief, the individuals who signed the sworn statements on the Trustee's Deed purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing.  Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

1531.   Furthermore, according to Plaintiff's Deed of Trust, in the event of a foreclosure sale, the Trustee is required to deliver title to the highest bidder at the sale.

1532.   Trustees failed to deliver the Trustee's Deed conveying property to the highest bidder, and instead conveyed the property to a third party who was not the highest bidder at the auction.

1533.   Defendants knew or should have known that each of the foregoing misrepresentations they made were false.

1534.   Additionally, Defendants had a duty to ensure that the prerequisites to foreclosure under Plaintiff's Deed of Trust were met and failed to do so. Defendants knew that Plaintiff's loan was an FHA guaranteed loan, as evidenced by their letter to Plaintiff dated October 26, 2011. Therefore, Defendants knew or should have known that they possessed no authority to foreclose on Plaintiff's home at the time they conducted the foreclosure sale.

1535.   As a result of the acts and omissions of the Defendants, Plaintiff has suffered actual damages and injury, including but not limited to, the loss of his home, emotional distress, mental anguish, and suffering.

**FF.**   **Defendants' Specific Conduct Regarding Michael Morgan**

1536.  Plaintiff Morgan borrowed $84,168.00 in order to finance his home, as evidenced by a promissory note dated August 30, 2005 ("the Note"). The Note was payable to Member Options, LLC (hereafter "Member Options").

1537.  The Note was secured by a Deed of Trust dated August 30, 2005 and recorded in the Clerk's office of the Chesterfield County Circuit Court.

1538.  Plaintiff's Note and Deed of Trust obligated him to repay Member Options.

1539.  The Deed of Trust has a Mortgage Identification Number ("MIN") so that the servicing rights and ownership rights of the mortgage loan can be tracked electronically on the Mortgage Electronic Registration System ("MERS").

1540.  At some point, PHH Mortgage Corporation (hereafter "PHH") became the servicer of Plaintiff's loan. As servicer, PHH acted on behalf of the owner of the loan to conduct certain customary servicing functions such as collecting and recording payments, communicating with the homeowner, and assessing late fees.

1541.  Plaintiff regularly made his payments to PHH until he began to experience financial difficulties after losing his job due to an illness.

1542.  Around late 2011, Plaintiff contacted PHH in an effort to pursue loss mitigation options and submitted a completed loan modification application. Over the next six months, Plaintiff was required to repeatedly resubmit the application and supporting documents after PHH claimed to have lost them or never received them, despite Plaintiff's numerous verifications with PHH employees that the documents were received.

1543.  During this process, PHH represented that Plaintiff would qualify for Making Home Affordable Home Affordable Modification Program and would be approved for a modified payment plan.

1544.   In early 2012, while Plaintiff was under review for a modification of his loan payment, the Defendants began sending various correspondences to the Plaintiff in an attempt to collect the alleged debt and further threatened that if the amounts demanded were not paid, they would conduct a foreclosure sale.

1545.   Upon information and belief, these correspondences were form correspondences that the Defendants sent to every consumer from whom they attempted to collect a debt and thereafter conduct a foreclosure sale on their home. Therefore, upon information and belief, these form correspondences were sent not only to the Plaintiff, but to the putative class members as well.

1546.   Upon information and belief, Defendants maintain copies of these letters in their records.

1547.   Defendants sent Plaintiff an initial correspondence dated January 13, 2012 that stated that the Defendants had been instructed to initiate foreclosure proceedings on Plaintiff's home.

1548.   The   correspondence   contained   a   disclosure   stating,   "THIS   IS   A COMMUNICATION FROM A DEBT COLLECTOR."

1549.   The FDCPA, at 15 U.S.C. § 1692g, requires that debt collectors provide certain disclosures to consumers within five days of their initial communications with them, including the name of the creditor to whom the debt is owed.

1550.   In their initial (and subsequent) correspondence to the Plaintiff and the putative class members, Defendants identify the relevant loan servicers as the creditor to whom the debt is owed, rather than the investor or owner of Plaintiff's and the putative class members' note.

1551.  For example, the subject line of the correspondence to Plaintiff stated that the Holder of Plaintiff's loan is PHH, and the purported FDCPA disclosures identified PHH as the creditor to whom the debt is owed. These statements were false.

1552.  Defendants therefore failed to accurately identify the creditor to whom the debt is owed as required by 15 U.S.C. § 1692g(a)(2).  *See, e.g., Sparkman v. Zwicker & Associates, P.C.,* 374 F.Supp. 293, 3001-01 (E.D.N.Y. 2005).

1553.  Further, none of Defendants' subsequent letters to the Plaintiff and the putative class members actually identifies the actual creditor as required by the FDCPA, at 15 U.S.C. § 1692g.

1554.  Upon information and belief, Defendants also sent correspondence to the Plaintiff and the putative class members stating that "on behalf of the referenced deed of trust beneficiary, you are hereby notified that the promissory note or other evidence of indebtedness secured by the deed of trust on the subject property is unavailable at this time."

1555.  Upon information and belief, the original note evidencing Plaintiff's indebtedness has not been lost, misplaced or destroyed, making Defendants' representation false.

1556.  Va. Code § 55-59.1 provides the following:

§ 55-59.1. Notices required before sale by trustee to owners, lienors, etc.; if note lost.

> ...
>
> B. If a note or other evidence of indebtedness secured by a deed of trust is lost or for any reason cannot be produced and the beneficiary submits to the trustee an affidavit to that effect, the trustee may nonetheless proceed to sale, provided the beneficiary has given written notice to the person required to pay the instrument that the instrument is unavailable and a request for sale will be made of the trustee upon expiration of 14 days from the date of mailing of the notice. The notice shall be sent by certified mail, return receipt requested, to the last known address of the person required to pay the instrument as reflected in the records of the beneficiary and shall include the name and mailing address of the trustee.

1557.   Upon information and belief, the beneficiary of the note had not submitted to the trustee an affidavit to the effect that the note or other evidence of indebtedness secured by the subject deed of trust is lost or for any reason could not have been produced.

1558.   Upon information and belief, the Defendants also sent Plaintiff at least one letter providing him with notice of the foreclosure sale and further included a copy of the alleged substitute trustee appointment document.

1559.   The letter was sent by Defendant Shapiro on behalf of Defendant PFCV, and the foreclosure notice provided contact information for the alleged trustee as c/o Defendant Shapiro. This demonstrates the impartiality and impropriety of Defendant PFCV as substitute trustee under Plaintiff's Deed of Trust.

1560.   The correspondence from Defendants to the Plaintiff and the putative class members further demonstrates that one or more of the Defendants' statements were false.

1561.   PHH was never a "creditor to whom the debt was owed" under the FDCPA or even a beneficiary of Plaintiff's Deed of Trust. Rather, PHH is merely the collection servicer of Plaintiff's mortgage loan, despite the Defendants' initial correspondence indicating otherwise.

1562.   Further, upon information  and belief, the note was never lost, misplaced or destroyed as the Defendants indicated in their initial correspondence.

1563.   Defendants knew or should have known that this and each of the foregoing misrepresentations they made were false.

1564.   The various letters to the Plaintiff and putative class members further included an alleged Substitution of Trustee document.

1565. The Substitution of Trustee document that Defendants sent to the Plaintiff was dated January 13, 2012 and was subsequently filed in the Chesterfield County Circuit Court on March 7, 2012.

1566. This document stated that PHH was the Noteholder of Plaintiff's mortgage loan at the time that it was prepared. Upon information and belief, this statement was false.

1567. The Substitution of Trustee document stated that PHH had appointed Defendant PFCV as substitute trustee.

1568. Defendants claim that the Substitution of Trustee document gives them the authority to foreclose on Plaintiff's home, by appointing Defendant PFCV as substitute trustee.

1569. Section 9(a) of Plaintiff's Deed of Trust states that "Lender may, except as limited by regulations issued by the Secretary [of Housing and Urban Development], in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument . . . ."

1570. Plaintiff's Deed of Trust goes on to state in section 9(d): "This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary [of Housing and Urban Development]."

1571. In section 20, Plaintiff's Deed of Trust provides that only the "Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder."

1572. Section 18 of Plaintiff's Deed of Trust provides the Lender with the right of acceleration and to invoke a power of sale, as permitted by applicable law, which includes the HUD Regulations.

1573. Plaintiff's Deed of Trust identifies the Lender of his mortgage as Member Options.

1574. Any appointment of a substitute trustee would have to have been made by Member Options or a subsequent noteholder, not merely a loan servicer. This is particularly true given that Virginia Code §55-59(9) provides that only the party secured by the deed of trust or the holders of greater than 50% of the monetary obligations secured thereby have the right to appoint a substitute trustee.

1575. The Substitution of Trustee document was purportedly signed by an "Assistant Vice President" of PHH, the claimed noteholder, and was thereafter allegedly notarized. At some point after that, the date on the notary block was filled out, presumably once the first page of the document was created so that the dates would match.

1576. Upon information and belief, the individuals who signed any sworn statements on behalf of the "Noteholder" or thereafter allegedly notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing. Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

1577. The Defendants failed to disclose the actual creditor to whom the debt was owed and the Noteholder of his loan in their correspondences to Plaintiff, and further the Defendants falsely represented in the substitution of trustee document that PHH was the current Noteholder of Plaintiff's loan.

1578. In short - at no time did the alleged Substitute Trustee, Defendant PFCV, actually provide the requisite notice of the foreclosure sale in a manner that complied with Virginia law.

237

1579.  Plaintiff's mortgage loan was an FHA guaranteed loan.

1580.  The requirements of 24 C.F.R. § 203.604 were incorporated as conditions precedent to a foreclosure sale of Plaintiff's home under the Deed of Trust.

1581.  PHH has multiple offices within 200 miles of the Plaintiff and his home.

1582.  Neither Plaintiff's creditor, nor PHH, Defendants or any other person or entity has complied with the above-alleged regulatory requirements.  No face-to-face meeting has been attempted.

1583.  Because FHA required face-to-face meeting prerequisite has not been attempted, let alone accomplished, the Plaintiff's Deed of Trust does not authorize foreclosure and does not authorize Defendants to proceed with a foreclosure sale.

1584.  As substitute trustee under Plaintiff's Deed of Trust, Defendant PFCV had a duty to ensure that the requirements of the Deed of Trust were met prior to conducting a foreclosure sale of Plaintiff's home.

1585.  Both Defendants failed to do so, and thus conducted a foreclosure sale without any authority to do so.

### Defendants Attempt to Foreclose on Mr. Morgan's Home

1586.  Defendants' correspondence to Plaintiff stated that the Plaintiff's home would be foreclosed and sold unless Plaintiff paid the entire balance they claimed was due on the Note in full prior to the date of the scheduled foreclosure sale.

1587.  After months of submitting numerous modification applications and placing dozens of phone calls to PHH, Plaintiff was finally approved for a modification at the eleventh hour, the day before his scheduled foreclosure sale was to take place.

1588. Defendants had a duty to ensure that the prerequisites to foreclosure under Plaintiff's Deed of Trust were met and failed to do so. Defendants knew that Plaintiff's loan was an FHA guaranteed loan, as evidenced by their letters to Plaintiff dated January 13, 2012 and March 8, 2012. Therefore, Defendants knew or should have known that they possessed no authority to foreclose on Plaintiff's home when they attempted to conduct the foreclosure sale.

1589. As a result of the acts and omissions of the Defendants, Plaintiff has suffered actual damages and injury, including but not limited to, emotional distress, mental anguish, and suffering.

GG. **Defendants' Specific Conduct Regarding Myra Washington**

1590. Plaintiff Washington borrowed $110,941.00 in order to finance her home, as evidenced by a promissory note dated February 29, 2000 ("the Note"). The Note was payable to Home Loan Corporation (hereafter "Home Loan").

1591. The Note was secured by a Deed of Trust dated February 29, 2000 and recorded in the Clerk's office of the Henrico County Circuit Court.

1592. Plaintiff's Note and Deed of Trust obligated her to repay Home Loan.

1593. At some point, Wells Fargo Bank, N.A. (hereafter "Wells Fargo") became the servicer of Plaintiff's loan. As servicer, Wells Fargo acted on behalf of the owner of the loan to conduct certain customary servicing functions such as collecting and recording payments, communicating with the homeowner, and assessing late fees.

1594. Plaintiff regularly made her payments to Wells Fargo until she began to experience financial difficulties.

1595. Plaintiff submitted a completed a loan modification application to Wells Fargo, and was awaiting a decision approving or denying the modification request at the time the

foreclosure sale occurred. Plaintiff never received a decision prior to the Defendants conducting a foreclosure sale of her home.

1596.  In approximately 2007, the Defendants began sending various correspondences to the Plaintiff in an attempt to collect the alleged debt and further threatened that if the amounts demanded were not paid, they would conduct a foreclosure sale.

1597.  Upon information and belief, these correspondences were form correspondences that the Defendants sent to every consumer from whom they attempted to collect a debt and thereafter conduct a foreclosure sale on their home. Therefore, upon information and belief, these form correspondences were sent not only to the Plaintiff, but to the putative class members as well.

1598.  Upon information and belief, Defendants maintain copies of these letters in their records.

1599.  In their correspondence to the Plaintiff and the putative class members, Defendants identify the relevant loan servicers as the creditor to whom the debt is owed, rather than the investor or owner of Plaintiff's and the putative class members' note.

1600.  For example, upon information and belief, the subject line of the correspondence to Plaintiff stated that the Holder of Plaintiff's loan is Wells Fargo. This statement was false.

1601.  Upon information and belief, Defendants also sent correspondence to the Plaintiff and the putative class members stating that "on behalf of the referenced deed of trust beneficiary, you are hereby notified that the promissory note or other evidence of indebtedness secured by the deed of trust on the subject property is unavailable at this time."

1602.  Upon information and belief, the original note evidencing Plaintiff's indebtedness has not been lost, misplaced or destroyed, making Defendants' representation false.

1603.   Va. Code § 55-59.1 provides the following:

§ 55-59.1. Notices required before sale by trustee to owners, lienors, etc.; if note lost.

...

> B. If a note or other evidence of indebtedness secured by a deed of trust is lost or for any reason cannot be produced and the beneficiary submits to the trustee an affidavit to that effect, the trustee may nonetheless proceed to sale, provided the beneficiary has given written notice to the person required to pay the instrument that the instrument is unavailable and a request for sale will be made of the trustee upon expiration of 14 days from the date of mailing of the notice. The notice shall be sent by certified mail, return receipt requested, to the last known address of the person required to pay the instrument as reflected in the records of the beneficiary and shall include the name and mailing address of the trustee.

1604.   Upon information and belief, the beneficiary of the note had not submitted to the trustee an affidavit to the effect that the note or other evidence of indebtedness secured by the subject deed of trust is lost or for any reason could not have been produced.

1605.   Upon information and belief, Defendants also sent Plaintiff several letters providing her with notice of the foreclosure sale and included a copy of the alleged substitute trustee appointment document.

1606.   The letters were sent by Defendant Shapiro on behalf of Defendant PFCV, and the foreclosure notice provided contact information for the alleged trustee as c/o Defendant Shapiro. This demonstrates the impartiality and impropriety of Defendant PFCV as substitute trustee under Plaintiff's Deed of Trust.

1607.   The correspondence from Defendants to the Plaintiff and the putative class members further demonstrates that one or more of the Defendants' statements were false.

1608.   Wells Fargo was not the noteholder of Plaintiff's loan. Rather, Wells Fargo was merely the collection servicer of Plaintiff's mortgage loan, despite the Defendants' correspondence indicating otherwise.

1609.   Further, upon information and belief, the note was never lost, misplaced or destroyed as the Defendants indicated in their correspondence.

1610.   Defendants knew or should have known that this and each of the foregoing misrepresentations they made were false.

1611.   The various letters to the Plaintiff and putative class members further included an alleged Substitution of Trustee document.

1612.   The Substitution of Trustee document that Defendants sent to the Plaintiff was subsequently filed in the Henrico County Circuit Court.

1613.   This document stated that Wells Fargo was the Noteholder of Plaintiff's mortgage loan at the time that it was prepared.  Upon information and belief, this statement was false.

1614.   The Substitution of Trustee document stated that Wells Fargo had appointed Defendant PFCV as substitute trustee.

1615.   Defendants claim that the Substitution of Trustee document gives them the authority to foreclose on Plaintiff's home, by appointing Defendant PFCV as substitute trustee.

1616.   Section 9(a) of Plaintiff's Deed of Trust states that "Lender may, except as limited by regulations issued by the Secretary [of Housing and Urban Development], in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument . . . ."

1617.   Plaintiff's Deed of Trust goes on to state in section 9(d): "This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary [of Housing and Urban Development]."

1618.   In section 20, Plaintiff's Deed of Trust provides that only the "Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder."

1619.   Section 18 of Plaintiff's Deed of Trust provides the Lender with the right of acceleration and to invoke a power of sale, as permitted by applicable law, which includes the HUD Regulations.

1620.   Plaintiff's Deed of Trust identifies the Lender of her mortgage as Home Loans.

1621.   Any appointment of a substitute trustee would have to have been made by Home Loans or a subsequent noteholder, not a loan servicer. This is particularly true given that Virginia Code §55-59(9) provides that only the party secured by the deed of trust or the holders of greater than 50% of the monetary obligations secured thereby have the right to appoint a substitute trustee.

1622.   The Substitution of Trustee document was purportedly signed by a "Vice President of Loan Documentation" of Wells Fargo, the claimed noteholder, and was thereafter allegedly notarized. At some point after that, the date on the notary block was filled out, presumably once the first page of the document was created so that the dates would match.

1623.   Upon information and belief, the individuals who signed any sworn statements on behalf of the "Noteholder" or thereafter allegedly notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing.   Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

1624. The Defendants failed to disclose the actual creditor to whom the debt was owed and the Noteholder of her loan in their correspondences to Plaintiff, and further the Defendants falsely represented in the substitution of trustee document that Wells Fargo was the current Noteholder of Plaintiff's loan.

1625. In short - at no time did the alleged Substitute Trustee, Defendant PFCV, actually provide the requisite notice of the foreclosure sale in a manner that complied with Virginia law.

1626. Plaintiff's mortgage loan was an FHA guaranteed loan.

1627. The requirements of 24 C.F.R. § 203.604 were incorporated as conditions precedent to a foreclosure sale of Plaintiff's home under the Deed of Trust.

1628. Wells Fargo has multiple offices within 200 miles of the Plaintiff and her home.

1629. Neither Plaintiff's creditor, nor Wells Fargo, Defendants or any other person or entity has complied with the above-alleged regulatory requirements. No Face-to-Face meeting has been attempted.

1630. Because FHA required face-to-face meeting prerequisite has not been attempted, let alone accomplished, the Plaintiff's Deed of Trust does not authorize foreclosure and does not authorize Defendants to proceed with a foreclosure sale.

1631. As substitute trustee under Plaintiff's Deed of Trust, Defendant PFCV had a duty to ensure that the requirements of the Deed of Trust were met prior to conducting a foreclosure sale of Plaintiff's home.

1632. Both Defendants failed to do so, and thus conducted a foreclosure sale without any authority to do so.

### *Defendants Foreclose on Ms. Washington's Home*

1633.  Defendants' correspondence to Plaintiff stated that the Plaintiff's home would be foreclosed and sold unless Plaintiff paid the entire balance they claimed was due on the Note in full prior to the date of the scheduled foreclosure sale.

1634.  The foreclosure sale allegedly took place on September 13, 2007 and a trustee's deed dated September 14, 2007 (hereafter "the Trustee's Deed"), which purported to convey the property to a Grantee, was subsequently filed in the Henrico County Circuit Court on February 5, 2008.

1635.  The Trustee's Deed stated that Defendant PFCV was the substitute trustee and current Noteholder. Upon information and belief, these statements were false.

1636.  Upon information and belief, the individuals who signed the sworn statements on the Trustee's Deed purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing.  Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

1637.  Furthermore, according to Plaintiff's Deed of Trust, in the event of a foreclosure sale, the Trustee is required to deliver title to the highest bidder at the sale.

1638.  Trustees failed to deliver the Trustee's Deed conveying property to the highest bidder, and instead conveyed the property to a third party who was not the highest bidder at the auction.

1639.  In 2008, the Defendants thereafter filed a foreclosure accounting statement with the Henrico County Circuit Court's Commissioner of Accounts.

1640.  Upon information and belief, the Defendants made certain misrepresentations about the accounting of the proceeds obtained from the foreclosure sale.

1641. Defendants made further misrepresentations to the Commissioner when they submitted the fraudulently created substitute trustee and trustee's deed documents, which the Commissioner relied on when it thereafter approved the accounting of the foreclosure sale.

1642. Defendants knew or should have known that each of the foregoing misrepresentations they made were false.

1643. Additionally, Defendants had a duty to ensure that the prerequisites to foreclosure under Plaintiff's Deed of Trust were met and failed to do so. Defendants knew that Plaintiff's loan was an FHA guaranteed loan. Therefore, Defendants knew or should have known that they possessed no authority to foreclose on Plaintiff's home at the time they conducted the foreclosure sale.

1644. As a result of the acts and omissions of the Defendants, Plaintiff has suffered actual damages and injury, including but not limited to, the loss of her home, emotional distress, mental anguish, and suffering.

## HH.   Defendants' Specific Conduct Regarding Laura Wilson (fka Laura Godby)

1645. Plaintiff Wilson borrowed $197,439.00 in order to finance her home, as evidenced by a promissory note dated August 25, 2008 ("the Note"). The Note was payable to Century 21 Mortgage Corporation (hereafter "Century 21").

1646. The Note was secured by a Deed of Trust dated August 25, 2008 and recorded in the Clerk's office of the Chesterfield County Circuit Court.

1647. Plaintiff's Note and Deed of Trust obligated her to repay Century 21.

1648. The Deed of Trust has a Mortgage Identification Number ("MIN") so that the servicing rights and ownership rights of the mortgage loan can be tracked electronically on the Mortgage Electronic Registration System ("MERS").

1649. Century 21 was the servicer of Plaintiff's loan. As servicer, Century 21 acted on behalf of the owner of the loan to conduct certain customary servicing functions such as collecting and recording payments, communicating with the homeowner, and assessing late fees.

1650. Plaintiff regularly made her payments to Century 21 until she began to experience financial difficulties.

1651. Although Plaintiff inquired about a loan modification, she was unable to obtain one for her mortgage loan.

1652. In approximately 2009, the Defendants began sending various correspondences to the Plaintiff in an attempt to collect the alleged debt and further threatened that if the amounts demanded were not paid, they would conduct a foreclosure sale.

1653. Upon information and belief, these correspondences were form correspondences that the Defendants sent to every consumer from whom they attempted to collect a debt and thereafter conduct a foreclosure sale on their home. Therefore, upon information and belief, these form correspondences were sent not only to the Plaintiff, but to the putative class members as well.

1654. Upon information and belief, Defendants maintain copies of these letters in their records.

1655. Upon information and belief, Defendants sent Plaintiff an initial correspondence that stated that the Defendants had been instructed to initiate foreclosure proceedings on Plaintiff's home.

1656. Upon information and belief, in their initial correspondence to the Plaintiff and the putative class members, Defendants identify the relevant loan servicers as the creditor to

whom the debt is owed, rather than the investor or owner of Plaintiff's and the putative class members' note.

1657. Upon information and belief, this correspondence to the Plaintiff and the putative class members also stated that that her promissory note or other evidence of her indebtedness secured by the deed of trust on the subject property was unavailable at the time that the letter was sent.

1658. Upon information and belief, the original note evidencing Plaintiff's indebtedness has not been lost, misplaced or destroyed, making Defendants' representation false.

1659. Va. Code § 55-59.1 provides the following:

§ 55-59.1. Notices required before sale by trustee to owners, lienors, etc.; if note lost.

  ...

  B. If a note or other evidence of indebtedness secured by a deed of trust is lost or for any reason cannot be produced and the beneficiary submits to the trustee an affidavit to that effect, the trustee may nonetheless proceed to sale, provided the beneficiary has given written notice to the person required to pay the instrument that the instrument is unavailable and a request for sale will be made of the trustee upon expiration of 14 days from the date of mailing of the notice. The notice shall be sent by certified mail, return receipt requested, to the last known address of the person required to pay the instrument as reflected in the records of the beneficiary and shall include the name and mailing address of the trustee.

1660. Upon information and belief, the beneficiary of the note had not submitted to the trustee an affidavit to the effect that the note or other evidence of indebtedness secured by the subject deed of trust is lost or for any reason could not have been produced.

1661. Upon information and belief, Defendants also sent Plaintiff a letter providing her with notice of the foreclosure sale and further included a copy of the alleged substitute trustee appointment document.

1662. Upon information and belief, the letter was sent by Defendant Shapiro on behalf of Defendant PFCV, and the foreclosure notice provided contact information for the alleged trustee as c/o Defendant Shapiro. This demonstrates the impartiality and impropriety of Defendant PFCV as substitute trustee under Plaintiff's Deed of Trust.

1663. The correspondence from Defendants to the Plaintiffs and the putative class members demonstrates that one or more of the Defendants' statements were false.

1664. Further, the note was never lost, misplaced or destroyed as the Defendants indicated in their initial correspondence.

1665. Defendants knew or should have known that this and each of the foregoing misrepresentations they made were false.

1666. The various letters to the Plaintiff and putative class members further included an alleged Substitution of Trustee document.

1667. The Substitution of Trustee document that Defendants sent to the Plaintiff was dated October 23, 2009 and was subsequently filed in the Chesterfield County Circuit Court on November 24, 2009.

1668. This document stated that MERS was the Noteholder of Plaintiff's mortgage loan at the time that it was prepared. Upon information and belief, this statement was false.

1669. The Substitution of Trustee document stated that MERS had appointed Defendant PFCV as substitute trustee.

1670. Defendants claim that the Substitution of Trustee document gives them the authority to foreclose on Plaintiff's home, by appointing Defendant PFCV as substitute trustee.

1671. Section 9(a) of Plaintiff's Deed of Trust states that "Lender may, except as limited by regulations issued by the Secretary [of Housing and Urban Development], in the case of

payment defaults, require immediate payment in full of all sums secured by this Security Instrument . . . ."

1672.  Plaintiff's Deed of Trust goes on to state in section 9(d): "This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary [of Housing and Urban Development]."

1673.  In section 20, Plaintiff's Deed of Trust provides that only the "Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder."

1674.  Section 18 of Plaintiff's Deed of Trust provides the Lender with the right of acceleration and to invoke a power of sale, as permitted by applicable law, which includes the HUD Regulations.

1675.  Plaintiff's Deed of Trust identifies the Lender of her mortgage as Century 21.

1676.  Any appointment of a substitute trustee would have to have been made by Century 21 or a subsequent noteholder, not MERS. This is particularly true given that Virginia Code §55-59(9) provides that only the party secured by the deed of trust or the holders of greater than 50% of the monetary obligations secured thereby have the right to appoint a substitute trustee.

1677.  The Substitution of Trustee document was purportedly signed by an "Assistant Vice President" of MERS, the claimed noteholder, and was thereafter allegedly notarized. At some point after that, the date on the notary block was filled out, presumably once the first page of the document was created so that the dates would match.

1678.  Upon information and belief, the individuals who signed any sworn statements on behalf of the "Noteholder" or thereafter allegedly notarized the Substitution of Trustee document

purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing.   Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

1679.   The Defendants failed to disclose the actual creditor to whom the debt was owed and the Noteholder of her loan in their correspondences to Plaintiff, and further the Defendants falsely represented in the substitution of trustee document that MERS was the current Noteholder of Plaintiff's loan.

1680.   In short - at no time did the alleged Substitute Trustee, Defendant PFCV, actually provide the requisite notice of the foreclosure sale in a manner that complied with Virginia law.

1681.   Plaintiff's mortgage loan was an FHA guaranteed loan.

1682.   The requirements of 24 C.F.R. § 203.604 were incorporated as conditions precedent to a foreclosure sale of Plaintiff's home under the Deed of Trust.

1683.   Century 21 has multiple offices within 200 miles of the Plaintiff and her home.

1684.   Neither Plaintiff's creditor, nor Century 21, Defendants or any other person or entity has complied with the above-alleged regulatory requirements.   No Face-to-Face meeting has been attempted.

1685.   Because FHA required face-to-face meeting prerequisite has not been attempted, let alone accomplished, the Plaintiff's Deed of Trust does not authorize foreclosure and does not authorize Defendants to proceed with a foreclosure sale.

1686.   As substitute trustee under Plaintiff's Deed of Trust, Defendant PFCV had a duty to ensure that the requirements of the Deed of Trust were met prior to conducting a foreclosure sale of Plaintiff's home.

1687.  Both Defendants failed to do so, and thus conducted a foreclosure sale without any authority to do so.

### Defendants Foreclose on Ms. Wilson's Home

1688.  Defendants' correspondence to Plaintiff stated that the Plaintiff's home would be foreclosed and sold unless Plaintiff paid the entire balance they claimed was due on the Note in full prior to the date of the scheduled foreclosure sale.

1689.  The foreclosure sale allegedly took place on December 3, 2009 and a trustee's deed dated December 8, 2009 (hereafter "the Trustee's Deed"), which purported to convey the property to a Grantee, was subsequently filed in the Chesterfield County Circuit Court on January 5, 2010.

1690.  The Trustee's Deed stated that Defendant PFCV was the substitute trustee and current Noteholder. Upon information and belief, these statements were false.

1691.  Upon information and belief, the individuals who signed the sworn statements on the Trustee's Deed purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing.  Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

1692.  Furthermore, according to Plaintiff's Deed of Trust, in the event of a foreclosure sale, the Trustee is required to deliver title to the highest bidder at the sale.

1693.  Trustees failed to deliver the Trustee's Deed conveying property to the highest bidder, and instead conveyed the property to a third party who was not the highest bidder at the auction.

1694. In 2010, the Defendants thereafter filed a foreclosure accounting statement with the Chesterfield County Circuit Court's Commissioner of Accounts.

1695. Upon information and belief, the Defendants made certain misrepresentations about the accounting of the proceeds obtained from the foreclosure sale.

1696. Defendants made further misrepresentations to the Commissioner when they submitted the fraudulently created substitute trustee and trustee's deed documents, which the Commissioner relied on when it thereafter approved the accounting of the foreclosure sale.

1697. Defendants knew or should have known that each of the foregoing misrepresentations they made were false.

1698. Additionally, Defendants had a duty to ensure that the prerequisites to foreclosure under Plaintiff's Deed of Trust were met and failed to do so. Defendants knew that Plaintiff's loan was an FHA guaranteed loan. Therefore, Defendants knew or should have known that they possessed no authority to foreclose on Plaintiff's home at the time they conducted the foreclosure sale.

1699. As a result of the acts and omissions of the Defendants, Plaintiff has suffered actual damages and injury, including but not limited to, the loss of her home, emotional distress, mental anguish, and suffering.

## II. Defendants' Specific Conduct Regarding Ida Beverley

1700. Plaintiff Ida Beverley borrowed $59,772.00 in order to finance her home, as evidenced by a promissory note dated August 7, 1999 ("the Note"). The Note was payable to AmeriGroup Mortgage Corporation (hereafter "AmeriGroup").

1701. The Note was secured by a Deed of Trust dated August 7, 1999 and recorded in the Clerk's office of the Circuit Court for the City of Richmond.

1702. Plaintiff's Note and Deed of Trust obligated her to repay AmeriGroup.

1703. At some point, Wells Fargo Bank, N.A. (hereafter "Wells Fargo") became the servicer of Plaintiff's loan. As servicer, Wells Fargo acted on behalf of the owner of the loan to conduct certain customary servicing functions such as collecting and recording payments, communicating with the homeowner, and assessing late fees.

1704. Plaintiff regularly made her payments to Wells Fargo until they began to experience financial difficulties.

1705. Around December 2011, Plaintiff contacted her mortgage servicer, Wells Fargo, in an effort to pursue loss mitigation options and was instructed to and did submit a completed loan modification application.

1706. However, Plaintiff never received a response regarding approval or denial of her loan modification before Defendants began foreclosure proceedings.

1707. In approximately late 2011, the Defendants began sending various correspondences to the Plaintiff in an attempt to collect the alleged debt and further threatened that if the amounts demanded were not paid, they would conduct a foreclosure sale.

1708. Upon information and belief, these correspondences were form correspondences that the Defendants sent to every consumer from whom they attempted to collect a debt and thereafter conduct a foreclosure sale on their home. Therefore, upon information and belief, these form correspondences were sent not only to the Plaintiff, but to the putative class members as well.

1709. Upon information and belief, Defendants maintain copies of these letters in their records.

1710. Defendants sent Plaintiff an initial correspondence dated October 21, 2011 that stated that the Defendants had been retained to initiate foreclosure proceedings on her home.

1711. The correspondence contained a disclosure stating, "THIS IS A COMMUNICATION FROM A DEBT COLLECTOR."

1712. The FDCPA, at 15 U.S.C. § 1692g, requires that debt collectors provide certain disclosures to consumers within five days of their initial communications with them, including the name of the creditor to whom the debt is owed.

1713. In their initial (and subsequent) correspondence to the Plaintiff and the putative class members, Defendants identify the relevant loan servicers or other entities as the creditor to whom the debt is owed; rather than the investor or owner of Plaintiff's and the putative class members' note.

1714. For example, the subject line of the October 21, 2011 correspondence to Plaintiff stated that the Wells Fargo was the holder of her loan, and their purported FDCPA disclosures further identified Wells Fargo as the creditor to whom the debt is owed. These statements were false.

1715. Defendants therefore failed to accurately identify the creditor to whom the debt is owed as required by 15 U.S.C. § 1692g(a)(2). *See, e.g., Sparkman v. Zwicker & Associates, P.C.*, 374 F.Supp. 293, 3001-01 (E.D.N.Y. 2005).

1716. Further, none of Defendants' subsequent letters to the Plaintiff and the putative class members actually identifies the actual creditor as required by the FDCPA, at 15 U.S.C. § 1692g.

1717. Defendants sent a second correspondence to the Plaintiff dated October 21, 2011 which stated that "on behalf of the referenced deed of trust beneficiary, you are hereby notified

that the promissory note or other evidence of indebtedness secured by the deed of trust on the subject property is unavailable at this time." This was a form correspondence and was sent to the putative class members as well.

1718.   Upon information and belief, the original note evidencing Plaintiff's indebtedness has not been lost, misplaced or destroyed, making Defendants' representation false.

1719.   Va. Code § 55-59.1 provides the following:

§ 55-59.1. Notices required before sale by trustee to owners, lienors, etc.; if note lost.

...

B. If a note or other evidence of indebtedness secured by a deed of trust is lost or for any reason cannot be produced and the beneficiary submits to the trustee an affidavit to that effect, the trustee may nonetheless proceed to sale, provided the beneficiary has given written notice to the person required to pay the instrument that the instrument is unavailable and a request for sale will be made of the trustee upon expiration of 14 days from the date of mailing of the notice. The notice shall be sent by certified mail, return receipt requested, to the last known address of the person required to pay the instrument as reflected in the records of the beneficiary and shall include the name and mailing address of the trustee.

1720.   Upon information and belief, the beneficiary of the note had not submitted to the trustee an affidavit to the effect that the note or other evidence of indebtedness secured by the subject deed of trust is lost or for any reason could not have been produced.

1721.   The subject line of Defendants' second October 21, 2011 correspondence to the Plaintiff again identified Wells Fargo as the holder of Plaintiff's mortgage loan. Upon information and belief, this statement was false.

1722.   Upon information and belief, the Defendants also sent Plaintiff at least one letter providing them with notice of the foreclosure sale and further included a copy of the alleged substitute trustee appointment document.

1723.  The letters was sent by Defendant Shapiro on behalf of Defendant PFCV, and the foreclosure notice provided contact information for the alleged trustee as c/o Defendant Shapiro. This demonstrates the impartiality and impropriety of Defendant PFCV as substitute trustee under Plaintiff's Deed of Trust.

1724.  The correspondence from Defendants to the Plaintiff and the putative class members further demonstrates that one or more of the Defendants' statements were false.

1725.  Upon information and belief, Wells Fargo was never a "creditor to whom the debt was owed" under the FDCPA or even a beneficiary of Plaintiff's Deed of Trust. Rather, Wells Fargo is merely the collection servicer of Plaintiff's mortgage loan, despite the Defendants' initial correspondence indicating otherwise.

1726.  Further, upon information and belief, the note was never lost, misplaced or destroyed as the Defendants indicated in their initial correspondence.

1727.  Defendants knew or should have known that this and each of the foregoing misrepresentations they made were false.

1728.  The various letters to the Plaintiff and putative class members further included an alleged Substitution of Trustee document.

1729.  The Substitution of Trustee document that Defendants sent to the Plaintiff was dated November 2, 2011 and was subsequently filed in the Richmond City Circuit Court on December 6, 2011.

1730.  This document stated that Wells Fargo was the Noteholder of Plaintiff's mortgage loan at the time that it was prepared.  Upon information and belief, this statement was false.

1731.  The Substitution of Trustee document stated that Wells Fargo had appointed Defendant PFCV as substitute trustee.

1732. Defendants claim that the Substitution of Trustee document gives them the authority to foreclose on Plaintiff's home, by appointing Defendant PFCV as substitute trustee.

1733. Section 9(a) of Plaintiffs' Deed of Trust states that "Lender may, except as limited by regulations issued by the Secretary [of Housing and Urban Development], in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument . . . ."

1734. Plaintiff's Deed of Trust goes on to state in section 9(d): "This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary [of Housing and Urban Development]."

1735. In section 20, Plaintiff's Deed of Trust provides that only the "Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder."

1736. Section 18 of Plaintiff's Deed of Trust provides the Lender with the right of acceleration and to invoke a power of sale, as permitted by applicable law, which includes the HUD Regulations.

1737. Plaintiff's Deed of Trust identifies the Lender of her mortgage as AmeriGroup.

1738. Any appointment of a substitute trustee would have to have been made by AmeriGroup or a subsequent noteholder, not merely a loan servicer. This is particularly true given that Virginia Code §55-59(9) provides that only the party secured by the deed of trust or the holders of greater than 50% of the monetary obligations secured thereby have the right to appoint a substitute trustee.

1739. The Substitution of Trustee document was purportedly signed by a "Vice President of Loan Documentation" of Wells Fargo, the claimed noteholder, and was thereafter

allegedly notarized. At some point after that, the date on the notary block was filled out, presumably once the first page of the document was created so that the dates would match.

1740. Upon information and belief, the individuals who signed any sworn statements on behalf of the "Noteholder" or thereafter allegedly notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing. Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

1741. The Defendants failed to disclose the actual creditor to whom the debt was owed and the Noteholder of his loan in their correspondences to the Plaintiff, and further the Defendants falsely represented in the substitution of trustee document that Wells Fargo was the current Noteholder of Plaintiffs' loan.

1742. In short - at no time did the alleged Substitute Trustee, Defendant PFCV, actually provide the requisite notice of the foreclosure sale in a manner that complied with Virginia law.

1743. Plaintiff's mortgage loan was an FHA guaranteed loan.

1744. The requirements of 24 C.F.R. § 203.604 were incorporated as conditions precedent to a foreclosure sale of Plaintiff's home under the Deed of Trust.

1745. Wells Fargo has multiple offices within 200 miles of the Plaintiff and her home.

1746. Neither Plaintiff's creditor, nor Wells Fargo, Defendants or any other person or entity has complied with the above-alleged regulatory requirements. No face-to-face meeting has been attempted.

1747.   Because FHA required face-to-face meeting prerequisite has not been attempted, let alone accomplished, the Plaintiffs' Deed of Trust does not authorize foreclosure and did not authorize Defendants to proceed with a foreclosure sale.

1748.   As substitute trustee under Plaintiff's Deed of Trust, Defendant PFCV had a duty to ensure that the requirements of the Deed of Trust were met prior to conducting a foreclosure sale of Plaintiff's home.

1749.   Both Defendants failed to do so, and thus conducted a foreclosure sale without any authority to do so.

### Defendants Attempt to Foreclose on Ms. Beverley's Home

1750.   Defendants' correspondence to Plaintiff stated that the her home would be foreclosed and sold unless she paid the entire balance they claimed was due on the Note in full prior to the date of the scheduled foreclosure sale.

1751.   As a result of Defendants actions, Plaintiff was forced to file bankruptcy in March 2012 in the attempt to save her home from foreclosure.

1752.   Defendants had a duty to ensure that the prerequisites to foreclosure under Plaintiff's Deed of Trust were met and failed to do so. Defendants knew that Plaintiff's loan was an FHA guaranteed loan. Therefore, Defendants knew or should have known that they possessed no authority to foreclose on the Plaintiff's home when they attempted to conduct the foreclosure sale.

1753.   As a result of the acts and omissions of the Defendants, Plaintiff has suffered actual damages and injury, including but not limited to, being forced to file bankruptcy, emotional distress, mental anguish, and suffering.

### JJ.   Defendants' Specific Conduct Regarding Anthony and Carolyn Reid

1754. Plaintiffs Anthony and Carolyn Reid borrowed $68,456.00 in order to finance their home, as evidenced by a promissory note dated October 25, 1996 ("the Note"). The Note was payable to Norwest Mortgage, Inc. (hereafter "Norwest").

1755. The Note was secured by a Deed of Trust dated October 25, 1996 and recorded in the Clerk's office of the Circuit Court for Henrico County.

1756. Plaintiffs' Note and Deed of Trust obligated them to repay Norwest.

1757. At some point, Wells Fargo Bank, N.A. (hereafter "Wells Fargo") became the servicer of Plaintiffs' loan. As servicer, Wells Fargo acted on behalf of the owner of the loan to conduct certain customary servicing functions such as collecting and recording payments, communicating with the homeowner, and assessing late fees.

1758. Plaintiffs regularly made their payments to Wells Fargo until they began to experience financial difficulties.

1759. Around 2010, Plaintiffs contacted their mortgage servicer, Wells Fargo, in an effort to pursue loss mitigation options and were instructed to and did submit a completed loan modification application.

1760. Plaintiffs diligently followed up with Wells Fargo on the status of their modification request and were told they were under review. However, shortly after submission Wells Fargo claimed they never received the paperwork and Plaintiffs were required to resubmit their loan modification application. They did so.

1761. At some point after that, Wells Fargo again claimed that they never received Plaintiffs' application and that Plaintiffs would need to resubmit another application. Wells Fargo informed Plaintiffs that they would send a third application package.

1762.   However, that third application package never arrived to Plaintiffs, despite their several requests and Wells Fargo's repeated confirmations that it would be sent.

1763.   In December 2010, the Defendants began sending various correspondences to the Plaintiffs in an attempt to collect the alleged debt and further threatened that if the amounts demanded were not paid, they would conduct a foreclosure sale.

1764.   Upon information and belief, these correspondences were form correspondences that the Defendants sent to every consumer from whom they attempted to collect a debt and thereafter conduct a foreclosure sale on their home. Therefore, upon information and belief, these form correspondences were sent not only to the Plaintiffs, but to the putative class members as well.

1765.   Upon information and belief, Defendants maintain copies of these letters in their records.

1766.   In their correspondence to the Plaintiffs and the putative class members, Defendants identify the relevant loan servicers as the creditor to whom the debt is owed, rather than the investor or owner of Plaintiffs' and the putative class members' note.

1767.   For example, the subject line of a December 6, 2010 correspondence from the Defendants to the Plaintiffs stated that Wells Fargo is the holder of Plaintiffs' mortgage, and the purported FDCPA required notice further identifies Wells Fargo as the creditor to whom the debt is owed. These statements were false.

1768.   Defendants December 6, 2010 correspondence to the Plaintiffs also stated that "on behalf of the referenced deed of trust beneficiary, you are hereby notified that the promissory note or other evidence of indebtedness secured by the deed of trust on the subject property is unavailable at this time." This was a form correspondence that was also sent to the putative class.

1769.   Upon information and belief, the original note evidencing Plaintiffs' indebtedness has not been lost, misplaced or destroyed, making Defendants' representation false.

1770.   Va. Code § 55-59.1 provides the following:

§ 55-59.1. Notices required before sale by trustee to owners, lienors, etc.; if note lost.

...

B. If a note or other evidence of indebtedness secured by a deed of trust is lost or for any reason cannot be produced and the beneficiary submits to the trustee an affidavit to that effect, the trustee may nonetheless proceed to sale, provided the beneficiary has given written notice to the person required to pay the instrument that the instrument is unavailable and a request for sale will be made of the trustee upon expiration of 14 days from the date of mailing of the notice. The notice shall be sent by certified mail, return receipt requested, to the last known address of the person required to pay the instrument as reflected in the records of the beneficiary and shall include the name and mailing address of the trustee.

1771.   Upon information and belief, the beneficiary of the note had not submitted to the trustee an affidavit to the effect that the note or other evidence of indebtedness secured by the subject deed of trust is lost or for any reason could not have been produced.

1772.   Defendants also sent Plaintiffs several letters, one of which was dated April 20, 2011, providing them with notice of the foreclosure sale and included a copy of the alleged substitute trustee appointment document.

1773.   The letters were sent by Defendant Shapiro on behalf of Defendant PFCV, and the foreclosure notice provided contact information for the alleged trustee as c/o Defendant Shapiro. This demonstrates the impartiality and impropriety of Defendant PFCV as substitute trustee under Plaintiffs' Deed of Trust.

1774.   The correspondence from Defendants to the Plaintiffs and the putative class members further demonstrates that one or more of the Defendants' statements were false.

1775.  Wells Fargo was not the noteholder of Plaintiffs' loan. Rather, Wells Fargo was merely the collection servicer of Plaintiffs' mortgage loan, despite the Defendants' correspondence indicating otherwise.

1776.  Further, upon information and belief, the note was never lost, misplaced or destroyed as the Defendants indicated in their correspondence.

1777.  Defendants knew or should have known that this and each of the foregoing misrepresentations they made were false.

1778.  The various letters to the Plaintiffs and putative class members further included an alleged Substitution of Trustee document.

1779.  The Substitution of Trustee document that Defendants sent to the Plaintiffs was dated February 14, 2011 and was subsequently filed in the Henrico County Circuit Court on April 29, 2011.

1780.  This document stated that Wells Fargo was the Noteholder of Plaintiffs' mortgage loan at the time that it was prepared.  Upon information and belief, this statement was false.

1781.  The Substitution of Trustee document stated that Wells Fargo had appointed Defendant PFCV as substitute trustee.

1782.  Defendants claim that the Substitution of Trustee document gives them the authority to foreclose on Plaintiffs' home, by appointing Defendant PFCV as substitute trustee.

1783.  Section 9(a) of Plaintiffs' Deed of Trust states that "Lender may, except as limited by regulations issued by the Secretary [of Housing and Urban Development], in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument . . . ."

1784. Plaintiffs' Deed of Trust goes on to state in section 9(d): "This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary [of Housing and Urban Development]."

1785. In section 20, Plaintiffs' Deed of Trust provides that only the "Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder."

1786. Section 18 of Plaintiffs' Deed of Trust provides the Lender with the right of acceleration and to invoke a power of sale, as permitted by applicable law, which includes the HUD Regulations.

1787. Plaintiffs' Deed of Trust identifies the Lender of their mortgage as Norwest.

1788. Any appointment of a substitute trustee would have to have been made by Norwest or a subsequent noteholder, not merely a loan servicer. This is particularly true given that Virginia Code §55-59(9) provides that only the party secured by the deed of trust or the holders of greater than 50% of the monetary obligations secured thereby have the right to appoint a substitute trustee.

1789. The Substitution of Trustee document was purportedly signed by a "Vice President of Loan Documentation" of Wells Fargo, the claimed noteholder, and was thereafter allegedly notarized. At some point after that, the date on the notary block was filled out, presumably once the first page of the document was created so that the dates would match.

1790. Upon information and belief, the individuals who signed any sworn statements on behalf of the "Noteholder" or thereafter allegedly notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such

legal standing.   Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

1791.   The Defendants failed to disclose the actual creditor to whom the debt was owed and the Noteholder of his loan in their correspondences to the Plaintiffs, and further the Defendants falsely represented in the substitution of trustee document that Wells Fargo was the current Noteholder of Plaintiffs' loan.

1792.   In short - at no time did the alleged Substitute Trustee, Defendant PFCV, actually provide the requisite notice of the foreclosure sale in a manner that complied with Virginia law.

1793.   Plaintiffs' mortgage loan was an FHA guaranteed loan.

1794.   The requirements of 24 C.F.R. § 203.604 were incorporated as conditions precedent to a foreclosure sale of Plaintiffs' home under the Deed of Trust.

1795.   Wells Fargo has multiple offices within 200 miles of the Plaintiffs and their home.

1796.   Neither Plaintiffs' creditor, nor Wells Fargo, Defendants or any other person or entity has complied with the above-alleged regulatory requirements.   No face-to-face meeting has been attempted.

1797.   Because the FHA required face-to-face meeting prerequisite has not been attempted, let alone accomplished, the Plaintiffs' Deed of Trust does not authorize foreclosure and did not authorize Defendants to proceed with a foreclosure sale.

1798.   As substitute trustee under Plaintiffs' Deed of Trust, Defendant PFCV had a duty to ensure that the requirements of the Deed of Trust were met prior to conducting a foreclosure sale of Plaintiffs' home.

1799.   Both Defendants failed to do so, and thus conducted a foreclosure sale without any authority to do so.

### Defendants Attempt to Foreclose on Mr. and Mrs. Reid's Home

1800.  Defendants' correspondence to Plaintiffs stated that the Plaintiffs' home would be foreclosed and sold unless the Plaintiffs paid the entire balance they claimed was due on the Note in full prior to the date of the scheduled foreclosure sale.

1801.  As a result of Defendants actions, Plaintiffs were each forced to file bankruptcy in the attempt to save their home from foreclosure.

1802.  As of the time of filing this Complaint, it appears that no Trustee's Deed has been filed in the Henrico County Circuit Court.

1803.  However, around the end of May 2012, Defendants filed a summons for unlawful detainer against Plaintiffs in the Henrico County General District Court on behalf of Wells Fargo. Upon information and belief, no foreclosure sale had even occurred at this time.

1804.  At the hearing date set for July 16, 2012, neither a representative for Wells Fargo nor the Defendants showed up to the hearing, so it was continued until August 27, 2012. On August 27, 2012, both Wells Fargo and the Defendants again failed to attend, so the hearing was continued until September 17, 2012.

1805.  The case was ultimately dismissed with prejudice on September 17, 2012 when the Defendants and Wells Fargo failed to show up to the scheduled hearing for a third time.

1806.  Upon information and belief, Defendants had no authority nor were permitted by law to file a summons for unlawful detainer against the Plaintiffs at the time they did so.

1807.  Further, Defendants had a duty to ensure that the prerequisites to foreclosure under Plaintiffs' Deed of Trust were met and failed to do so. Defendants knew that Plaintiffs' loan was an FHA guaranteed loan. Therefore, Defendants knew or should have known that they

possessed no authority to foreclose on the Plaintiffs' home when they attempted to conduct the foreclosure sale.

1808.   As a result of the acts and omissions of the Defendants, Plaintiffs have suffered actual damages and injury, including but not limited to, being forced to file bankruptcy, emotional distress, mental anguish, and suffering.

**Count I:  Breach of Fiduciary Duties- Fannie Mae Loans**
**CLASS CLAIM**
**(Plaintiffs Cooke, Aaron Reed, Beattie, Mohassel, Borhani, Latney, Wainer, Paul Aldred, Patsy Aldred)**

1809.   Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

1810.   This matter is also brought as a class action for a "Fannie Mae" class, initially defined as follows:

> All natural persons who were the record owners in fee simple of real property located in the Richmond Division of the Eastern District of Virginia that by a recorded Deed of Trust secured payment of a loan owned by Fannie Mae for whom Defendants claimed they were appointed substitute trustees and attempted to conduct a foreclosure sale of the real property within the five years prior to the filing of the Complaint, and for whom 1) the records of the noteholder or servicer did not contain any record of receipt and acknowledgement of receipt of a referral package from the servicer to Defendants, and/or 2) the Defendants failed to obtain the original note or a lost note affidavit prior to the date of such foreclosure. Excluded from the class are employees of the Defendants.

1811.   Plaintiffs incorporate their prior allegations and estimates that the class is so numerous that joinder of all members is impractical.

1812.   Plaintiffs' counsel is in possession of a substantial number of correspondences and Substitute Trustee appointment documents that Defendants mailed to consumers. Plaintiffs' counsel is also in possession of a substantial number of Trustees Deeds and Reports that

Defendants filed with the Commissioner Accounts. These documents have remained consistent and uniform across time, Virginia jurisdictions and consumers.

1813. Defendant has conducted and attempted hundreds of foreclosures in Virginia. A review of just Fairfax County land records for 2011 shows well over 500 such foreclosures. Defendants have accomplished well more than 50 foreclosures as designated Fannie Mae counsel during the last five years.

1814. There are questions of law and fact common to the class, which common issues predominate over any issues involving only individual class members. For example, and without limitation: (a.) whether Defendants' foreclosure Deed of Trust owned by Fannie Mae is lawful where Defendants have not otherwise complied with Fannie Mae Servicing Guidelines and governing law; (b.) whether Fannie Mae Servicing Guidelines and governing law are incorporated within the Defendants' Deed of Trust duties; (c.) what remedies are available for such a breach of fiduciary duty.

1815. Plaintiffs' claims are typical of those of the class members. All are based on the same facts and legal theories. The letters, appointment of substitute trustee documents, and trustees deeds are standardized and used across all Virginia jurisdictions and the full class period. The violations alleged are the same and the class claims will rise and fall entirely based upon whether or not Plaintiffs' claims rise or fall.

1816. The Plaintiffs will fairly and adequately protect the interests of the class. Plaintiffs have retained counsel experienced in handling actions involving unlawful practices against consumers and class actions. Neither Plaintiffs nor their counsel has any interests that might cause them not to vigorously pursue this action. Plaintiffs are aware of their responsibilities to the putative classes and have accepted such responsibilities.

1817. Certification of a class under Rule 23(b)(1) of the Federal Rules of Civil Procedure is proper. Prosecuting separate actions by or against individual class members would create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

1818. Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is appropriate in that Defendants have acted on grounds generally applicable to the class thereby making appropriate declaratory relief with respect to the class as a whole.

1819. Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

a.      As alleged above, the questions of law or fact common to the members of the classes predominate over any questions affecting an individual member. Each of the common facts and legal questions in the case overwhelm the more modest individual damages issues. Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in the case.

b.      A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment as they involve many, if not most, consumers who are otherwise disempowered and unable to afford and bring such claims individually. Further, most consumers who Defendants will have threatened and contacted for a foreclosure would likely be unaware of their rights under the law, or who they could find to represent them in federal litigation. Individual litigation of the uniform issues in this case would be a waste of judicial resources as well. The issues at the core of this case are

class wide and should be resolved at one time.  One win for one consumer would set the law as for every similarly situated consumer.

1820.  Plaintiffs and the putative class allege a cause of action for Defendants' breach of fiduciary duties under the subject Deed of Trust.  To the extent that they were properly appointed as trustees, Defendants were the fiduciaries for both the putative class and the Noteholder, thus owing fiduciary duties to both parties.

1821.  Plaintiffs and the putative Fannie Mae class allege a cause of action for Defendants' breach of fiduciary duties under the subject Deed of Trust. To the extent that they were properly appointed as trustees, Defendants were the fiduciaries for both the Plaintiffs and the putative Fannie Mae class and the noteholder, creditor, beneficiary and/or investor, thus owing fiduciary duties to both parties.

1822.  Defendants breached their fiduciary duties by undertaking the foreclosure sale and the transfer of the real property of the Plaintiffs and the putative class without compliance with the Deeds of Trust.   Specifically, Defendants foreclosed upon the real property when the necessary prerequisites of compliance with the Fannie Mae Servicing Guidelines and Virginia law had not been met.

1823.  Under the Deeds of Trust, Defendants' obligations are subject to and governed by "Applicable Law," including the Fannie Mae Servicing Guidelines.

1824.  Defendants repeatedly breached their fiduciary duty to Plaintiffs and the putative class including, but not limited to, the following conduct:

a.      By failing to ensure they received the appropriate foreclosure data from the servicers and the necessary documents to conduct the foreclosure;

b. By consistently failing to acknowledge receipt of the referral package and failing to request the necessary foreclosure documents in order to expedite the foreclosure process on Plaintiff and the putative class;

c. By failing to obtain a complete referral package, including the documents required to conduct a foreclosure under Virginia law prior to conducting the foreclosure; and

d. By conducting the foreclosure even though the preconditions to foreclosure had not been satisfied under the terms of the Notes and Deeds of Trust.

1825. As a result, Plaintiffs and the putative class suffered injury and are entitled to recover actual damages and costs against Defendants.

## Count II: Breach of Fiduciary Duties- Freddie Mac Loans
### CLASS CLAIM
### (Plaintiffs Delawter, Calvin Johnson, and Jefferson)

1826. Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

1827. This matter is also brought as a class action for a "Freddie Mac" class, initially defined as follows:

> All natural persons who were the record owners in fee simple of real property located in the Richmond Division of the Eastern District of Virginia that by a recorded Deed of Trust secured payment of a loan owned by Freddie Mac for whom Defendants claimed they were appointed substitute trustees and attempted to conduct a foreclosure sale of the real property within the five years prior to the filing of the Complaint, and for whom 1) the records of the noteholder or servicer did not contain any record of request of the original note or a lost note affidavit, and 2) the Defendants failed to obtain the original note or a lost note affidavit prior to the date of such foreclosure. Excluded from the class are employees of the Defendants.

1828. Plaintiffs incorporate their prior allegations and estimates that the class is so numerous that joinder of all members is impractical.

1829.  Plaintiffs' counsel is in possession of a substantial number of correspondences and Substitute Trustee appointment documents that Defendants mailed to consumers. Plaintiffs' counsel is also in possession of a substantial number of Trustees Deeds and Reports that Defendants filed with the Commissioner Accounts for the various Circuit Courts. These documents have remained consistent and uniform across time, Virginia jurisdictions and consumers.

1830.  Defendants have conducted and attempted hundreds of foreclosures in Virginia. A review of just Fairfax County land records for 2011 shows well over 500 such foreclosures. Defendants have accomplished well more than 50 foreclosures as designated Freddie Mac counsel during the last five years.

1831.  There are questions of law and fact common to the class, which common issues predominate over any issues involving only individual class members.  For example, and without limitation:  (a.) whether Defendants' foreclosure of a Deed of Trust owned by Freddie Mac is lawful where Defendants have not otherwise complied with Freddie Mac servicing guidelines and governing law; (b.) whether Freddie Mac servicing guidelines and governing law are incorporated within the Defendants' Deed of Trust duties; (c.) what remedies are available for such a breach of fiduciary duty.

1832.  Plaintiffs' claims are typical of those of the class members.  All are based on the same facts and legal theories.  The letters, substitute trustee documents, and trustees deeds are standardized and used across all Virginia jurisdictions and the full class period.  The violations alleged are the same and the class claims will rise and fall entirely based upon whether or not Plaintiffs' claims rise or fall.

1833. The Plaintiffs will fairly and adequately protect the interests of the class. Plaintiffs have retained counsel experienced in handling actions involving unlawful practices against consumers and class actions. Neither Plaintiffs nor their counsel have any interests that might cause them not to vigorously pursue this action. Plaintiffs are aware of their responsibilities to the putative classes and have accepted such responsibilities.

1834. Certification of a class under Rule 23(b)(1) of the Federal Rules of Civil Procedure is proper. Prosecuting separate actions by or against individual class members would create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

1835. Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is appropriate in that Defendants have acted on grounds generally applicable to the class thereby making appropriate declaratory relief with respect to the class as a whole.

1836. Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

a. As alleged above, the questions of law or fact common to the members of the classes predominate over any questions affecting an individual member. Each of the common facts and legal questions in the case overwhelm the more modest individual damages issues. Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in the case.

b. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment as they involve many, if not most, consumers who are otherwise disempowered and unable to afford and

274

bring such claims individually. Further, most consumers who Defendants will have threatened and contacted for a foreclosure would likely be unaware of their rights under the law, or who they could find to represent them in federal litigation. Individual litigation of the uniform issues in this case would be a waste of judicial resources as well. The issues at the core of this case are class wide and should be resolved at one time. One win for one consumer would set the law as for every similarly situated consumer.

1837.  Plaintiffs and the putative class allege a cause of action for Defendants' breach of fiduciary duties under the subject Deed of Trust. To the extent that they were properly appointed as trustees, Defendants were the fiduciaries for both the putative class and the Noteholder, thus owing fiduciary duties to both parties.

1838.  Plaintiff and the putative Freddie Mac class allege a cause of action for Defendants' breach of fiduciary duties under the subject Deed of Trust. To the extent that they were properly appointed as trustees, Defendants were the fiduciaries for both the Plaintiffs and the putative Freddie Mac class and the noteholder, creditor, beneficiary and/or investor, thus owing fiduciary duties to both parties.

1839.  Defendants breached their fiduciary duties by undertaking the foreclosure sale and the transfer of the real property of the Plaintiff and the putative class without compliance with the Deeds of Trust. Specifically, Defendants foreclosed upon the real property when the necessary prerequisites of compliance with the Freddie Mac servicing guidelines and Virginia law had not been met.

1840.  Under the Deeds of Trust, Defendants' obligations are subject to and governed by "Applicable Law," including the Freddie Mac servicing guidelines.

1841. Defendants repeatedly breached their fiduciary duty to Plaintiffs and the putative class including, but not limited to, the following conduct:

a. By failing to ensure they received the appropriate foreclosure data from the servicers and the necessary documents to conduct the foreclosure;

b. By consistently failing to request the necessary foreclosure documents in order to expedite the foreclosure process on Plaintiffs and the putative class;

c. By failing to obtain a complete referral package, including the documents required to conduct a foreclosure under Virginia law prior to conducting the foreclosure; and

d. By conducting the foreclosure even though the preconditions to foreclosure had not been satisfied under the terms of the Notes and Deeds of Trust.

1842. As a result, Plaintiffs and the putative class suffered injury and are entitled to recover actual damages and costs against Defendants.

### Count III: Trustees' Breach of Fiduciary Duties -VA Loans
### CLASS CLAIM
### (Plaintiff Draper)

1843. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

1844. This matter is also brought as a class action for a "VA Loans" class, initially defined as follows:

> All natural persons who were the record owners in fee simple of real property located in the Richmond Division of the Eastern District of Virginia that by a recorded Deed of Trust secured payment of a loan insured by the Department of Veterans Affairs and for which property Defendants drafted, executed and recorded a foreclosure Trustee's Deed upon such Deed of Trust within the five years prior to the filing of the Complaint, and for whom the records of the noteholder or servicer did not contain any record of an attempt to provide a face-to-face meeting with the class member prior to the date of such foreclosure. Excluded from the class are employees of the Defendants.

1845. Plaintiff incorporates his prior allegations and estimates that the class is so numerous that joinder of all members is impractical.

1846. Plaintiff's proposed class counsel is in possession of a substantial number of correspondences and Substitute Trustee appointment documents that Defendants have mailed to consumers. Plaintiff's proposed class counsel also has a substantial number of Trustee's Deeds and Reports that Defendants have filed with the Commissioner Accounts. These documents have remained consistent and uniform across time, Virginia jurisdictions and consumers.

1847. Defendants have conducted and attempted to conduct hundreds of foreclosures in Virginia. A review of just Fairfax County land records for 2011 shows well over 500 such foreclosures. Defendants have accomplished more than 50 VA foreclosures during the last five years.

1848. There are questions of law and fact common to the class, which common issues predominate over any issues involving only individual class members. For example, and without limitation: (a.) whether Defendants' foreclosure upon a VA Deed of Trust is lawful where the noteholder or servicer have not otherwise complied with VA regulations and governing law; (b.) whether VA regulations and governing law are incorporated within the Defendants' Deed of Trust duties; and (c.) what remedies are available for such a breach of fiduciary duty.

1849. Plaintiff's claims are typical of those of the class members. All are based on the same facts and legal theories. The letters, appointment of substitute trustee documents, and trustees deeds are standardized and used across all Virginia jurisdictions and the full class period. The violations alleged are the same and the class claims will rise and fall entirely based upon whether or not Plaintiff's claims rise or fall.

1850.   The Plaintiff will fairly and adequately protect the interests of the class.  Plaintiff has retained counsel experienced in handling actions involving unlawful practices against consumers and class actions.  Neither Plaintiff nor his counsel has any interests that might cause them not to vigorously pursue this action. Plaintiff is aware of his responsibilities to the putative class and have accepted such responsibilities.

1851.   Certification of a class under Rule 23(b)(1) of the Federal Rules of Civil Procedure is proper.  Prosecuting separate actions by or against individual class members would create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

1852.   Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is appropriate in that Defendants have acted on grounds generally applicable to the class thereby making appropriate declaratory relief with respect to the class as a whole.

1853.   Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

a.   As alleged above, the questions of law or fact common to the members of the classes predominate over any questions affecting an individual member.   Each of the common facts and legal questions in the case overwhelm the more modest individual damages issues.  Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in the case.

b.   A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment as they involve many, if not most, consumers who are otherwise disempowered and unable to

278

afford and bring such claims individually. Further, most consumers whom Defendants will have threatened and contacted for a foreclosure would likely be unaware of their rights under the law or who they could find to represent them in federal litigation. Individual litigation of the uniform issues in this case would be a waste of judicial resources as well. The issues at the core of this case are classwide and should be resolved at one time. One win for one consumer would set the law as for every similarly situated consumer.

1854.   Plaintiff and the putative class allege a cause of action for Defendants' breach of fiduciary duties under the subject Deed of Trust. To the extent that they were properly appointed as trustees, Defendants were the fiduciaries for both the Plaintiff and the putative class and the Noteholder, thus owing fiduciary duties to both parties.

1855.   Defendants breached their fiduciary duties by undertaking the foreclosure sale and the transfer of the real property of the Plaintiff and the putative class without compliance with the Deed of Trust. Specifically, Defendants foreclosed upon the real property when the necessary prerequisite of compliance with the VA regulations and law had not been met.

1856.   As a result, Plaintiff and the putative class suffered injury and are entitled to recover actual damages and costs against Defendants.

## Count IV:  Trustees' Breach of Fiduciary Duties - FHA Loans
### CLASS CLAIM
### (Plaintiffs Boyd, Morgan, Washington, Wilson, Ida Beverley, Anthony Reid, Carolyn Reid)

1857.   Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

1858.   This matter is also brought as a class action for a "FHA Loans" class, initially defined as follows:

> All natural persons who were the record owners in fee simple of real property located in the Richmond Division of the Eastern District of

Virginia that by a recorded Deed of Trust secured payment of a loan insured by the Federal Housing Administration and for which property 1) Defendants attempted to conduct a foreclosure and/or 2) Defendants drafted, executed and recorded a foreclosure Trustee's Deed upon such Deed of Trust within the five years prior to the filing of the Complaint, and for whom the records of the noteholder or servicer did not contain any record of an attempt to provide a face-to-face meeting with the class member prior to the date of such foreclosure or attempted foreclosure. Excluded from the class are employees of the Defendants.

1859.  Plaintiffs incorporate their prior allegations and estimates that the class is so numerous that joinder of all members is impractical.

1860.  Plaintiffs' proposed class counsel is in possession of a substantial number of correspondences and Substitute Trustee appointment documents that Defendants have mailed to consumers. Plaintiffs' proposed class counsel also has a substantial number of Trustee's Deeds and Reports that Defendants have filed with the Commissioner Accounts. These documents have remained consistent and uniform across time, Virginia jurisdictions and consumers.

1861.  Defendants have conducted and attempted to conduct hundreds of foreclosures in Virginia.  A review of just Fairfax County land records for 2011 shows well over 500 such foreclosures. Defendants have accomplished more than 50 FHA foreclosures during the last five years.

1862.  There are questions of law and fact common to the class, which common issues predominate over any issues involving only individual class members.  For example, and without limitation:  (a.) whether Defendants' foreclosure upon a FHA Deed of Trust is lawful where the noteholder or servicer have not otherwise complied with VA regulations and governing law; (b.) whether HUD regulations and governing law are incorporated within the Defendants' Deed of Trust duties; and (c.) what remedies are available for such a breach of fiduciary duty.

1863.  Plaintiffs' claims are typical of those of the class members.  All are based on the same facts and legal theories.  The letters, appointment of substitute trustee documents, and trustees deeds are standardized and used across all Virginia jurisdictions and the full class period. The violations alleged are the same and the class claims will rise and fall entirely based upon whether or not Plaintiffs' claims rise or fall.

1864.  The Plaintiffs will fairly and adequately protect the interests of the class. Plaintiffs have retained counsel experienced in handling actions involving unlawful practices against consumers and class actions.  Neither Plaintiffs nor their counsel have any interests that might cause them not to vigorously pursue this action. Plaintiffs are aware of their responsibilities to the putative class and have accepted such responsibilities.

1865.  Certification of a class under Rule 23(b)(1) of the Federal Rules of Civil Procedure is proper.  Prosecuting separate actions by or against individual class members would create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

1866.  Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is appropriate in that Defendants have acted on grounds generally applicable to the class thereby making appropriate declaratory relief with respect to the class as a whole.

1867.  Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

a.      As alleged above, the questions of law or fact common to the members of the classes predominate over any questions affecting an individual member.  Each of the common facts and legal questions in the case overwhelm the more modest individual damages issues.

Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in the case.

b.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment as they involve many, if not most, consumers who are otherwise disempowered and unable to afford and bring such claims individually. Further, most consumers whom Defendants will have threatened and contacted for a foreclosure would likely be unaware of their rights under the law or who they could find to represent them in federal litigation. Individual litigation of the uniform issues in this case would be a waste of judicial resources as well. The issues at the core of this case are classwide and should be resolved at one time. One win for one consumer would set the law as for every similarly situated consumer.

1868.  Plaintiffs and the putative class allege a cause of action for Defendants' breach of fiduciary duties under the subject Deed of Trust. To the extent that they were properly appointed as trustees, Defendants were the fiduciaries for both the Plaintiffs and the putative class and the Noteholder, thus owing fiduciary duties to both parties.

1869.  Defendants breached their fiduciary duties by undertaking or attempting to undertake a foreclosure sale and the transfer of the real property of the Plaintiffs and the putative class without compliance with the Deed of Trust. Specifically, Defendants foreclosed or attempted to foreclose upon the real property when the necessary prerequisite of compliance with the HUD regulations and law had not been met.

1870.  As a result, Plaintiffs and the putative class suffered injury and are entitled to recover actual damages and costs against Defendants.

**Count V: Violation of 18 U.S.C. § 1961**
**Racketeer Influenced and Corrupt Organizations Act**

## CLASS CLAIM
### (All Plaintiffs)

1871.  Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

1872.  This matter is brought as a class action on behalf a second class – the "RICO Class" - initially defined as follows:

> All natural persons who were the record owners in fee simple of real property located in the Richmond Division of the Eastern District of Virginia that by a recorded Deed of Trust secured payment of a loan and for which property Defendants attempted a foreclosure upon such Deed of Trust within the four years prior to the filing of the Complaint.  Excluded from the class are employees of the Defendants.

1873.  Plaintiffs incorporate their prior allegations and estimates that the class is so numerous that joinder of all members is impractical.

1874.  Plaintiffs' counsel is in possession of a substantial number of correspondences and substitute trustee documents that Defendants mailed to consumers. Plaintiffs' counsel also has a substantial number of Trustees Deeds and Reports that Defendants mailed to consumers and/or filed with the Commissioners of Accounts.  These documents have remained consistent and uniform across time, Virginia jurisdictions and consumers.

1875.  Defendant has conducted and attempted to conduct hundreds of foreclosures in Virginia.  A review of just Fairfax County land records for 2011 shows well over 500 such foreclosures.

1876.  Plaintiffs' counsel alleges that Defendants uniformly used the set of fraudulent processes and business actions, as demonstrated in this case, across all foreclosure files. Plaintiffs' counsel assumes that this may not have always been the case – at some time in the past Defendants' attorneys may have actually signed documents, determined whether a Note was

actually lost and confirmed the actual creditor/servicer before claiming their appointment as Trustee. However, they are currently unable to determine when this lawful conduct ended.

1877. There are questions of law and fact common to the class, which common issues predominate over any issues involving only individual class members. For example, and without limitation: (a.) whether Defendants constituted a RICO enterprise; (b.) whether Defendants' falsification of foreclosure documents constituted mail or wire fraud; (c.) what remedies are available for such a RICO violation.

1878. Plaintiffs' claims are typical of those of the class members. All are based on the same facts and legal theories. The letters, deed of appointment of substitute trustee, and trustees deeds are standardized and used across all Virginia jurisdictions and the full class period. The violations alleged are the same and the class claims will rise and fall entirely based upon whether or not Plaintiffs' claims rise or fall.

1879. The Plaintiffs will fairly and adequately protect the interests of the class. Plaintiffs have retained counsel experienced in handling actions involving unlawful practices against consumers and class actions. Neither Plaintiffs nor their counsel have any interests that might cause them not to vigorously pursue this action. Plaintiffs are aware of their responsibilities to the putative class and have accepted such responsibilities.

1880. Certification of a class under Rule 23(b)(1) of the Federal Rules of Civil Procedure is appropriate. Prosecuting separate actions by or against individual class members would create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

1881.  Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is appropriate in that Defendants have acted on grounds generally applicable to the class thereby making appropriate declaratory relief with respect to the class as a whole.

1882.  Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

a.  As alleged above, the questions of law or fact common to the members of the classes predominate over any questions affecting an individual member.  Each of the common facts and legal questions in the case overwhelm the more modest individual damages issues. Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in the case.

b.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment as they involve many, if not most, consumers who are otherwise disempowered and unable to afford and bring such claims individually.  Further, most consumers whom Defendants will have threatened and contacted for a foreclosure would likely be unaware of their rights under the law, or who they could find to represent them in federal litigation. Individual litigation of the uniform issues in this case would be a waste of judicial resources as well. The issues at the core of this case are classwide and should be resolved one time.  One win for one consumer would set the law as for every similarly situated consumer.

1883.  The Defendants and Plaintiffs' previously identified mortgage loan servicers (including, by example, Wells Fargo, Chase, OneWest, PNC, etc.) constitute an "enterprise" as defined by 18 U.S.C § 1961, as distinct corporations or legal entities.

1884.  All of these servicers and each Defendant were engaged for a common economic

purpose of enabling the collection and/or foreclosure of consumer mortgage loans.

1885. Further, the loan servicers and the Defendants existed as an enterprise outside the function of conducting foreclosures in violation of state and federal law. That is, they were not associated with one another merely for the purpose of wrongfully foreclosing on consumers' homes.

1886. The loan servicers are separate entities and each operates in its own self-interest. They are organizationally structured in a defined set of relationships and roles and are so engaged for an ongoing continuous business relationship for the profit of both the Defendants and the servicers.

1887. The racketeering proceeds obtained by Defendant PFCV as a result of the activities of the enterprise ultimately flowed to Defendant Shapiro. The proceeds were also used by each such person in continued furtherance of the enterprise, including, but not limited to paying the salaries of the employees who continued to sign and transmit the affidavits through the mail, as well as the salaries of those who supervised them and directed their actions.

1888. The enterprise had an effect on interstate commerce. For example, the transmission of the fraudulent substitute trustee documents and lost note affidavits through the United States mail system and through the wires for ultimate transmission to consumers and various state courts affected interstate commerce. The transmission of the racketeering proceeds to the Defendants by use of the United States mail system or via electronic wires also affected interstate commerce. Its consumer targets are scattered throughout Virginia, Washington D.C., and Maryland. Court land record recording fees are paid in Maryland, Washington D.C., and Virginia. Additionally, loan servicers and consumers both make payments to Defendants using the United States mails and the wires, such as by electronic payments.

1889.   In their enterprise, the Defendants engaged in a pattern of racketeering activity. This pattern of racketeering activity includes among other things, violations of the mail and wire fraud statutes when the Defendants mailed and transmitted by computers the fraudulent substitute trustee documents and lost note affidavits to consumers, the Commissioners of Accounts, and the Circuit Courts. It began sometime as early as 2008 and continues to date and will be repeated again and again in the future to the detriment of Virginia consumers.

1890.   The conduct and actions of the Defendants as alleged herein – creating fraudulent affidavits for use in collection lawsuits – violated the federal mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343. They involved an ongoing scheme to defraud consumers and courts, and they used both the mails and the interstate wires to send these documents to the consumers, the courts, and the entities whose employees supposedly signed the documents.

1891.   Defendants used this practice with respect to numerous documents that it caused to be filed in Circuit Courts across the Commonwealth of Virginia for years. Plaintiffs' counsel has reviewed the actual land records from dozens of foreclosures conducted by the Defendants, and all of these contain the same fraudulent documents.

1892.   Further, Defendants and the enterprise follow the same unlawful procedures in Maryland and Washington D.C. for the same purposes, and with the same results, victims and methods of committing the offense alleged herein. The facts alleged herein constitute the Defendants regular way of conducting business.

1893.   The Plaintiffs, the Circuit Courts, and the Commissioners of Accounts relied on the fraudulent documents when they mistakenly believed that the Defendants were validly appointed substitute trustees who conducted a proper foreclosure sale.

1894.   By means of example only, Plaintiffs and the putative class lost their homes or

were forced to pay funds to prevent a foreclosure sale from occurring as a direct result of the Defendants' enterprise. The Commissioners of Accounts approved the sales and the accounting of the sales based on the fraudulent documents that the Defendants submitted.

1895.  Plaintiffs and putative class members were injured as a result of the Defendants' violations of 18 U.S.C. § 1962 and are entitled to treble their actual damages, the cost of this suit, and reasonable attorneys' fees.

1896.  Plaintiffs and the putative class also seek an injunction ordering the Defendants to divest themselves of any interest in any enterprise pled herein, including the receipt of racketeering profits; prohibiting the Defendants from continuing to engage in any enterprise pled herein; and ordering the dissolution of each Defendant that has engaged in any enterprise pled herein.

**Count VI: Violations of 15 U.S.C. § 1692 et seq.**
**Fair Debt Collections Practices Act**
**CLASS CLAIM**
**(Plaintiffs Delawter, Calvin Johnson, Cooke, Raymond Hudson, Angela Hudson, Aaron Reed, Tamara Taylor, Wainer, James Turner, Darlene Turner, Damiani, Sharon Johnson, Robert Jones, Craig Turner, Ruth Turner, Draper, Craft, Tomasek, Smolinski, Parakuo Naiterra, Boyd, Morgan, Ida Beverley, Anthony Reid, Carolyn Reid)**

1897.  Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

1898.  Plaintiffs plead that Defendants violated provisions of the FDCPA pursuant to 15 U.S.C. § 1692e, § 1692f, and § 1692g:

a.      Generally, § 1692e prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." Section 1692e also provides a non-exhaustive list of "conduct" that satisfies this general prohibition. Amongst the non-exclusive list of § 1692e prohibited misrepresentations, in addition to the general

proscription of against using "any false, deceptive, or misleading representation or means in connection with the collection of any debt", are:

> (2) The false representation of –
> (A) the character, amount, or legal status of any debt; or
> (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.
> ...
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
> ...
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

> 15 U.S.C. § 1692e

    c.    Section 1692f prohibits generally the use of "unfair or unconscionable means to collect or attempt to collect any debt", and specifically in relevant part:

> (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by agreement creating the debt or permitted by law.
> ...
> (6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if –
>> (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;

> 15 U.S.C. §1692f

    d.    A debt collector must provide a consumer with the name of the creditor to whom the debt is owed pursuant to § 1692g:

> (a) Notice of debt; contents.
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing –
> ...
>> (2) the name of the creditor to whom the debt is owed;
>> ...

289

(4) a statement that if the consumer notifies the debt collector *in writing* within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector.

15 U.S.C. §1692g(a)(2) and §1692g(a)(4) (emphasis added)

1899.   For their class claim brought pursuant to the FDCPA, the Plaintiffs propose a class initially defined as follows: [4]

All natural persons who were the record owners in fee simple of real property located in the Richmond Division of the Eastern District of Virginia that by a recorded Deed of Trust secured payment of a loan and to whom the Defendants sent a letter regarding a possible foreclosure sale of their home within the one-year period preceding the filing date of this Complaint. Excluded from the class are employees of the Defendants.

1900.   Defendants violated § 1692e as to each class member by misrepresenting the noteholders of Plaintiffs' loan through Defendants' systematic use identifying the loan servicers as the beneficiary, noteholder, investor and/or creditor of Plaintiffs' loan in their letters to the class members.

1901.   Plaintiffs allege this class definition because all or substantially all of the class members would have received correspondence from the Defendants with a subject line that stated their loan servicers were the holders of their loans.

---

[4] Regardless of what is alleged as a proffered class definition in a complaint, the Court is free to define the class as it finds more appropriate. *Bratcher v. Nat'l Standard Life Ins. Co.* (*In re Monumental Life Ins. Co.*), 365 F.3d 408, 414 (5th Cir. 2004) *cert. denied*, 125 S.Ct. 277 (2004); *Meyer v. Citizens & S. Nat'l Bank*, 106 F.R.D. 356, 360 (M.D. Ga. 1985) ("The Court has discretion in ruling on a motion to certify a class. This discretion extends to defining the scope of the class."); *Bafus v. Aspen Realty, Inc.*, 236 F.R.D. 652, 655 (D. Idaho 2006) ("At the hearing in this matter, Plaintiffs offered this revised definition. The Court finds that the revised definition better reflects Plaintiffs' claims in these actions. Therefore, the Court will consider the revised definition in making its class certification determination."). *See also Woods v. Stewart Title Guaranty Company*, 2007 WL 2872219 (D. Md. Sept. 17, 2007) (certifying a class of individuals as proposed by plaintiffs during class certification briefing that was broader than the class plaintiffs' alleged in the class action complaint after discovery uncovered a broader group of individuals harmed by the same practice alleged in the complaint).

1902.   Plaintiffs also allege a "Lost Note" subclass initially defined as:

> All natural persons who were the record owners in fee simple of real property located in the Richmond Division of the Eastern District of Virginia that by a recorded Deed of Trust secured payment of a loan and to whom the Defendants sent a letter regarding a possible foreclosure sale of their home, as well as correspondence stating that the mortgage note was lost or otherwise unavailable within the one year period preceding the filing date of this Complaint. Excluded from the subclass are employees of the Defendants.

1903.   Defendants violated §1692e as to the Lost Note subclass because they forwarded correspondence to consumers that falsely represented that the note was lost or unavailable and/or that the Defendants had satisfied the requirements of Va. Code § 55-59.1.

1904.   Plaintiffs also allege an "Failure to Identify Creditor" subclass initially defined as follows:

> All natural persons who were the record owners in fee simple of real property located in the Richmond Division of the Eastern District of Virginia that by a recorded Deed of Trust secured payment of a loan and to whom the Defendants sent a letter regarding a possible foreclosure sale of their home and to whom the Defendants failed to identify the creditor to whom the debt was owed within the one year period preceding the filing date of this Complaint.  Excluded from the subclass are employees of the Defendants.

1905.   Defendants violated §1692g as to the Failure to Identify Creditor subclass because they failed to identify the creditor to whom the debt was owed in their initial correspondences or within five days of their initial correspondences to consumers.

1906.   Plaintiffs also allege a "Validation of Debts" subclass initially defined as follows:

> All natural persons who were the record owners in fee simple of real property located in the Richmond Division of the Eastern District of Virginia that by a recorded Deed of Trust secured payment of a loan and to whom the Defendants sent a letter regarding a possible foreclosure sale of their home and to whom the Defendants failed to include in their initial communication or within five days thereafter the requirement that the debt validation request be in writing within the one year period preceding the

291

filing date of this Complaint. Excluded from the subclass are employees of the Defendants.

1907. Defendants violated §1692g as to the Validation of Debts subclass because they failed to failed to disclose to the Plaintiffs and the putative class that their debt validation request must be *in writing* in order to trigger the Defendants' duty to provide the requested information correspondences to consumers.

1908. Plaintiffs allege a "Defective Appointment of Substitute Trustee" subclass initially defined as follows:

> All natural persons who were the record owners in fee simple of real property located in the Richmond Division of the Eastern District of Virginia that by a recorded Deed of Trust secured payment of a loan and to whom the Defendants sent a letter regarding a possible foreclosure sale of their home that enclosed a purported Substitute Trustee appointment document when the Defendants had no right to possession of the property, within the one year period preceding the filing date of this Complaint. Excluded from the subclass are employees of the Defendants.

1909. Defendants violated §1692e and §1692f as to the Defective Appointment of Substitute Trustee subclass because they falsely stated that they had been properly appointed substitute trustee when in fact the substitution of trustees deeds were either signed by the servicer rather than the noteholder, were not properly notarized, were signed by the Defendants as "attorney in fact" for a purported servicer or noteholder, thereby invalidly appointing themselves as substitute trustees, and/or where the signatures were forged altogether.

1910. Plaintiffs allege a "No Right to Foreclose" subclass initially defined as follows:

> All natural persons who were the record owners in fee simple of real property located in the Richmond Division of the Eastern District of Virginia that by a recorded Deed of Trust secured payment of a loan that was owned or insured by Fannie Mae, Freddie Mac, the Department of Veteran Affairs and/or the Federal Housing Administration and to whom Defendants mailed a letter in an attempt to collect a debt when the prerequisites to foreclosure had not been satisfied within the one year

period preceding the filing date of this Complaint. Excluded from the class are employees of the Defendants.

1911.   Defendants violated §1692e and §1692f as to the No Right to Foreclose subclass because they falsely stated and attempted to or did conduct foreclosure sales on homes where the Defendants failed to follow the required prerequisites to foreclosure as incorporated into the Deeds of Trust.

1912.   Plaintiffs allege a "False Statement in Trustee's Deed" subclass initially defined as follows:

> All natural persons who were the record owners in fee simple of real property located in the Richmond Division of the Eastern District of Virginia that by a recorded Deed of Trust secured payment of a loan and to whom the Defendants sent a letter regarding a possible foreclosure sale of their home and for whom Defendants subsequently drafted, executed and recorded a foreclosure Trustee's Deed upon such Deed of Trust in which they stated the Grantee was the last and highest bidder at the sale when in fact the Grantee was not the actual last and highest bidder at the sale within one year period preceding the filing date of this Complaint. Excluded from the class are employees of the Defendants.

1913.   Defendants violated §1692e as to the False Statement in Trustee's Deed subclass when they falsely stated in the Trustee's Deed that the Grantee was the last and highest bidder at the foreclosure sale when in fact a third party was actually the last and highest bidder at the foreclosure sale.

1914.   Plaintiffs allege an "False Statement About Fees" subclass initially defined as follows:

> All natural persons who were the record owners in fee simple of real property located in the Richmond Division of the Eastern District of Virginia that by a recorded Deed of Trust secured payment of a loan and to whom the Defendants sent a letter regarding a possible foreclosure sale of their home and thereafter demanded and/or accepted fees of any amount within the one-year period preceding the filing date of this Complaint. Excluded from the class are employees of the Defendants.

293

Plaintiffs allege the following Fannie Mae subclass under the False Statement About Fees subclass:

All natural persons who were the record owners in fee simple of real property located in the Richmond Division of the Eastern District of Virginia that by a recorded Deed of Trust secured payment of a loan where Fannie Mae was the creditor, beneficiary, investor and/or noteholder and to whom the Defendants sent a letter regarding a possible foreclosure sale of their home and thereafter demanded and/or accepted payment of fees in excess of $600.00 within the one year period preceding the filing date of this Complaint. Excluded from the subclass are employees of the Defendants.

Plaintiffs allege the following Freddie Mac subclass under the False Statement About Fees subclass:

All natural persons who were the record owners in fee simple of real property located in the Richmond Division of the Eastern District of Virginia that by a recorded Deed of Trust secured payment of a loan where Freddie Mac was the creditor, beneficiary, investor and/or noteholder and to whom the Defendants sent a letter regarding a possible foreclosure sale of their home and thereafter demanded and/or accepted payment of fees in excess of $650.00 within the one year period preceding the filing date of this Complaint. Excluded from the subclass are employees of the Defendants.

1915. Defendants violated §1692e and §1692f as to the False Statement About Fees subclass because they made a series of false statements about the amount of their fees in their letters to Plaintiffs and/or their accounting statements to the Commissioners of Accounts, in which the collected or attempted to collect fees related to Plaintiffs' foreclosures where there was no right to foreclose and/or no valid appointment of them as substitute trustees.

1916. The Fannie Mae subclass involves claims relating to Defendants collection of fees for more than $600.00 despite knowing that they had a contractual agreement with Fannie Mae that indicated their fees would be capped at $600.00.

1917.  The Freddie Mac subclass involves claims relating to Defendants collection of fees for more than $600.00 despite knowing that they had a contractual agreement with Freddie Mac that indicated their fees would be capped at $650.00.

1918.  Plaintiffs incorporate their prior allegations and estimate that the class is so numerous that joinder of all members is impractical.

1919.  Plaintiffs' counsel is in possession of a substantial number of correspondences and substitute trustee documents that Defendants mailed to consumers. Plaintiffs' counsel also has a substantial number of Trustees Deeds and Reports that Defendants mailed to consumers and/or filed with the Commissioners of Accounts. These documents have remained consistent and uniform across time, Virginia jurisdictions and consumers.

1920.  Defendants use the same form correspondences that they send to consumers across Virginia. These form correspondences include the initial correspondences to consumers, lost note letters, substitution of trustee's documents, notices of sale, payoff statements and reinstatement quotes.

1921.  Defendants have conducted and attempted hundreds of foreclosures in Virginia. A review of just Fairfax County land records for 2011 shows well over 500 such foreclosures.

1922.  There are questions of law and fact common to the class, which common issues predominate over any issues involving only individual class members. For example, and without limitation:   (a.) whether Defendants routinely misrepresented the identity of the creditor, noteholder, or beneficiary of the debts that they were attempting to collect from Plaintiffs and the putative class members; (b.)  whether the Defendants falsely represented the compensation that they could lawfully receive as a result  of these attempted and/or actual foreclosures; (c.) whether the Defendants threatened to take or took action that could not legally be taken; (d.)

whether the Defendants used false representations and deceptive means in their attempts to collect money from the Plaintiffs and the putative class members; (e) whether Defendants failed to properly inform Plaintiffs and the putative class members of their rights to obtain verification of the debt under the FDCPA; and (f) whether Defendants could lawfully foreclose upon Plaintiffs and the putative class members prior to meeting the requirements of the Deed of Trust and/or other regulations and governing law .

1923. Plaintiffs' claims are typical of those of the class members. All are based on the same facts, form documents and legal theories. The letters and substitute trustee appointment documents are standardized and used across all Virginia jurisdictions and the full class period. The violations alleged are the same and the class claims will rise and fall entirely based upon whether or not Plaintiffs' claims rise or fall.

1924. The Plaintiffs will fairly and adequately protect the interests of the class. Plaintiffs have retained counsel experienced in handling actions involving unlawful practices against consumers and class actions. Neither Plaintiffs nor their counsel have any interests that might cause them not to vigorously pursue this action. Plaintiffs are aware of their responsibilities to the putative classes and have accepted such responsibilities.

1925. Certification of a class under Rule 23(b)(1) of the Federal Rules of Civil Procedure is proper. Prosecuting separate actions by or against individual class members would create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. Defendants have closed their law firm. The primary asset available for all class members is the limited insurance fund held by Defendants.

1926. Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is appropriate in that Defendants have acted on grounds generally applicable to the class thereby making appropriate declaratory relief with respect to the class as a whole.

1927. Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

a.     As alleged above, the questions of law or fact common to the members of the classes predominate over any questions affecting an individual member. Each of the common facts and legal questions in the case overwhelm the more modest individual damages issues. Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in the case.

b.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment as they involve many, if not most, consumers who are otherwise disempowered and unable to afford and bring such claims individually. Further, most consumers who Defendants will have threatened and contacted for a foreclosure would likely be unaware of their rights under the law or who they could find to represent them in federal litigation. The issues at the core of this case are class wide and should be resolved at one time. One win for one consumer would set the law as for every similarly situated consumer.

1928. As a result of Defendants actions, inactions, or omissions, Plaintiffs and the putative class members identified have suffered injury including but not limited to the loss of their homes, monetary loss for amounts they were required to pay to avoid foreclosure, humiliation, stress over the subject debt, and mental anguish.

1929.  Plaintiffs and the putative class are therefore entitled to recover statutory damages, actual damages, reasonable attorney's fees, and costs against Defendants pursuant to 15 U.S.C. § 1692k.

### Count VII:  Civil Conspiracy
### INDIVIDUAL CLAIMS
### (All Plaintiffs)

1930.  Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

1931.  Plaintiffs allege a cause of action against Defendants for civil conspiracy under the common law of the Commonwealth of Virginia.

1932.  With respect to each Plaintiff, Defendants, separate entities and/or persons, along with each of Plaintiffs' previously identified loan servicers, accomplished, through concerted action and a preconceived plan and unity of design and purpose, actions including but not limited to, the attempted or actual collection of an alleged debt and/or the unauthorized attempted or actual foreclosure of Plaintiffs' property in violation of Virginia and Federal law.

1933.  Furthermore, Defendants, separate entities and/or persons, along with each of Plaintiffs' previously identified loan servicers, accomplished, through concerted action and a preconceived plan and unity of design and purpose, actions including but not limited to, the use of falsified signatures and perjurous statements in their correspondence to Plaintiffs and in documents filed with Virginia Circuit Courts and their Commissioners of Accounts in violation of Virginia and Federal law.

1934.  Defendants' unlawful purpose was to use such fraudulent signatures and sworn statements to make false statements to the Plaintiffs, Commissioners of Accounts, and Circuit

Courts – ones that the parties knew were false when made and to proceed in the collection of a debt and foreclosure that Defendants knew was not in compliance with the law.

1935. Upon information and belief, with respect to each Plaintiff, the Defendants engaged in these actions with the Plaintiffs' above referenced loan servicers, under a preconceived plan of unity of design and purpose, to rush each Plaintiff through the foreclosure process. The Defendants each receive monetary benefit from doing so, including, but not limited to, incentive payments from each of the above referenced loan servicers for the speed with which Defendants are able to conduct foreclosures.

1936. As a result of Defendants' conduct in furtherance of the conspiracy, Plaintiffs suffered injury and are entitled to recover damages including, but not limited to, actual damages and costs against Defendants.

1937. Plaintiffs also suffered substantial unliquidated and noneconomic damages for the damage to their reputations, their time and ongoing distress over the alleged subject debt.

1938. Defendants conducted themselves in this manner with the intent to defraud and with legal and actual malice as to the Plaintiffs and to the Circuit Courts. Therefore, each of the Plaintiffs is entitled to recover, and each Defendant is obligated to pay, punitive damages.

## Count VIII: Fraud
### INDIVIDUAL CLAIM
**(Plaintiffs David Delawter and Calvin Johnson)**

1939. Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

1940. Plaintiffs allege a cause of action for actual and/or constructive fraud under the common law of the Commonwealth of Virginia.

1941. Defendants made a material false representation in Plaintiffs' Substitution of Trustee document filed in the Circuit Court for Orange County, including but not limited to, that "OneWest Bank, F.S.B." was the current Noteholder of Plaintiffs' mortgage.

1942. Upon information and belief, Defendants further misrepresented that the individual who signed the Substitution of Trustee document on behalf of "OneWest Bank, F.S.B." purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. In reality, the Defendants prepared the substitute trustee appointment document and signed it themselves where it was notarized by someone who claimed to be the notary whose stamp appeared on the page and who claimed to have witnessed the signature of the alleged representative.

1943. Upon information and belief, Defendants also misrepresented that the individual who notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

1944. Upon information and belief, in their correspondence and letters to Plaintiffs, Defendants made one or more material misrepresentations, including but not limited to, that the servicer of Plaintiffs' loan was also the creditor to whom the debt was owed and the current noteholder of Plaintiffs' mortgage, that Plaintiffs' promissory note was unavailable and that Defendant PFCV was a validly appointed trustee.

1945. Upon information and belief, Defendants made materially false representations in Plaintiffs' Trustee's Deed document filed in the Circuit Court for Orange County, including but not limited to, that Defendant PFCV was the current noteholder of Plaintiffs' mortgage at the

time that the document was prepared, that the property was conveyed to the last and highest bidder at the foreclosure sale, that they had the authority to conduct a foreclosure sale, and that Defendant PFCV was a validly appointed substitute trustee.

1946. Upon information and belief, Defendants further misrepresented that the individual who signed the Trustee's Deed on behalf of Defendant PFCV purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

1947. Upon information and belief, Defendants also misrepresented that the individual who notarized the Trustee's Deed purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

1948. Upon information and belief, Defendants made materially false representations in the foreclosure accounting statement filed with the Commissioner of Accounts for Orange County, including but not limited to the submission of fraudulent documents with the Accounting Statement and misrepresentations about the fees and costs associated with the foreclosure sale.

1949. Defendants intentionally made these misrepresentations to Plaintiffs, the Virginia Circuit Courts, and the Commissioners of Accounts with the intent to mislead them into believing these representations were true. Plaintiffs relied on these misrepresentations to his detriment.

1950. As a result of Defendants' misrepresentations, Plaintiffs suffered injury and are entitled to recover actual damages and costs against Defendants.

1951.  Plaintiffs also suffered substantial unliquidated and noneconomic damages for the damage to their reputation, their time and their ongoing distress over the subject debt.

1952.  Additionally, because Defendants' actions were willful and with knowledge of their untruthfulness or with conscious disregard for Plaintiffs' rights, Plaintiffs are entitled to an award of punitive damages.

### Count IX:  Fraud
### INDIVIDUAL CLAIM
(Plaintiff Cooke)

1953.  Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

1954.  Plaintiff alleges a cause of action for actual and/or constructive fraud under the common law of the Commonwealth of Virginia.

1955.  Defendants made a material false representation in Plaintiff's Substitution of Trustee document filed in the Circuit Court for the City of Richmond, including but not limited to, that "GMAC Mortgage, LLC" was the current Noteholder of Plaintiff's mortgage.

1956.  Upon information and belief, Defendants further misrepresented that the individual who signed the Substitution of Trustee document on behalf of "GMAC Mortgage, LLC" purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. In reality, the Defendants prepared the substitute trustee appointment document and signed it themselves where it was notarized by someone who claimed to be the notary whose stamp appeared on the page and who claimed to have witnessed the signature of the alleged representative.

1957. Upon information and belief, Defendants also misrepresented that the individual who notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

1958. Upon information and belief, in their correspondence and letters to Plaintiff, Defendants made one or more material misrepresentations, including but not limited to, that the servicer of Plaintiff's loan was also the creditor to whom the debt was owed and the current noteholder of Plaintiff's mortgage, that Plaintiff's promissory note was unavailable and that Defendant PFCV was a validly appointed trustee.

1959. Upon information and belief, Defendants made materially false representations in Plaintiff's Trustee's Deed document filed in the Circuit Court for the City of Richmond, including but not limited to, that Defendant PFCV was the current noteholder of Plaintiff's mortgage at the time that the document was prepared, that the property was conveyed to the last and highest bidder at the foreclosure sale, that they had the authority to conduct a foreclosure sale, and that Defendant PFCV was a validly appointed substitute trustee.

1960. Upon information and belief, Defendants further misrepresented that the individual who signed the Trustee's Deed on behalf of Defendant PFCV purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

1961. Upon information and belief, Defendants also misrepresented that the individual who notarized the Trustee's Deed purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such

personal knowledge or such legal standing. Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

1962.   Upon information and belief, Defendants made materially false representations in the foreclosure accounting statement filed with the Commissioner of Accounts for the City of Richmond, including but not limited to the submission of fraudulent documents with the Accounting Statement and misrepresentations about the fees and costs associated with the foreclosure sale.

1963.   Defendants intentionally made these misrepresentations to Plaintiff, the Virginia Circuit Courts, and the Commissioners of Accounts with the intent to mislead them into believing these representations were true. Plaintiff relied on these misrepresentations to his detriment.

1964.   As a result of Defendants' misrepresentations, Plaintiff suffered injury and is entitled to recover actual damages and costs against Defendants.

1965.   Plaintiff also suffered substantial unliquidated and noneconomic damages for the damage to his reputation, his time and his ongoing distress over the subject debt.

1966.   Additionally, because Defendants' actions were willful and with knowledge of their untruthfulness or with conscious disregard for Plaintiff's rights, Plaintiff is entitled to an award of punitive damages.

## Count X: Fraud
## INDIVIDUAL CLAIM
### (Plaintiffs Angela and Raymond Hudson)

1967.   Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

1968.  Plaintiffs allege a cause of action for actual and/or constructive fraud under the common law of the Commonwealth of Virginia.

1969.  Defendants made a material false representation in Plaintiffs' Substitution of Trustee document filed in the Circuit Court for the City of Richmond, including but not limited to, that "Deutsche Bank National Trust Company, as Trustee for HIS Asset Securitization Corporation Trust, 2007-HE2, Mortgage Pass-Through Certificates, Series 2007-HE2" was the current Noteholder of Plaintiffs' mortgage.

1970.  Upon information and belief, Defendants further misrepresented that the individual who signed the Substitution of Trustee document on behalf of "Deutsche Bank National Trust Company, as Trustee for HIS Asset Securitization Corporation Trust, 2007-HE2, Mortgage Pass-Through Certificates, Series 2007-HE2" purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. In reality, the Defendants prepared the substitute trustee appointment document and signed it themselves where it was notarized by someone who claimed to be the notary whose stamp appeared on the page and who claimed to have witnessed the signature of the alleged representative.

1971.  Upon information and belief, Defendants also misrepresented that the individual who notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

1972.  Upon information and belief, in their correspondence and letters to Plaintiffs, Defendants made one or more material misrepresentations, including but not limited to, that the servicer of Plaintiffs' loan was also the creditor to whom the debt was owed and the current

noteholder of Plaintiffs' mortgage, that Plaintiffs' promissory note was unavailable and that Defendant PFCV was a validly appointed trustee.

1973. Defendants intentionally made these misrepresentations to Plaintiffs and the City of Richmond Circuit Court with the intent to mislead them into believing these representations were true. Plaintiffs relied on these misrepresentations to his detriment.

1974. As a result of Defendants' misrepresentations, Plaintiffs suffered injury and are entitled to recover actual damages and costs against Defendants.

1975. Plaintiffs also suffered substantial unliquidated and noneconomic damages for the damage to their reputation, their time and their ongoing distress over the subject debt.

1976. Additionally, because Defendants' actions were willful and with knowledge of their untruthfulness or with conscious disregard for Plaintiffs' rights, Plaintiffs are entitled to an award of punitive damages.

### Count XI: Fraud
### INDIVIDUAL CLAIM
### (Plaintiff Aaron Reed)

1977. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

1978. Plaintiff alleges a cause of action for actual and/or constructive fraud under the common law of the Commonwealth of Virginia.

1979. Defendants made a material false representation in Plaintiff's Substitution of Trustee document filed in the Circuit Court for Hanover County, including but not limited to, that "PNC Bank, National Association" was the current Noteholder of Plaintiff's mortgage.

1980. Upon information and belief, Defendants further misrepresented that the individual who signed the Substitution of Trustee document on behalf of "PNC Bank, National

306

Association" purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. In reality, the Defendants prepared the substitute trustee appointment document and signed it themselves where it was notarized by someone who claimed to be the notary whose stamp appeared on the page and who claimed to have witnessed the signature of the alleged representative.

1981. Upon information and belief, Defendants also misrepresented that the individual who notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

1982. Upon information and belief, in their correspondence and letters to Plaintiff, Defendants made one or more material misrepresentations, including but not limited to, that the servicer of Plaintiff's loan was also the creditor to whom the debt was owed and the current noteholder of Plaintiff's mortgage, that Plaintiff's promissory note was unavailable and that Defendant PFCV was a validly appointed trustee.

1983. Upon information and belief, Defendants made materially false representations in Plaintiff's Trustee's Deed document filed in the Circuit Court for Hanover County, including but not limited to, that Defendant PFCV was the current noteholder of Plaintiff's mortgage at the time that the document was prepared, that the property was conveyed to the last and highest bidder at the foreclosure sale, that they had the authority to conduct a foreclosure sale, and that Defendant PFCV was a validly appointed substitute trustee.

1984. Upon information and belief, Defendants further misrepresented that the individual who signed the Trustee's Deed on behalf of Defendant PFCV purporting to have

307

personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

1985. Upon information and belief, Defendants also misrepresented that the individual who notarized the Trustee's Deed purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

1986. Upon information and belief, the Defendants made materially false representations in the foreclosure accounting statement filed with the Commissioner of Accounts for Hanover County, including but not limited to the submission of fraudulent documents with the Accounting Statement and misrepresentations about the fees and costs associated with the foreclosure sale.

1987. Defendants intentionally made these misrepresentations to Plaintiff, the Virginia Circuit Courts, and the Commissioners of Accounts with the intent to mislead them into believing these representations were true. Plaintiff relied on these misrepresentations to his detriment.

1988. As a result of Defendants' misrepresentations, Plaintiff suffered injury and is entitled to recover actual damages and costs against Defendants.

1989. Plaintiff also suffered substantial unliquidated and noneconomic damages for the damage to his reputation, his time and his ongoing distress over the subject debt.

1990. Additionally, because Defendants' actions were willful and with knowledge of their untruthfulness or with conscious disregard for Plaintiff's rights, Plaintiff is entitled to an award of punitive damages.

### Count XII: Fraud
### INDIVIDUAL CLAIM
### (Plaintiff Tamara Taylor)

1991. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

1992. Plaintiff alleges a cause of action for actual and/or constructive fraud under the common law of the Commonwealth of Virginia.

1993. Defendants made a material false representation in Plaintiff's Substitution of Trustee document filed in the Circuit Court for the City of Richmond, including but not limited to, that "Deutsche Bank National Trust Company, as Trustee for Fremont Home Loan Trust Series 2006-3" was the current Noteholder of Plaintiff's mortgage.

1994. Upon information and belief, Defendants further misrepresented that the individual who signed the Substitution of Trustee document on behalf of "Deutsche Bank National Trust Company, as Trustee for Fremont Home Loan Trust Series 2006-3" purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. In reality, the Defendants prepared the substitute trustee appointment document and signed it themselves where it was notarized by someone who claimed to be the notary whose stamp appeared on the page and who claimed to have witnessed the signature of the alleged representative.

1995. Upon information and belief, Defendants also misrepresented that the individual who notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

1996. Upon information and belief, in their correspondence and letters to Plaintiff, Defendants made one or more material misrepresentations, including but not limited to, that the servicer of Plaintiff's loan was also the creditor to whom the debt was owed and the current noteholder of Plaintiff's mortgage, that Plaintiff's promissory note was unavailable and that Defendant PFCV was a validly appointed trustee.

1997. Upon information and belief, Defendants made materially false representations in Plaintiff's Trustee's Deed document filed in the Circuit Court for the City of Richmond, including but not limited to, that Defendant PFCV was the current noteholder of Plaintiff's mortgage at the time that the document was prepared, that they had the authority to conduct a foreclosure sale, and that Defendant PFCV was a validly appointed substitute trustee.

1998. Upon information and belief, Defendants further misrepresented that the individual who signed the Trustee's Deed on behalf of Defendant PFCV purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

1999. Upon information and belief, Defendants also misrepresented that the individual who notarized the Trustee's Deed purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

2000. Upon information and belief, Defendants made materially false representations in the foreclosure accounting statement filed with the Commissioner of Accounts for the City of Richmond, including but not limited to the submission of fraudulent documents with the

Accounting Statement and misrepresentations about the fees and costs associated with the foreclosure sale.

2001.  Defendants intentionally made these misrepresentations to Plaintiff, the Virginia Circuit Courts, and the Commissioners of Accounts with the intent to mislead them into believing these representations were true. Plaintiff relied on these misrepresentations to her detriment.

2002.  As a result of Defendants' misrepresentations, Plaintiff suffered injury and is entitled to recover actual damages and costs against Defendants.

2003.  Plaintiff also suffered substantial unliquidated and noneconomic damages for the damage to her reputation, her time and her ongoing distress over the subject debt.

2004.  Additionally, because Defendants' actions were willful and with knowledge of their untruthfulness or with conscious disregard for Plaintiff's rights, Plaintiff is entitled to an award of punitive damages.

### Count XIII:  Fraud
### INDIVIDUAL CLAIM
#### (Plaintiff Beattie)

2005.  Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

2006.  Plaintiff alleges a cause of action for actual and/or constructive fraud under the common law of the Commonwealth of Virginia.

2007.  Defendants made a material false representation in Plaintiff's Substitution of Trustee document filed in the Circuit Court for Chesterfield County, including but not limited to, that "SunTrust Mortgage, Inc." was the current Noteholder of Plaintiff's mortgage.

2008. Upon information and belief, Defendants further misrepresented that the individual who signed the Substitution of Trustee document on behalf of "SunTrust Mortgage, Inc." purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. In reality, the Defendants prepared the substitute trustee appointment document and signed it themselves where it was notarized by someone who claimed to be the notary whose stamp appeared on the page and who claimed to have witnessed the signature of the alleged representative.

2009. Upon information and belief, Defendants also misrepresented that the individual who notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

2010. Upon information and belief, in their correspondence and letters to Plaintiff, Defendants made one or more material misrepresentations, including but not limited to, that the servicer of Plaintiff's loan was also the creditor to whom the debt was owed and the current noteholder of Plaintiff's mortgage, that Plaintiff's promissory note was unavailable and that Defendant PFCV was a validly appointed trustee.

2011. Upon information and belief, Defendants made materially false representations in Plaintiff's Trustee's Deed document filed in the Circuit Court for Chesterfield County, including but not limited to, that Defendant PFCV was the current noteholder of Plaintiff's mortgage at the time that the document was prepared, that they had the authority to conduct a foreclosure sale, and that Defendant PFCV was a validly appointed substitute trustee.

2012.  Upon information and belief, Defendants further misrepresented that the individual who signed the Trustee's Deed on behalf of Defendant PFCV purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

2013.  Upon information and belief, Defendants also misrepresented that the individual who notarized the Trustee's Deed purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

2014.  Upon information and belief, Defendants made materially false representations in the foreclosure accounting statement filed with the Commissioner of Accounts for Chesterfield County, including but not limited to the submission of fraudulent documents with the Accounting Statement and misrepresentations about the fees and costs associated with the foreclosure sale.

2015.  Defendants intentionally made these misrepresentations to Plaintiff, the Virginia Circuit Courts, and the Commissioners of Accounts with the intent to mislead them into believing these representations were true. Plaintiff relied on these misrepresentations to her detriment.

2016.  As a result of Defendants' misrepresentations, Plaintiff suffered injury and is entitled to recover actual damages and costs against Defendants.

2017.  Plaintiff also suffered substantial unliquidated and noneconomic damages for the damage to her reputation, her time and her ongoing distress over the subject debt.

2018.  Additionally, because Defendants' actions were willful and with knowledge of their untruthfulness or with conscious disregard for Plaintiff's rights, Plaintiff is entitled to an award of punitive damages.

**Count XIV:  Fraud**
**INDIVIDUAL CLAIM**
**(Plaintiffs Mohammad Mohassel and Sheida Borhani)**

2019.  Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

2020.  Plaintiffs allege a cause of action for actual and/or constructive fraud under the common law of the Commonwealth of Virginia.

2021.  Defendants made a material false representation in Plaintiffs' Substitution of Trustee document filed in the Circuit Court for Lunenburg County, including but not limited to, that "Bank of America, N.A." was the current Noteholder of Plaintiffs' mortgage.

2022.  Upon information and belief, Defendants further misrepresented that the individual who signed the Substitution of Trustee document on behalf of "Bank of America, N.A." purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. In reality, the Defendants prepared the substitute trustee appointment document and signed it themselves where it was notarized by someone who claimed to be the notary whose stamp appeared on the page and who claimed to have witnessed the signature of the alleged representative.

2023.  Upon information and belief, Defendants also misrepresented that the individual who notarized the Substitution of Trustee document purporting to have personal knowledge of

the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

2024. Upon information and belief, in their correspondence and letters to Plaintiffs, Defendants made one or more material misrepresentations, including but not limited to, that the servicer of Plaintiffs' loan was also the creditor to whom the debt was owed and the current noteholder of Plaintiffs' mortgage, that Plaintiffs' promissory note was unavailable and that Defendant PFCV was a validly appointed trustee.

2025. Upon information and belief, Defendants made materially false representations in Plaintiffs' Trustee's Deed document filed in the Circuit Court for Lunenburg County, including but not limited to, that Defendant PFCV was the current noteholder of Plaintiffs' mortgage at the time that the document was prepared, that the property was conveyed to the last and highest bidder at the foreclosure sale, that they had the authority to conduct a foreclosure sale, and that Defendant PFCV was a validly appointed substitute trustee.

2026. Upon information and belief, Defendants further misrepresented that the individual who signed the Trustee's Deed on behalf of Defendant PFCV purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

2027. Upon information and belief, Defendants also misrepresented that the individual who notarized the Trustee's Deed purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

315

2028.  Defendants intentionally made these misrepresentations to Plaintiffs and the Lunenburg County Circuit Court with the intent to mislead them into believing these representations were true. Plaintiffs relied on these misrepresentations to his detriment.

2029.  As a result of Defendants' misrepresentations, Plaintiffs suffered injury and are entitled to recover actual damages and costs against Defendants.

2030.  Plaintiffs also suffered substantial unliquidated and noneconomic damages for the damage to their reputation, their time and their ongoing distress over the subject debt.

2031.  Additionally, because Defendants' actions were willful and with knowledge of their untruthfulness or with conscious disregard for Plaintiffs' rights, Plaintiffs are entitled to an award of punitive damages.

**Count XV: Fraud**
**INDIVIDUAL CLAIM**
**(Plaintiff Langford)**

2032.  Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

2033.  Plaintiff alleges a cause of action for actual and/or constructive fraud under the common law of the Commonwealth of Virginia.

2034.  Defendants made a material false representation in Plaintiff's Substitution of Trustee document filed in the Circuit Court for Chesterfield County, including but not limited to, that "GMAC Mortgage, LLC" was the current Noteholder of Plaintiff's mortgage.

2035.  Upon information and belief, Defendants further misrepresented that the individual who signed the Substitution of Trustee document on behalf of "GMAC Mortgage, LLC" purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such

legal standing. In reality, the Defendants prepared the substitute trustee appointment document and signed it themselves where it was notarized by someone who claimed to be the notary whose stamp appeared on the page and who claimed to have witnessed the signature of the alleged representative.

2036. Upon information and belief, Defendants also misrepresented that the individual who notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

2037. Upon information and belief, in their correspondence and letters to Plaintiff, Defendants made one or more material misrepresentations, including but not limited to, that the servicer of Plaintiff's loan was also the creditor to whom the debt was owed and the current noteholder of Plaintiff's mortgage, that Plaintiff's promissory note was unavailable and that Defendant PFCV was a validly appointed trustee.

2038. Defendants intentionally made these misrepresentations to Plaintiff and the Chesterfield County Circuit Court with the intent to mislead them into believing these representations were true. Plaintiff relied on these misrepresentations to her detriment.

2039. As a result of Defendants' misrepresentations, Plaintiff suffered injury and is entitled to recover actual damages and costs against Defendants.

2040. Plaintiff also suffered substantial unliquidated and noneconomic damages for the damage to her reputation, her time and her ongoing distress over the subject debt.

2041. Additionally, because Defendants' actions were willful and with knowledge of their untruthfulness or with conscious disregard for Plaintiff's rights, Plaintiff is entitled to an award of punitive damages.

## Count XVI: Fraud
## INDIVIDUAL CLAIM
### (Plaintiff Musacchia)

2042. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

2043. Plaintiff alleges a cause of action for actual and/or constructive fraud under the common law of the Commonwealth of Virginia.

2044. Defendants made a material false representation in Plaintiff's Substitution of Trustee document filed in the Circuit Court for Spotsylvania County, including but not limited to, that "LaSalle Bank National Association, as Trustee for the Registered Holders of Bear Sterns Asset Banked Securities Trust 2007-HE4 Asset Backed Certificates 2007-HE4" was the current Noteholder of Plaintiff's mortgage.

2045. Upon information and belief, Defendants further misrepresented that the individual who signed the Substitution of Trustee document on behalf of "LaSalle Bank National Association, as Trustee for the Registered Holders of Bear Sterns Asset Banked Securities Trust 2007-HE4 Asset Backed Certificates 2007-HE4" purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. In reality, the Defendants prepared the substitute trustee appointment document and signed it themselves where it was notarized by someone who claimed to be the notary whose stamp appeared on the page and who claimed to have witnessed the signature of the alleged representative.

2046. Upon information and belief, Defendants also misrepresented that the individual who notarized the Substitution of Trustee document purporting to have personal knowledge of

the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

2047.  Upon information and belief, in their correspondence and letters to Plaintiff, Defendants made one or more material misrepresentations, including but not limited to, that the servicer of Plaintiff's loan was also the creditor to whom the debt was owed and the current noteholder of Plaintiff's mortgage, that Plaintiff's promissory note was unavailable and that Defendant PFCV was a validly appointed trustee.

2048.  Upon information and belief, Defendants made materially false representations in Plaintiff's Trustee's Deed document filed in the Circuit Court for Spotsylvania County, including but not limited to, that Defendant PFCV was the current noteholder of Plaintiff's mortgage at the time that the document was prepared, that the property was conveyed to the last and highest bidder at the foreclosure sale, that they had the authority to conduct a foreclosure sale, and that Defendant PFCV was a validly appointed substitute trustee.

2049.  Upon information and belief, Defendants further misrepresented that the individual who signed the Trustee's Deed on behalf of Defendant PFCV purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

2050.  Upon information and belief, Defendants also misrepresented that the individual who notarized the Trustee's Deed purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

2051. Upon information and belief, Defendants made materially false representations in the foreclosure accounting statement filed with the Commissioner of Accounts for Spotsylvania County, including but not limited to the submission of fraudulent documents with the Accounting Statement and misrepresentations about the fees and costs associated with the foreclosure sale.

2052. Defendants intentionally made these misrepresentations to Plaintiff, the Virginia Circuit Courts, and the Commissioners of Accounts with the intent to mislead them into believing these representations were true. Plaintiff relied on these misrepresentations to his detriment.

2053. As a result of Defendants' misrepresentations, Plaintiff suffered injury and is entitled to recover actual damages and costs against Defendants.

2054. Plaintiff also suffered substantial unliquidated and noneconomic damages for the damage to his reputation, his time and his ongoing distress over the subject debt.

2055. Additionally, because Defendants' actions were willful and with knowledge of their untruthfulness or with conscious disregard for Plaintiff's rights, Plaintiff is entitled to an award of punitive damages.

### Count XVII: Fraud
### INDIVIDUAL CLAIM
(Plaintiff Ballard)

2056. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

2057. Plaintiff alleges a cause of action for actual and/or constructive fraud under the common law of the Commonwealth of Virginia.

2058. Defendants made a material false representation in Plaintiff's Substitution of Trustee document filed in the Circuit Court for Henrico County, including but not limited to, that "Deutsche Bank National Trust Company, as Trustee for Morgan Stanley IXIS Real Estate Capital Trust, 2006-1" was the current Noteholder of Plaintiff's mortgage.

2059. Upon information and belief, Defendants further misrepresented that the individual who signed the Substitution of Trustee document on behalf of "Deutsche Bank National Trust Company, as Trustee for Morgan Stanley IXIS Real Estate Capital Trust, 2006-1" purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. In reality, the Defendants prepared the substitute trustee appointment document and signed it themselves where it was notarized by someone who claimed to be the notary whose stamp appeared on the page and who claimed to have witnessed the signature of the alleged representative.

2060. Upon information and belief, Defendants also misrepresented that the individual who notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

2061. Upon information and belief, in their correspondence and letters to Plaintiff, Defendants made one or more material misrepresentations, including but not limited to, that the servicer of Plaintiff's loan was also the creditor to whom the debt was owed and the current noteholder of Plaintiff's mortgage, that Plaintiff's promissory note was unavailable and that Defendant PFCV was a validly appointed trustee.

2062.  Upon information and belief, Defendants made materially false representations in Plaintiff's Trustee's Deed document filed in the Circuit Court for Henrico County, including but not limited to, that Defendant PFCV was the current noteholder of Plaintiff's mortgage at the time that the document was prepared, that the property was conveyed to the last and highest bidder at the foreclosure sale, that they had the authority to conduct a foreclosure sale, and that Defendant PFCV was a validly appointed substitute trustee.

2063.  Upon information and belief, Defendants further misrepresented that the individual who signed the Trustee's Deed on behalf of Defendant PFCV purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

2064.  Upon information and belief, Defendants also misrepresented that the individual who notarized the Trustee's Deed purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

2065.  Upon information and belief, the Defendants made materially false representations in the foreclosure accounting statement filed with the Commissioner of Accounts for Henrico County, including but not limited to the submission of fraudulent documents with the Accounting Statement and misrepresentations about the fees and costs associated with the foreclosure sale.

2066.  Defendants intentionally made these misrepresentations to Plaintiff, the Virginia Circuit Courts, and the Commissioners of Accounts with the intent to mislead them into

believing these representations were true. Plaintiff relied on these misrepresentations to his detriment.

2067. As a result of Defendants' misrepresentations, Plaintiff suffered injury and is entitled to recover actual damages and costs against Defendants.

2068. Plaintiff also suffered substantial unliquidated and noneconomic damages for the damage to his reputation, his time and his ongoing distress over the subject debt.

2069. Additionally, because Defendants' actions were willful and with knowledge of their untruthfulness or with conscious disregard for Plaintiff's rights, Plaintiff is entitled to an award of punitive damages.

### Count XVIII: Fraud
### INDIVIDUAL CLAIM
### (Plaintiff Latney)

2070. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

2071. Plaintiff alleges a cause of action for actual and/or constructive fraud under the common law of the Commonwealth of Virginia.

2072. Defendants made a material false representation in Plaintiff's Substitution of Trustee document filed in the Circuit Court for Spotsylvania County, including but not limited to, that "Bank of America, N.A., Successor by Merger to BAC Homes Loans Servicing, LP FKA Countrywide Home Loans Servicing" was the current Noteholder of Plaintiff's mortgage.

2073. Upon information and belief, Defendants further misrepresented that the individual who signed the Substitution of Trustee document on behalf of "Bank of America, N.A., Successor by Merger to BAC Homes Loans Servicing, LP FKA Countrywide Home Loans Servicing" purporting to have personal knowledge of the facts contained in the sworn statement

or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. In reality, the Defendants prepared the substitute trustee appointment document and signed it themselves where it was notarized by someone who claimed to be the notary whose stamp appeared on the page and who claimed to have witnessed the signature of the alleged representative.

2074.   Upon information and belief, Defendants also misrepresented that the individual who notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

2075.   Upon information and belief, in their correspondence and letters to Plaintiff, Defendants made one or more material misrepresentations, including but not limited to, that the servicer of Plaintiff's loan was also the creditor to whom the debt was owed and the current noteholder of Plaintiff's mortgage, that Plaintiff's promissory note was unavailable and that Defendant PFCV was a validly appointed trustee.

2076.   Upon information and belief, Defendants made materially false representations in Plaintiff's Trustee's Deed document filed in the Circuit Court for Spotsylvania County, including but not limited to, that Defendant PFCV was the current noteholder of Plaintiff's mortgage at the time that the document was prepared, that the property was conveyed to the last and highest bidder at the foreclosure sale, that they had the authority to conduct a foreclosure sale, and that Defendant PFCV was a validly appointed substitute trustee.

2077. Upon information and belief, Defendants further misrepresented that the individual who signed the Trustee's Deed on behalf of Defendant PFCV purporting to have

personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

2078.   Upon information and belief, Defendants also misrepresented that the individual who notarized the Trustee's Deed purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

2079.   Upon information and belief, Defendants made materially false representations in the foreclosure accounting statement filed with the Commissioner of Accounts for Spotsylvania County, including but not limited to the submission of fraudulent documents with the Accounting Statement and misrepresentations about the fees and costs associated with the foreclosure sale.

2080.   Defendants intentionally made these misrepresentations to Plaintiff, the Virginia Circuit Courts, and the Commissioners of Accounts with the intent to mislead them into believing these representations were true. Plaintiff relied on these misrepresentations to his detriment.

2081.   As a result of Defendants' misrepresentations, Plaintiff suffered injury and is entitled to recover actual damages and costs against Defendants.

2082.   Plaintiff also suffered substantial unliquidated and noneconomic damages for the damage to his reputation, his time and his ongoing distress over the subject debt.

2083.   Additionally, because Defendants' actions were willful and with knowledge of their untruthfulness or with conscious disregard for Plaintiff's rights, Plaintiff is entitled to an award of punitive damages.

## Count XIX: Fraud
## INDIVIDUAL CLAIM
### (Plaintiff Wainer)

2084. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

2085. Plaintiff alleges a cause of action for actual and/or constructive fraud under the common law of the Commonwealth of Virginia.

2086. Defendants made a material false representation in Plaintiff's Substitution of Trustee document, including but not limited to, that "Freedom Mortgage Corporation" was the current Noteholder of Plaintiff's mortgage.

2087. Upon information and belief, Defendants further misrepresented that the individual who signed the Substitution of Trustee document on behalf of "Freedom Mortgage Corporation" purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. In reality, the Defendants prepared the substitute trustee appointment document and signed it themselves where it was notarized by someone who claimed to be the notary whose stamp appeared on the page and who claimed to have witnessed the signature of the alleged representative.

2088. Upon information and belief, Defendants also misrepresented that the individual who notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

2089. Upon information and belief, in their correspondence and letters to Plaintiff, Defendants made one or more material misrepresentations, including but not limited to, that the

servicer of Plaintiff's loan was also the creditor to whom the debt was owed and the current noteholder of Plaintiff's mortgage, that Plaintiff's promissory note was unavailable and that Defendant PFCV was a validly appointed trustee.

2090.   Defendants intentionally made these misrepresentations to Plaintiff with the intent to mislead him into believing these representations were true. Plaintiff relied on these misrepresentations to his detriment.

2091.   As a result of Defendants' misrepresentations, Plaintiff suffered injury and is entitled to recover actual damages and costs against Defendants.

2092.   Plaintiff also suffered substantial unliquidated and noneconomic damages for the damage to his reputation, his time and his ongoing distress over the subject debt.

2093.   Additionally, because Defendants' actions were willful and with knowledge of their untruthfulness or with conscious disregard for Plaintiff's rights, Plaintiff is entitled to an award of punitive damages.

### Count XX:  Fraud
### INDIVIDUAL CLAIM
**(Plaintiff Sauls)**

2094.   Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

2095.   Plaintiff alleges a cause of action for actual and/or constructive fraud under the common law of the Commonwealth of Virginia.

2096.   Defendants made a material false representation in Plaintiff's Substitution of Trustee document filed in the Circuit Court for the City of Richmond, including but not limited to, that "US Bank National Association, as Trustee for the Structured Asset Investment Loan Trust, 2006-BNC2" was the current Noteholder of Plaintiff's mortgage.

2097. Upon information and belief, Defendants further misrepresented that the individual who signed the Substitution of Trustee document on behalf of "US Bank National Association, as Trustee for the Structured Asset Investment Loan Trust, 2006-BNC2" purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. In reality, the Defendants prepared the substitute trustee appointment document and signed it themselves where it was notarized by someone who claimed to be the notary whose stamp appeared on the page and who claimed to have witnessed the signature of the alleged representative.

2098. Upon information and belief, Defendants also misrepresented that the individual who notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

2099. Upon information and belief, in their correspondence and letters to Plaintiff, Defendants made one or more material misrepresentations, including but not limited to, that the servicer of Plaintiff's loan was also the creditor to whom the debt was owed and the current noteholder of Plaintiff's mortgage, that Plaintiff's promissory note was unavailable and that Defendant PFCV was a validly appointed trustee.

2100. Upon information and belief, Defendants made materially false representations in Plaintiff's Trustee's Deed document filed in the Circuit Court for the City of Richmond, including but not limited to, that Defendant PFCV was the current noteholder of Plaintiff's mortgage at the time that the document was prepared, that the property was conveyed to the last

and highest bidder at the foreclosure sale, that they had the authority to conduct a foreclosure sale, and that Defendant PFCV was a validly appointed substitute trustee.

2101.  Upon information and belief, Defendants further misrepresented that the individual who signed the Trustee's Deed on behalf of Defendant PFCV purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

2102.  Upon information and belief, Defendants also misrepresented that the individual who notarized the Trustee's Deed purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

2103.  Upon information and belief, Defendants made materially false representations in the foreclosure accounting statement filed with the Commissioner of Accounts for the City of Richmond, including but not limited to the submission of fraudulent documents with the Accounting Statement and misrepresentations about the fees and costs associated with the foreclosure sale.

2104.  Defendants intentionally made these misrepresentations to Plaintiff, the Virginia Circuit Courts, and the Commissioners of Accounts with the intent to mislead them into believing these representations were true. Plaintiff relied on these misrepresentations to her detriment.

2105.  As a result of Defendants' misrepresentations, Plaintiff suffered injury and is entitled to recover actual damages and costs against Defendants.

2106.   Plaintiff also suffered substantial unliquidated and noneconomic damages for the damage to her reputation, her time and her ongoing distress over the subject debt.

2107.   Additionally, because Defendants' actions were willful and with knowledge of their untruthfulness or with conscious disregard for Plaintiff's rights, Plaintiff is entitled to an award of punitive damages.

**Count XXI:  Fraud**
**INDIVIDUAL CLAIM**
**(Plaintiffs Paul and Patsy Aldred)**

2108.   Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

2109.   Plaintiffs allege a cause of action for actual and/or constructive fraud under the common law of the Commonwealth of Virginia.

2110.   Defendants made a material false representation in Plaintiffs' Substitution of Trustee document filed in the Circuit Court for Henrico County, including but not limited to, that "GMAC Mortgage, LLC" was the current Noteholder of Plaintiffs' mortgage.

2111.   Upon information and belief, Defendants further misrepresented that the individual who signed the Substitution of Trustee document on behalf of "GMAC Mortgage, LLC" purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. In reality, the Defendants prepared the substitute trustee appointment document and signed it themselves where it was notarized by someone who claimed to be the notary whose stamp appeared on the page and who claimed to have witnessed the signature of the alleged representative.

330

2112. Upon information and belief, Defendants also misrepresented that the individual who notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

2113. Upon information and belief, in their correspondence and letters to Plaintiffs, Defendants made one or more material misrepresentations, including but not limited to, that the servicer of Plaintiffs' loan was also the creditor to whom the debt was owed and the current noteholder of Plaintiffs' mortgage, that Plaintiffs' promissory note was unavailable and that Defendant PFCV was a validly appointed trustee.

2114. Upon information and belief, Defendants made materially false representations in Plaintiffs' Trustee's Deed document filed in the Circuit Court for Henrico County, including but not limited to, that Defendant PFCV was the current noteholder of Plaintiffs' mortgage at the time that the document was prepared, that the property was conveyed to the last and highest bidder at the foreclosure sale, that they had the authority to conduct a foreclosure sale, and that Defendant PFCV was a validly appointed substitute trustee.

2115. Upon information and belief, Defendants further misrepresented that the individual who signed the Trustee's Deed on behalf of Defendant PFCV purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

2116. Upon information and belief, Defendants also misrepresented that the individual who notarized the Trustee's Deed purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such

personal knowledge or such legal standing. Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

2117. Upon information and belief, the Defendants made materially false representations in the foreclosure accounting statement filed with the Commissioner of Accounts for Henrico County, including but not limited to the submission of fraudulent documents with the Accounting Statement and misrepresentations about the fees and costs associated with the foreclosure sale.

2118. Defendants intentionally made these misrepresentations to Plaintiffs, the Virginia Circuit Courts, and the Commissioners of Accounts with the intent to mislead them into believing these representations were true. Plaintiffs relied on these misrepresentations to his detriment.

2119. As a result of Defendants' misrepresentations, Plaintiffs suffered injury and are entitled to recover actual damages and costs against Defendants.

2120. Plaintiffs also suffered substantial unliquidated and noneconomic damages for the damage to their reputation, their time and their ongoing distress over the subject debt.

2121. Additionally, because Defendants' actions were willful and with knowledge of their untruthfulness or with conscious disregard for Plaintiffs' rights, Plaintiffs are entitled to an award of punitive damages.

### Count XXII: Fraud
### INDIVIDUAL CLAIM
#### (Plaintiff Jefferson)

2122. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

2123.  Plaintiff alleges a cause of action for actual and/or constructive fraud under the common law of the Commonwealth of Virginia.

2124.  Defendants made a material false representation in Plaintiff's Substitution of Trustee document filed in the Circuit Court for Chesterfield County, including but not limited to, that "HSBC Mortgage Corporation (USA)" was the current Noteholder of Plaintiff's mortgage.

2125.  Upon information and belief, Defendants further misrepresented that the individual who signed the Substitution of Trustee document on behalf of "HSBC Mortgage Corporation (USA)" purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. In reality, the Defendants prepared the substitute trustee appointment document and signed it themselves where it was notarized by someone who claimed to be the notary whose stamp appeared on the page and who claimed to have witnessed the signature of the alleged representative.

2126.  Upon information and belief, Defendants also misrepresented that the individual who notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

2127.  Upon information and belief, in their correspondence and letters to Plaintiff, Defendants made one or more material misrepresentations, including but not limited to, that the servicer of Plaintiff's loan was also the creditor to whom the debt was owed and the current noteholder of Plaintiff's mortgage, that Plaintiff's promissory note was unavailable and that Defendant PFCV was a validly appointed trustee.

2128. Upon information and belief, Defendants made materially false representations in Plaintiff's Trustee's Deed document filed in the Circuit Court for Chesterfield County, including but not limited to, that Defendant PFCV was the current noteholder of Plaintiff's mortgage at the time that the document was prepared, that the property was conveyed to the last and highest bidder at the foreclosure sale, that they had the authority to conduct a foreclosure sale, and that Defendant PFCV was a validly appointed substitute trustee.

2129. Upon information and belief, Defendants further misrepresented that the individual who signed the Trustee's Deed on behalf of Defendant PFCV purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

2130. Upon information and belief, Defendants also misrepresented that the individual who notarized the Trustee's Deed purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

2131. Upon information and belief, Defendants made materially false representations in the foreclosure accounting statement filed with the Commissioner of Accounts for Chesterfield County, including but not limited to the submission of fraudulent documents with the Accounting Statement and misrepresentations about the fees and costs associated with the foreclosure sale.

2132. Defendants intentionally made these misrepresentations to Plaintiff, the Virginia Circuit Courts, and the Commissioners of Accounts with the intent to mislead them into

believing these representations were true. Plaintiff relied on these misrepresentations to his detriment.

2133.  As a result of Defendants' misrepresentations, Plaintiff suffered injury and is entitled to recover actual damages and costs against Defendants.

2134.  Plaintiff also suffered substantial unliquidated and noneconomic damages for the damage to his reputation, his time and his ongoing distress over the subject debt.

2135.  Additionally, because Defendants' actions were willful and with knowledge of their untruthfulness or with conscious disregard for Plaintiff's rights, Plaintiff is entitled to an award of punitive damages.

### Count XXIII: Fraud
### INDIVIDUAL CLAIM
### (Plaintiff Gadson)

2136.  Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

2137.  Plaintiff alleges a cause of action for actual and/or constructive fraud under the common law of the Commonwealth of Virginia.

2138.  Defendants made a material false representation in Plaintiff's Substitution of Trustee document filed in the Circuit Court for Henrico County, including but not limited to, that "The Bank of New York Mellon Trust Company, National Association as Grantor Trustee of the Protium Master Grantor Trust" was the current Noteholder of Plaintiff's mortgage.

2139.  Upon information and belief, Defendants further misrepresented that the individual who signed the Substitution of Trustee document on behalf of "The Bank of New York Mellon Trust Company, National Association as Grantor Trustee of the Protium Master Grantor Trust" purporting to have personal knowledge of the facts contained in the sworn

statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. In reality, the Defendants prepared the substitute trustee appointment document and signed it themselves where it was notarized by someone who claimed to be the notary whose stamp appeared on the page and who claimed to have witnessed the signature of the alleged representative.

2140.  Upon information and belief, Defendants also misrepresented that the individual who notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

2141.  Upon information and belief, in their correspondence and letters to Plaintiff, Defendants made one or more material misrepresentations, including but not limited to, that the servicer of Plaintiff's loan was also the creditor to whom the debt was owed and the current noteholder of Plaintiff's mortgage, that Plaintiff's promissory note was unavailable and that Defendant PFCV was a validly appointed trustee.

2142.  Upon information and belief, Defendants made materially false representations in Plaintiff's Trustee's Deed document filed in the Circuit Court for Henrico County, including but not limited to, that Defendant PFCV was the current noteholder of Plaintiff's mortgage at the time that the document was prepared, that the property was conveyed to the last and highest bidder at the foreclosure sale, that they had the authority to conduct a foreclosure sale, and that Defendant PFCV was a validly appointed substitute trustee.

2143. Upon information and belief, Defendants further misrepresented that the individual who signed the Trustee's Deed on behalf of Defendant PFCV purporting to have

personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

2144.  Upon information and belief, Defendants also misrepresented that the individual who notarized the Trustee's Deed purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

2145.  Upon information and belief, the Defendants made materially false representations in the foreclosure accounting statement filed with the Commissioner of Accounts for Henrico County, including but not limited to the submission of fraudulent documents with the Accounting Statement and misrepresentations about the fees and costs associated with the foreclosure sale.

2146.  Defendants intentionally made these misrepresentations to Plaintiff, the Virginia Circuit Courts, and the Commissioners of Accounts with the intent to mislead them into believing these representations were true. Plaintiff relied on these misrepresentations to her detriment.

2147.  As a result of Defendants' misrepresentations, Plaintiff suffered injury and is entitled to recover actual damages and costs against Defendants.

2148.  Plaintiff also suffered substantial unliquidated and noneconomic damages for the damage to her reputation, her time and her ongoing distress over the subject debt.

2149.  Additionally, because Defendants' actions were willful and with knowledge of their untruthfulness or with conscious disregard for Plaintiff's rights, Plaintiff is entitled to an award of punitive damages.

### Count XXIV: Fraud
### INDIVIDUAL CLAIM
### (Plaintiffs Ernest and Yolanda Jackson)

2150.  Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

2151.  Plaintiffs allege a cause of action for actual and/or constructive fraud under the common law of the Commonwealth of Virginia.

2152.  Defendants made a material false representation in Plaintiffs' Substitution of Trustee document filed in the Circuit Court for Caroline County, including but not limited to, that "The Bank of New York, Successor to JPMorgan Chase Bank, N.A., Trustee Pooling and Servicing Agreement dated as of April 1, 2005 First Franklin Mortgage Loan Trust 2005-FF% Asset-Backed Certificates, Series 2005-FF5" was the current Noteholder of Plaintiffs' mortgage.

2153.  Upon information and belief, Defendants further misrepresented that the individual who signed the Substitution of Trustee document on behalf of "The Bank of New York, Successor to JPMorgan Chase Bank, N.A., Trustee Pooling and Servicing Agreement dated as of April 1, 2005 First Franklin Mortgage Loan Trust 2005-FF% Asset-Backed Certificates, Series 2005-FF5" purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. In reality, the Defendants prepared the substitute trustee appointment document and signed it themselves where it was notarized by someone who claimed to be the notary whose stamp appeared on the page and who claimed to have witnessed the signature of the alleged representative.

2154.  Upon information and belief, Defendants also misrepresented that the individual who notarized the Substitution of Trustee document purporting to have personal knowledge of

the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

2155.   Upon information and belief, in their correspondence and letters to Plaintiffs, Defendants made one or more material misrepresentations, including but not limited to, that the servicer of Plaintiffs' loan was also the creditor to whom the debt was owed and the current noteholder of Plaintiffs' mortgage, that Plaintiffs' promissory note was unavailable and that Defendant PFCV was a validly appointed trustee.

2156.   Upon information and belief, Defendants made materially false representations in Plaintiffs' Trustee's Deed document filed in the Circuit Court for Caroline County, including but not limited to, that Defendant PFCV was the current noteholder of Plaintiffs' mortgage at the time that the document was prepared, that they had the authority to conduct a foreclosure sale, and that Defendant PFCV was a validly appointed substitute trustee.

2157.   Upon information and belief, Defendants further misrepresented that the individual who signed the Trustee's Deed on behalf of Defendant PFCV purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

2158.   Upon information and belief, Defendants also misrepresented that the individual who notarized the Trustee's Deed purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

2159.   Upon information and belief, Defendants made materially false representations in the foreclosure accounting statement filed with the of Accounts for Caroline County, including

but not limited to the submission of fraudulent documents with the Accounting Statement and misrepresentations about the fees and costs associated with the foreclosure sale.

2160.   Defendants intentionally made these misrepresentations to Plaintiffs, the Virginia Circuit Courts, and the Commissioners of Accounts with the intent to mislead them into believing these representations were true. Plaintiffs relied on these misrepresentations to his detriment.

2161.   As a result of Defendants' misrepresentations, Plaintiffs suffered injury and are entitled to recover actual damages and costs against Defendants.

2162.   Plaintiffs also suffered substantial unliquidated and noneconomic damages for the damage to their reputation, their time and their ongoing distress over the subject debt.

2163.   Additionally, because Defendants' actions were willful and with knowledge of their untruthfulness or with conscious disregard for Plaintiffs' rights, Plaintiffs are entitled to an award of punitive damages.

### Count XXV: Fraud
### INDIVIDUAL CLAIM
#### (Plaintiffs James and Darlene Turner)

2164.   Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

2165.   Plaintiffs allege a cause of action for actual and/or constructive fraud under the common law of the Commonwealth of Virginia.

2166.   Defendants made a material false representation in Plaintiffs' Substitution of Trustee document filed in the Circuit Court for Henrico County, including but not limited to, that "JPMorgan Chase Bank, National Association" was the current Noteholder of Plaintiffs' mortgage.

340

2167.  Upon information and belief, Defendants further misrepresented that the individual who signed the Substitution of Trustee document on behalf of "JPMorgan Chase Bank, National Association" purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. In reality, the Defendants prepared the substitute trustee appointment document and signed it themselves where it was notarized by someone who claimed to be the notary whose stamp appeared on the page and who claimed to have witnessed the signature of the alleged representative.

2168.  Upon information and belief, Defendants also misrepresented that the individual who notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

2169.  Upon information and belief, in their correspondence and letters to Plaintiffs, Defendants made one or more material misrepresentations, including but not limited to, that the servicer of Plaintiffs' loan was also the creditor to whom the debt was owed and the current noteholder of Plaintiffs' mortgage, that Plaintiffs' promissory note was unavailable and that Defendant PFCV was a validly appointed trustee.

2170.  Upon information and belief, Defendants made materially false representations in Plaintiffs' Trustee's Deed document filed in the Circuit Court for Henrico County, including but not limited to, that Defendant PFCV was the current noteholder of Plaintiffs' mortgage at the time that the document was prepared, that they had the authority to conduct a foreclosure sale, and that Defendant PFCV was a validly appointed substitute trustee.

2171. Upon information and belief, Defendants further misrepresented that the individual who signed the Trustee's Deed on behalf of Defendant PFCV purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

2172. Upon information and belief, Defendants also misrepresented that the individual who notarized the Trustee's Deed purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

2173. Upon information and belief, Defendants made materially false representations in the foreclosure accounting statement filed with the Commissioner of Accounts for Henrico County, including but not limited to the submission of fraudulent documents with the Accounting Statement and misrepresentations about the fees and costs associated with the foreclosure sale.

2174. Defendants intentionally made these misrepresentations to Plaintiffs, the Virginia Circuit Courts, and the Commissioners of Accounts with the intent to mislead them into believing these representations were true. Plaintiffs relied on these misrepresentations to his detriment.

2175. As a result of Defendants' misrepresentations, Plaintiffs suffered injury and are entitled to recover actual damages and costs against Defendants.

2176. Plaintiffs also suffered substantial unliquidated and noneconomic damages for the damage to their reputation, their time and their ongoing distress over the subject debt.

2177. Additionally, because Defendants' actions were willful and with knowledge of their untruthfulness or with conscious disregard for Plaintiffs' rights, Plaintiffs are entitled to an award of punitive damages.

### Count XXVI: Fraud
### INDIVIDUAL CLAIM
### (Plaintiff Damiani)

2178. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

2179. Plaintiff alleges a cause of action for actual and/or constructive fraud under the common law of the Commonwealth of Virginia.

2180. Defendants made a material false representation in Plaintiff's Substitution of Trustee document filed in the Circuit Court for Henrico County, including but not limited to, that "Bank of America, N.A., Successor by Merger to BAC Homes Loans Servicing, LP" was the current Noteholder of Plaintiff's mortgage.

2181. Upon information and belief, Defendants further misrepresented that the individual who signed the Substitution of Trustee document on behalf of "Bank of America, N.A., Successor by Merger to BAC Homes Loans Servicing, LP" purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. In reality, the Defendants prepared the substitute trustee appointment document and signed it themselves where it was notarized by someone who claimed to be the notary whose stamp appeared on the page and who claimed to have witnessed the signature of the alleged representative.

2182. Upon information and belief, Defendants also misrepresented that the individual who notarized the Substitution of Trustee document purporting to have personal knowledge of

the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

2183.  Upon information and belief, in their correspondence and letters to Plaintiff, Defendants made one or more material misrepresentations, including but not limited to, that the servicer of Plaintiff's loan was also the creditor to whom the debt was owed and the current noteholder of Plaintiff's mortgage, that Plaintiff's promissory note was unavailable and that Defendant PFCV was a validly appointed trustee.

2184.  Defendants intentionally made these misrepresentations to Plaintiff and the Virginia Circuit Courts with the intent to mislead them into believing these representations were true. Plaintiff relied on these misrepresentations to his detriment.

2185.  As a result of Defendants' misrepresentations, Plaintiff suffered injury and is entitled to recover actual damages and costs against Defendants.

2186.  Plaintiff also suffered substantial unliquidated and noneconomic damages for the damage to his reputation, his time and his ongoing distress over the subject debt.

2187.  Additionally, because Defendants' actions were willful and with knowledge of their untruthfulness or with conscious disregard for Plaintiff's rights, Plaintiff is entitled to an award of punitive damages.

### Count XXVII: Fraud
### INDIVIDUAL CLAIM
### (Plaintiff Sharon Johnson)

2188.  Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

2189.  Plaintiff alleges a cause of action for actual and/or constructive fraud under the common law of the Commonwealth of Virginia.

2190. Defendants made a material false representation in Plaintiff's Substitution of Trustee document filed in the Circuit Court for Chesterfield County, including but not limited to, that "Deutsche Bank National Trust Company, as Trustee for Long Beach Mortgage Loan Trust 2006-10" was the current Noteholder of Plaintiff's mortgage.

2191. Upon information and belief, Defendants further misrepresented that the individual who signed the Substitution of Trustee document on behalf of "Deutsche Bank National Trust Company, as Trustee for Long Beach Mortgage Loan Trust 2006-10" purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. In reality, the Defendants prepared the substitute trustee appointment document and signed it themselves where it was notarized by someone who claimed to be the notary whose stamp appeared on the page and who claimed to have witnessed the signature of the alleged representative.

2192. Upon information and belief, Defendants also misrepresented that the individual who notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

2193. Upon information and belief, in their correspondence and letters to Plaintiff, Defendants made one or more material misrepresentations, including but not limited to, that the servicer of Plaintiff's loan was also the creditor to whom the debt was owed and the current noteholder of Plaintiff's mortgage, that Plaintiff's promissory note was unavailable and that Defendant PFCV was a validly appointed trustee.

2194.  Defendants intentionally made these misrepresentations to Plaintiff and the Virginia Circuit Courts with the intent to mislead them into believing these representations were true. Plaintiff relied on these misrepresentations to her detriment.

2195.  As a result of Defendants' misrepresentations, Plaintiff suffered injury and is entitled to recover actual damages and costs against Defendants.

2196.  Plaintiff also suffered substantial unliquidated and noneconomic damages for the damage to her reputation, her time and her ongoing distress over the subject debt.

2197.  Additionally, because Defendants' actions were willful and with knowledge of their untruthfulness or with conscious disregard for Plaintiff's rights, Plaintiff is entitled to an award of punitive damages.

### Count XXVIII: Fraud
### INDIVIDUAL CLAIM
### (Plaintiff Robert Jones)

2198.  Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

2199.  Plaintiff alleges a cause of action for actual and/or constructive fraud under the common law of the Commonwealth of Virginia.

2200.  Defendants made a material false representation in Plaintiff's Substitution of Trustee document filed in the Circuit Court for Powhatan County, including but not limited to, that "PHH Mortgage Corporation" was the current Noteholder of Plaintiff's mortgage.

2201.  Upon information and belief, Defendants further misrepresented that the individual who signed the Substitution of Trustee document on behalf of "PHH Mortgage Corporation" purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal

knowledge or such legal standing. In reality, the Defendants prepared the substitute trustee appointment document and signed it themselves where it was notarized by someone who claimed to be the notary whose stamp appeared on the page and who claimed to have witnessed the signature of the alleged representative.

2202. Upon information and belief, Defendants also misrepresented that the individual who notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

2203. Upon information and belief, in their correspondence and letters to Plaintiff, Defendants made one or more material misrepresentations, including but not limited to, that the servicer of Plaintiff's loan was also the creditor to whom the debt was owed and the current noteholder of Plaintiff's mortgage, that Plaintiff's promissory note was unavailable and that Defendant PFCV was a validly appointed trustee.

2204. Upon information and belief, Defendants made materially false representations in Plaintiff's Trustee's Deed document filed in the Circuit Court for Powhatan County, including but not limited to, that Defendant PFCV was the current noteholder of Plaintiff's mortgage at the time that the document was prepared, that the property was conveyed to the last and highest bidder at the foreclosure sale, that they had the authority to conduct a foreclosure sale, and that Defendant PFCV was a validly appointed substitute trustee.

2205. Upon information and belief, Defendants further misrepresented that the individual who signed the Trustee's Deed on behalf of Defendant PFCV purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

2206.   Upon information and belief, Defendants also misrepresented that the individual who notarized the Trustee's Deed purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

2207.   Upon information and belief, Defendants made materially false representations in the foreclosure accounting statement filed with the Commissioner of Accounts for Powhatan County, including but not limited to the submission of fraudulent documents with the Accounting Statement and misrepresentations about the fees and costs associated with the foreclosure sale.

2208.   Defendants intentionally made these misrepresentations to Plaintiff, the Virginia Circuit Courts, and the Commissioners of Accounts with the intent to mislead them into believing these representations were true. Plaintiff relied on these misrepresentations to his detriment.

2209.   As a result of Defendants' misrepresentations, Plaintiff suffered injury and is entitled to recover actual damages and costs against Defendants.

2210.   Plaintiff also suffered substantial unliquidated and noneconomic damages for the damage to his reputation, his time and his ongoing distress over the subject debt.

2211.   Additionally, because Defendants' actions were willful and with knowledge of their untruthfulness or with conscious disregard for Plaintiff's rights, Plaintiff is entitled to an award of punitive damages.

## Count XXIX:  Fraud
### INDIVIDUAL CLAIM
**(Plaintiffs Craig and Ruth Turner)**

2212.  Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

2213.  Plaintiffs allege a cause of action for actual and/or constructive fraud under the common law of the Commonwealth of Virginia.

2214.  Defendants made a material false representation in Plaintiffs' Substitution of Trustee document filed in the Circuit Court for Louisa County, including but not limited to, that "The Bank of New York Mellon Trust Company, National Association as Grantor Trust of the Protium Master Grantor Trust" was the current Noteholder of Plaintiffs' mortgage.

2215.  Upon information and belief, Defendants further misrepresented that the individual who signed the Substitution of Trustee document on behalf of "The Bank of New York Mellon Trust Company, National Association as Grantor Trust of the Protium Master Grantor Trust" purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. In reality, the Defendants prepared the substitute trustee appointment document and signed it themselves where it was notarized by someone who claimed to be the notary whose stamp appeared on the page and who claimed to have witnessed the signature of the alleged representative.

2216.  Upon information and belief, Defendants also misrepresented that the individual who notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

2217.  Upon information and belief, in their correspondence and letters to Plaintiffs, Defendants made one or more material misrepresentations, including but not limited to, that the

servicer of Plaintiffs' loan was also the creditor to whom the debt was owed and the current noteholder of Plaintiffs' mortgage, that Plaintiffs' promissory note was unavailable and that Defendant PFCV was a validly appointed trustee.

2218.  Upon information and belief, Defendants made materially false representations in Plaintiffs' Trustee's Deed document filed in the Circuit Court for Louisa County, including but not limited to, that Defendant PFCV was the current noteholder of Plaintiffs' mortgage at the time that the document was prepared, that they had the authority to conduct a foreclosure sale, and that Defendant PFCV was a validly appointed substitute trustee.

2219.  Upon information and belief, Defendants further misrepresented that the individual who signed the Trustee's Deed on behalf of Defendant PFCV purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

2220.  Upon information and belief, Defendants also misrepresented that the individual who notarized the Trustee's Deed purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

2221.  Upon information and belief, Defendants made materially false representations in the foreclosure accounting statement filed with the Commissioner of Accounts for Louisa County, including but not limited to a misrepresentation about the fees and costs associated with the foreclosure sale including but not limited to the submission of fraudulent documents with the Accounting Statement and misrepresentations about the fees and costs associated with the foreclosure sale.

2222.  Defendants intentionally made these misrepresentations to Plaintiffs, the Virginia Circuit Courts, and the Commissioners of Accounts with the intent to mislead them into believing these representations were true. Plaintiffs relied on these misrepresentations to his detriment.

2223.  As a result of Defendants' misrepresentations, Plaintiffs suffered injury and are entitled to recover actual damages and costs against Defendants.

2224.  Plaintiffs also suffered substantial unliquidated and noneconomic damages for the damage to their reputation, their time and their ongoing distress over the subject debt.

2225.  Additionally, because Defendants' actions were willful and with knowledge of their untruthfulness or with conscious disregard for Plaintiffs' rights, Plaintiffs are entitled to an award of punitive damages.

### Count XXX: Fraud
### INDIVIDUAL CLAIM
#### (Plaintiff Foble)

2226.  Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

2227.  Plaintiff alleges a cause of action for actual and/or constructive fraud under the common law of the Commonwealth of Virginia.

2228.  Defendants made a material false representation in Plaintiff's Substitution of Trustee document filed in the Circuit Court for King and Queen County, including but not limited to, that "Bank of America, N.A., Successor by Merger to BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP" was the current Noteholder of Plaintiff's mortgage.

2229. Upon information and belief, Defendants further misrepresented that the individual who signed the Substitution of Trustee document on behalf of "Bank of America, N.A., Successor by Merger to BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP" purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. In reality, the Defendants prepared the substitute trustee appointment document and signed it themselves where it was notarized by someone who claimed to be the notary whose stamp appeared on the page and who claimed to have witnessed the signature of the alleged representative.

2230. Upon information and belief, Defendants also misrepresented that the individual who notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

2231. Upon information and belief, in their correspondence and letters to Plaintiff, Defendants made one or more material misrepresentations, including but not limited to, that the servicer of Plaintiff's loan was also the creditor to whom the debt was owed and the current noteholder of Plaintiff's mortgage, that Plaintiff's promissory note was unavailable and that Defendant PFCV was a validly appointed trustee.

2232. Upon information and belief, Defendants made materially false representations in Plaintiff's Trustee's Deed document filed in the Circuit Court for King and Queen County, including but not limited to, that Defendant PFCV was the current noteholder of Plaintiff's mortgage at the time that the document was prepared, that the property was conveyed to the last

and highest bidder at the foreclosure sale, that they had the authority to conduct a foreclosure sale, and that Defendant PFCV was a validly appointed substitute trustee.

2233.  Upon information and belief, Defendants further misrepresented that the individual who signed the Trustee's Deed on behalf of Defendant PFCV purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

2234.  Upon information and belief, Defendants also misrepresented that the individual who notarized the Trustee's Deed purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

2235.  Upon information and belief, Defendants made materially false representations in the foreclosure accounting statement filed with the of Accounts for King and Queen County, including but not limited to the submission of fraudulent documents with the Accounting Statement and misrepresentations about the fees and costs associated with the foreclosure sale.

2236.  Defendants intentionally made these misrepresentations to Plaintiff, the Virginia Circuit Courts, and the Commissioners of Accounts with the intent to mislead them into believing these representations were true. Plaintiff relied on these misrepresentations to his detriment.

2237.  As a result of Defendants' misrepresentations, Plaintiff suffered injury and is entitled to recover actual damages and costs against Defendants.

2238.  Plaintiff also suffered substantial unliquidated and noneconomic damages for the damage to his reputation, his time and his ongoing distress over the subject debt.

2239. Additionally, because Defendants' actions were willful and with knowledge of their untruthfulness or with conscious disregard for Plaintiff's rights, Plaintiff is entitled to an award of punitive damages.

### Count XXXI: Fraud
### INDIVIDUAL CLAIM
### (Plaintiff Ott)

2240. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

2241. Plaintiff alleges a cause of action for actual and/or constructive fraud under the common law of the Commonwealth of Virginia.

2242. Defendants made a material false representation in Plaintiff's Substitution of Trustee document filed in the Circuit Court for Stafford County, including but not limited to, that "OneWest Bank, F.S.B." was the current Noteholder of Plaintiff's mortgage.

2243. Upon information and belief, Defendants further misrepresented that the individual who signed the Substitution of Trustee document on behalf of "OneWest Bank, F.S.B." purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. In reality, the Defendants prepared the substitute trustee appointment document and signed it themselves where it was notarized by someone who claimed to be the notary whose stamp appeared on the page and who claimed to have witnessed the signature of the alleged representative.

2244. Upon information and belief, Defendants also misrepresented that the individual who notarized the Substitution of Trustee document purporting to have personal knowledge of

354

the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

2245. Upon information and belief, in their correspondence and letters to Plaintiff, Defendants made one or more material misrepresentations, including but not limited to, that the servicer of Plaintiff's loan was also the creditor to whom the debt was owed and the current noteholder of Plaintiff's mortgage, that Plaintiff's promissory note was unavailable and that Defendant PFCV was a validly appointed trustee.

2246. Upon information and belief, Defendants made materially false representations in Plaintiff's Trustee's Deed document filed in the Circuit Court for Stafford County, including but not limited to, that Defendant PFCV was the current noteholder of Plaintiff's mortgage at the time that the document was prepared, that they had the authority to conduct a foreclosure sale, and that Defendant PFCV was a validly appointed substitute trustee.

2247. Upon information and belief, Defendants further misrepresented that the individual who signed the Trustee's Deed on behalf of Defendant PFCV purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

2248. Upon information and belief, Defendants also misrepresented that the individual who notarized the Trustee's Deed purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

2249. Upon information and belief, Defendants made materially false representations in the foreclosure accounting statement filed with the Commissioner of Accounts for Stafford

County, including but not limited to the submission of fraudulent documents with the Accounting Statement and misrepresentations about the fees and costs associated with the foreclosure sale.

2250.   Defendants intentionally made these misrepresentations to Plaintiff, the Virginia Circuit Courts, and the Commissioners of Accounts with the intent to mislead them into believing these representations were true. Plaintiff relied on these misrepresentations to his detriment.

2251.   As a result of Defendants' misrepresentations, Plaintiff suffered injury and is entitled to recover actual damages and costs against Defendants.

2252.   Plaintiff also suffered substantial unliquidated and noneconomic damages for the damage to his reputation, his time and his ongoing distress over the subject debt.

2253.   Additionally, because Defendants' actions were willful and with knowledge of their untruthfulness or with conscious disregard for Plaintiff's rights, Plaintiff is entitled to an award of punitive damages.

### Count XXXII: Fraud
### INDIVIDUAL CLAIM
### (Plaintiff Devorya Wilson)

2254.   Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

2255.   Plaintiff alleges a cause of action for actual and/or constructive fraud under the common law of the Commonwealth of Virginia.

2256.   Defendants made a material false representation in Plaintiff's Substitution of Trustee document filed in the Circuit Court for Henrico County, including but not limited to, that "Chase Home Finance, LLC" was the current Noteholder of Plaintiff's mortgage.

2257. Upon information and belief, Defendants further misrepresented that the individual who signed the Substitution of Trustee document on behalf of "Chase Home Finance, LLC" purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. In reality, the Defendants prepared the substitute trustee appointment document and signed it themselves where it was notarized by someone who claimed to be the notary whose stamp appeared on the page and who claimed to have witnessed the signature of the alleged representative.

2258. Upon information and belief, Defendants also misrepresented that the individual who notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

2259. Upon information and belief, in their correspondence and letters to Plaintiff, Defendants made one or more material misrepresentations, including but not limited to, that the servicer of Plaintiff's loan was also the creditor to whom the debt was owed and the current noteholder of Plaintiff's mortgage, that Plaintiff's promissory note was unavailable and that Defendant PFCV was a validly appointed trustee.

2260. Defendants intentionally made these misrepresentations to Plaintiff and the Virginia Circuit Courts with the intent to mislead them into believing these representations were true. Plaintiff relied on these misrepresentations to her detriment.

2261. As a result of Defendants' misrepresentations, Plaintiff suffered injury and is entitled to recover actual damages and costs against Defendants.

2262.   Plaintiff also suffered substantial unliquidated and noneconomic damages for the damage to her reputation, her time and her ongoing distress over the subject debt.

2263.   Additionally, because Defendants' actions were willful and with knowledge of their untruthfulness or with conscious disregard for Plaintiff's rights, Plaintiff is entitled to an award of punitive damages.

### Count XXXIII:  Fraud
### INDIVIDUAL CLAIM
### (Plaintiff Draper)

2264.   Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

2265.   Plaintiff alleges a cause of action for actual and/or constructive fraud under the common law of the Commonwealth of Virginia.

2266.   Defendants made a material false representation in Plaintiff's Substitution of Trustee document filed in the Circuit Court for Chesterfield County, including but not limited to, that "Freedom Mortgage Corporation" was the current Noteholder of Plaintiff's mortgage.

2267.   Upon information and belief, Defendants further misrepresented that the individual who signed the Substitution of Trustee document on behalf of "Freedom Mortgage Corporation" purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. In reality, the Defendants prepared the substitute trustee appointment document and signed it themselves where it was notarized by someone who claimed to be the notary whose stamp appeared on the page and who claimed to have witnessed the signature of the alleged representative.

358

2268.  Upon information and belief, Defendants also misrepresented that the individual who notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

2269.  Upon information and belief, in their correspondence and letters to Plaintiff, Defendants made one or more material misrepresentations, including but not limited to, that the servicer of Plaintiff's loan was also the creditor to whom the debt was owed and the current noteholder of Plaintiff's mortgage, that Plaintiff's promissory note was unavailable and that Defendant PFCV was a validly appointed trustee.

2270.  Upon information and belief, Defendants made materially false representations in Plaintiff's Trustee's Deed document filed in the Circuit Court for Chesterfield County, including but not limited to, that Defendant PFCV was the current noteholder of Plaintiff's mortgage at the time that the document was prepared, that they had the authority to conduct a foreclosure sale, that Defendants conducted the foreclosure sale pursuant to applicable regulations of the Veteran's Administration, and that Defendant PFCV was a validly appointed substitute trustee.

2271.  Upon information and belief, Defendants further misrepresented that the individual who signed the Trustee's Deed on behalf of Defendant PFCV purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

2272.  Upon information and belief, Defendants also misrepresented that the individual who notarized the Trustee's Deed purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such

personal knowledge or such legal standing. Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

2273. Upon information and belief, the Defendants made materially false representations in the foreclosure accounting statement filed with the Commissioner of Accounts for Chesterfield County, including but not limited to the submission of fraudulent documents with the Accounting Statement and misrepresentations about the fees and costs associated with the foreclosure sale.

2274. Defendants intentionally made these misrepresentations to Plaintiff, the Virginia Circuit Courts, and the Commissioners of Accounts with the intent to mislead them into believing these representations were true. Plaintiff relied on these misrepresentations to his detriment.

2275. As a result of Defendants' misrepresentations, Plaintiff suffered injury and is entitled to recover actual damages and costs against Defendants.

2276. Plaintiff also suffered substantial unliquidated and noneconomic damages for the damage to his reputation, his time and his ongoing distress over the subject debt.

2277. Additionally, because Defendants' actions were willful and with knowledge of their untruthfulness or with conscious disregard for Plaintiff's rights, Plaintiff is entitled to an award of punitive damages.

**Count XXXIV: Fraud**
**INDIVIDUAL CLAIM**
**(Plaintiff Craft)**

2278. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

2279. Plaintiff alleges a cause of action for actual and/or constructive fraud under the common law of the Commonwealth of Virginia.

2280. Defendants made a material false representation in Plaintiff's Substitution of Trustee document filed in the Circuit Court for the City of Richmond, including but not limited to, that "PNC Mortgage, a division of PNC Bank, National Association" was the current Noteholder of Plaintiff's mortgage.

2281. Upon information and belief, Defendants further misrepresented that the individual who signed the Substitution of Trustee document on behalf of "PNC Mortgage, a division of PNC Bank, National Association" purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. In reality, the Defendants prepared the substitute trustee appointment document and signed it themselves where it was notarized by someone who claimed to be the notary whose stamp appeared on the page and who claimed to have witnessed the signature of the alleged representative.

2282. Upon information and belief, Defendants also misrepresented that the individual who notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

2283. Upon information and belief, in their correspondence and letters to Plaintiff, Defendants made one or more material misrepresentations, including but not limited to, that the servicer of Plaintiff's loan was also the creditor to whom the debt was owed and the current noteholder of Plaintiff's mortgage, that Plaintiff's promissory note was unavailable and that Defendant PFCV was a validly appointed trustee.

2284.  Upon information and belief, Defendants made materially false representations in Plaintiff's Trustee's Deed document filed in the Circuit Court for the City of Richmond, including but not limited to, that Defendant PFCV was the current noteholder of Plaintiff's mortgage at the time that the document was prepared, that they had the authority to conduct a foreclosure sale, that the property was sold to the last and highest bidder at the foreclosure auction, and that Defendant PFCV was a validly appointed substitute trustee.

2285.  Upon information and belief, Defendants further misrepresented that the individual who signed the Trustee's Deed on behalf of Defendant PFCV purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

2286.  Upon information and belief, Defendants also misrepresented that the individual who notarized the Trustee's Deed purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

2287.  Upon information and belief, Defendants made materially false representations in the foreclosure accounting statement filed with the Commissioner of Accounts for the City of Richmond, including but not limited to the submission of fraudulent documents with the Accounting Statement and misrepresentations about the fees and costs associated with the foreclosure sale.

2288.  Defendants intentionally made these misrepresentations to Plaintiff, the Virginia Circuit Courts, and the Commissioners of Accounts with the intent to mislead them into

believing these representations were true. Plaintiff relied on these misrepresentations to his detriment.

2289. As a result of Defendants' misrepresentations, Plaintiff suffered injury and is entitled to recover actual damages and costs against Defendants.

2290. Plaintiff also suffered substantial unliquidated and noneconomic damages for the damage to his reputation, his time and his ongoing distress over the subject debt.

2291. Additionally, because Defendants' actions were willful and with knowledge of their untruthfulness or with conscious disregard for Plaintiff's rights, Plaintiff is entitled to an award of punitive damages.

### Count XXXV: Fraud
### INDIVIDUAL CLAIM
### (Plaintiff Tomasek)

2292. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

2293. Plaintiff alleges a cause of action for actual and/or constructive fraud under the common law of the Commonwealth of Virginia.

2294. Defendants made a material false representation in Plaintiff's Substitution of Trustee document filed in the Circuit Court for Henrico County, including but not limited to, that "CitiMortgage, Inc." was the current Noteholder of Plaintiff's mortgage.

2295. Upon information and belief, Defendants further misrepresented that the individual who signed the Substitution of Trustee document on behalf of "CitiMortgage, Inc." purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. In reality, the Defendants prepared the substitute trustee appointment document and

signed it themselves where it was notarized by someone who claimed to be the notary whose stamp appeared on the page and who claimed to have witnessed the signature of the alleged representative.

2296. Upon information and belief, Defendants also misrepresented that the individual who notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

2297. Upon information and belief, in their correspondence and letters to Plaintiff, Defendants made one or more material misrepresentations, including but not limited to, that the servicer of Plaintiff's loan was also the creditor to whom the debt was owed and the current noteholder of Plaintiff's mortgage, that Plaintiff's promissory note was unavailable and that Defendant PFCV was a validly appointed trustee.

2298. Upon information and belief, Defendants made materially false representations in Plaintiff's Trustee's Deed document filed in the Circuit Court for Henrico County, including but not limited to, that Defendant PFCV was the current noteholder of Plaintiff's mortgage at the time that the document was prepared, that they had the authority to conduct a foreclosure sale, that the property was sold to the last and highest bidder at the foreclosure auction, and that Defendant PFCV was a validly appointed substitute trustee.

2299. Upon information and belief, Defendants further misrepresented that the individual who signed the Trustee's Deed on behalf of Defendant PFCV purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

2300.   Upon information and belief, Defendants also misrepresented that the individual who notarized the Trustee's Deed purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

2301.   Upon information and belief, the Defendants made materially false representations in the foreclosure accounting statement filed with the Commissioner of Accounts for Henrico County, including but not limited to the submission of fraudulent documents with the Accounting Statement and misrepresentations about the fees and costs associated with the foreclosure sale.

2302.   Defendants intentionally made these misrepresentations to Plaintiff, the Virginia Circuit Courts, and the Commissioners of Accounts with the intent to mislead them into believing these representations were true. Plaintiff relied on these misrepresentations to his detriment.

2303.   As a result of Defendants' misrepresentations, Plaintiff suffered injury and is entitled to recover actual damages and costs against Defendants.

2304.   Plaintiff also suffered substantial unliquidated and noneconomic damages for the damage to his reputation, his time and his ongoing distress over the subject debt.

2305.   Additionally, because Defendants' actions were willful and with knowledge of their untruthfulness or with conscious disregard for Plaintiff's rights, Plaintiff is entitled to an award of punitive damages.

### Count XXXVI: Fraud
### INDIVIDUAL CLAIM
### (Plaintiff Smolinski)

2306.  Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

2307.  Plaintiff alleges a cause of action for actual and/or constructive fraud under the common law of the Commonwealth of Virginia.

2308.  Defendants made a material false representation in Plaintiff's Substitution of Trustee document filed in the Circuit Court for King and Queen County, including but not limited to, that "Cenlar, F.S.B." was the current Noteholder of Plaintiff's mortgage.

2309.  Upon information and belief, Defendants further misrepresented that the individual who signed the Substitution of Trustee document on behalf of "Cenlar, F.S.B." purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. In reality, the Defendants prepared the substitute trustee appointment document and signed it themselves where it was notarized by someone who claimed to be the notary whose stamp appeared on the page and who claimed to have witnessed the signature of the alleged representative.

2310.  Upon information and belief, Defendants also misrepresented that the individual who notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

2311.  Upon information and belief, in their correspondence and letters to Plaintiff, Defendants made one or more material misrepresentations, including but not limited to, that the servicer of Plaintiff's loan was also the creditor to whom the debt was owed and the current

noteholder of Plaintiff's mortgage, that Plaintiff's promissory note was unavailable and that Defendant PFCV was a validly appointed trustee.

2312.   Upon information and belief, Defendants made materially false representations in Plaintiff's Trustee's Deed document filed in the Circuit Court for King and Queen County, including but not limited to, that Defendant PFCV was the current noteholder of Plaintiff's mortgage at the time that the document was prepared, that they had the authority to conduct a foreclosure sale, that the property was sold to the last and highest bidder at the foreclosure auction, and that Defendant PFCV was a validly appointed substitute trustee.

2313.   Upon information and belief, Defendants further misrepresented that the individual who signed the Trustee's Deed on behalf of Defendant PFCV purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

2314.   Upon information and belief, Defendants also misrepresented that the individual who notarized the Trustee's Deed purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

2315.   Upon information and belief, Defendants made materially false representations in the foreclosure accounting statement filed with the Commissioner of Accounts for King and Queen County, including but not limited to the submission of fraudulent documents with the Accounting Statement and misrepresentations about the fees and costs associated with the foreclosure sale.

2316. Defendants intentionally made these misrepresentations to Plaintiff, the Virginia Circuit Courts, and the Commissioners of Accounts with the intent to mislead them into believing these representations were true. Plaintiff relied on these misrepresentations to his detriment.

2317. As a result of Defendants' misrepresentations, Plaintiff suffered injury and is entitled to recover actual damages and costs against Defendants.

2318. Plaintiff also suffered substantial unliquidated and noneconomic damages for the damage to his reputation, his time and his ongoing distress over the subject debt.

2319. Additionally, because Defendants' actions were willful and with knowledge of their untruthfulness or with conscious disregard for Plaintiff's rights, Plaintiff is entitled to an award of punitive damages.

### Count XXXVII: Fraud
### INDIVIDUAL CLAIM
#### (Plaintiff Boyd)

2320. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

2321. Plaintiff alleges a cause of action for actual and/or constructive fraud under the common law of the Commonwealth of Virginia.

2322. Defendants made a material false representation in Plaintiff's Substitution of Trustee document filed in the Circuit Court for Henrico County, including but not limited to, that "PHH Mortgage Corporation" was the current Noteholder of Plaintiff's mortgage.

2323. Upon information and belief, Defendants further misrepresented that the individual who signed the Substitution of Trustee document on behalf of "PHH Mortgage Corporation" purporting to have personal knowledge of the facts contained in the sworn

368

statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. In reality, the Defendants prepared the substitute trustee appointment document and signed it themselves where it was notarized by someone who claimed to be the notary whose stamp appeared on the page and who claimed to have witnessed the signature of the alleged representative.

2324. Upon information and belief, Defendants also misrepresented that the individual who notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

2325. Upon information and belief, in their correspondence and letters to Plaintiff, Defendants made one or more material misrepresentations, including but not limited to, that the servicer of Plaintiff's loan was also the creditor to whom the debt was owed and the current noteholder of Plaintiff's mortgage, that Plaintiff's promissory note was unavailable and that Defendant PFCV was a validly appointed trustee.

2326. Upon information and belief, Defendants made materially false representations in Plaintiff's Trustee's Deed document filed in the Circuit Court for Henrico County, including but not limited to, that Defendant PFCV was the current noteholder of Plaintiff's mortgage at the time that the document was prepared, that they had the authority to conduct a foreclosure sale, that Defendants conducted the foreclosure sale pursuant to applicable regulations of the Department of Housing and Urban Development, and that Defendant PFCV was a validly appointed substitute trustee.

2327. Upon information and belief, Defendants further misrepresented that the individual who signed the Trustee's Deed on behalf of Defendant PFCV purporting to have

personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

2328.  Upon information and belief, Defendants also misrepresented that the individual who notarized the Trustee's Deed purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

2329.  Upon information and belief, the Defendants made materially false representations in the foreclosure accounting statement filed with the Commissioner of Accounts for Henrico County, including but not limited to the submission of fraudulent documents with the Accounting Statement and misrepresentations about the fees and costs associated with the foreclosure sale.

2330.  Defendants intentionally made these misrepresentations to Plaintiff, the Virginia Circuit Courts, and the Commissioners of Accounts with the intent to mislead them into believing these representations were true. Plaintiff relied on these misrepresentations to his detriment.

2331.  As a result of Defendants' misrepresentations, Plaintiff suffered injury and is entitled to recover actual damages and costs against Defendants.

2332.  Plaintiff also suffered substantial unliquidated and noneconomic damages for the damage to his reputation, his time and his ongoing distress over the subject debt.

2333.  Additionally, because Defendants' actions were willful and with knowledge of their untruthfulness or with conscious disregard for Plaintiff's rights, Plaintiff is entitled to an award of punitive damages.

## Count XXXVIII:  Fraud
## INDIVIDUAL CLAIM
### (Plaintiff Morgan)

2334.  Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

2335.  Plaintiff alleges a cause of action for actual and/or constructive fraud under the common law of the Commonwealth of Virginia.

2336.  Defendants made a material false representation in Plaintiff's Substitution of Trustee document filed in the Circuit Court for Chesterfield County, including but not limited to, that "PHH Mortgage Corporation" was the current Noteholder of Plaintiff's mortgage.

2337.  Upon information and belief, Defendants further misrepresented that the individual who signed the Substitution of Trustee document on behalf of "PHH Mortgage Corporation" purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. In reality, the Defendants prepared the substitute trustee appointment document and signed it themselves where it was notarized by someone who claimed to be the notary whose stamp appeared on the page and who claimed to have witnessed the signature of the alleged representative.

2338.  Upon information and belief, Defendants also misrepresented that the individual who notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

2339.  Upon information and belief, in their correspondence and letters to Plaintiff, Defendants made one or more material misrepresentations, including but not limited to, that the

371

servicer of Plaintiff's loan was also the creditor to whom the debt was owed and the current noteholder of Plaintiff's mortgage, that Plaintiff's promissory note was unavailable and that Defendant PFCV was a validly appointed trustee.

2340. Defendants intentionally made these misrepresentations to Plaintiff and the Virginia Circuit Courts with the intent to mislead them into believing these representations were true. Plaintiff relied on these misrepresentations to his detriment.

2341. As a result of Defendants' misrepresentations, Plaintiff suffered injury and is entitled to recover actual damages and costs against Defendants.

2342. Plaintiff also suffered substantial unliquidated and noneconomic damages for the damage to his reputation, his time and his ongoing distress over the subject debt.

2343. Additionally, because Defendants' actions were willful and with knowledge of their untruthfulness or with conscious disregard for Plaintiff's rights, Plaintiff is entitled to an award of punitive damages.

**Count XXXIX: Fraud**
**INDIVIDUAL CLAIM**
**(Plaintiff Washington)**

2344. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

2345. Plaintiff alleges a cause of action for actual and/or constructive fraud under the common law of the Commonwealth of Virginia.

2346. Defendants made a material false representation in Plaintiff's Substitution of Trustee document filed in the Circuit Court for Henrico County, including but not limited to, that "Wells Fargo Bank, N.A." was the current Noteholder of Plaintiff's mortgage.

2347. Upon information and belief, Defendants further misrepresented that the individual who signed the Substitution of Trustee document on behalf of "Wells Fargo Bank, N.A." purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. In reality, the Defendants prepared the substitute trustee appointment document and signed it themselves where it was notarized by someone who claimed to be the notary whose stamp appeared on the page and who claimed to have witnessed the signature of the alleged representative.

2348. Upon information and belief, Defendants also misrepresented that the individual who notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

2349. Upon information and belief, in their correspondence and letters to Plaintiff, Defendants made one or more material misrepresentations, including but not limited to, that the servicer of Plaintiff's loan was also the creditor to whom the debt was owed and the current noteholder of Plaintiff's mortgage, that Plaintiff's promissory note was unavailable and that Defendant PFCV was a validly appointed trustee.

2350. Upon information and belief, Defendants made materially false representations in Plaintiff's Trustee's Deed document filed in the Circuit Court for Henrico County, including but not limited to, that Defendant PFCV was the current noteholder of Plaintiff's mortgage at the time that the document was prepared, that they had the authority to conduct a foreclosure sale, that Defendants conducted the foreclosure sale pursuant to applicable regulations of the

Department of Housing and Urban Development, and that Defendant PFCV was a validly appointed substitute trustee.

2351. Upon information and belief, Defendants further misrepresented that the individual who signed the Trustee's Deed on behalf of Defendant PFCV purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

2352. Upon information and belief, Defendants also misrepresented that the individual who notarized the Trustee's Deed purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

2353. Upon information and belief, the Defendants made materially false representations in the foreclosure accounting statement filed with the Commissioner of Accounts for Henrico County, including but not limited to the submission of fraudulent documents with the Accounting Statement and misrepresentations about the fees and costs associated with the foreclosure sale.

2354. Defendants intentionally made these misrepresentations to Plaintiff, the Virginia Circuit Courts, and the Commissioners of Accounts with the intent to mislead them into believing these representations were true. Plaintiff relied on these misrepresentations to her detriment.

2355. As a result of Defendants' misrepresentations, Plaintiff suffered injury and is entitled to recover actual damages and costs against Defendants.

2356. Plaintiff also suffered substantial unliquidated and noneconomic damages for the damage to her reputation, her time and her ongoing distress over the subject debt.

2357. Additionally, because Defendants' actions were willful and with knowledge of their untruthfulness or with conscious disregard for Plaintiff's rights, Plaintiff is entitled to an award of punitive damages.

### Count XXXX: Fraud
### INDIVIDUAL CLAIM
### (Plaintiff Laura Wilson)

2358. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

2359. Plaintiff alleges a cause of action for actual and/or constructive fraud under the common law of the Commonwealth of Virginia.

2360. Defendants made a material false representation in Plaintiff's Substitution of Trustee document filed in the Circuit Court for Chesterfield County, including but not limited to, that MERS was the current Noteholder of Plaintiff's mortgage.

2361. Upon information and belief, Defendants further misrepresented that the individual who signed the Substitution of Trustee document on behalf of MERS purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. In reality, the Defendants prepared the substitute trustee appointment document and signed it themselves where it was notarized by someone who claimed to be the notary whose stamp appeared on the page and who claimed to have witnessed the signature of the alleged representative.

2362.  Upon information and belief, Defendants also misrepresented that the individual who notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

2363.  Upon information and belief, in their correspondence and letters to Plaintiff, Defendants made one or more material misrepresentations, including but not limited to, that the servicer of Plaintiff's loan was also the creditor to whom the debt was owed and the current noteholder of Plaintiff's mortgage, that Plaintiff's promissory note was unavailable and that Defendant PFCV was a validly appointed trustee.

2364.  Upon information and belief, Defendants made materially false representations in Plaintiff's Trustee's Deed document filed in the Circuit Court for Chesterfield County, including but not limited to, that Defendant PFCV was the current noteholder of Plaintiff's mortgage at the time that the document was prepared, that they had the authority to conduct a foreclosure sale, that Defendants conducted the foreclosure sale pursuant to applicable regulations of the Department of Housing and Urban Development, and that Defendant PFCV was a validly appointed substitute trustee.

2365.  Upon information and belief, Defendants further misrepresented that the individual who signed the Trustee's Deed on behalf of Defendant PFCV purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

2366.  Upon information and belief, Defendants also misrepresented that the individual who notarized the Trustee's Deed purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such

personal knowledge or such legal standing. Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

2367.   Upon information and belief, Defendants made materially false representations in the foreclosure accounting statement filed with the Commissioner of Accounts for Chesterfield County, including but not limited to the submission of fraudulent documents with the Accounting Statement and misrepresentations about the fees and costs associated with the foreclosure sale.

2368.   Defendants intentionally made these misrepresentations to Plaintiff, the Virginia Circuit Courts, and the Commissioners of Accounts with the intent to mislead them into believing these representations were true. Plaintiff relied on these misrepresentations to her detriment.

2369.   As a result of Defendants' misrepresentations, Plaintiff suffered injury and is entitled to recover actual damages and costs against Defendants.

2370.   Plaintiff also suffered substantial unliquidated and noneconomic damages for the damage to her reputation, her time and her ongoing distress over the subject debt.

2371.   Additionally, because Defendants' actions were willful and with knowledge of their untruthfulness or with conscious disregard for Plaintiff's rights, Plaintiff is entitled to an award of punitive damages.

## Count XXXXI: Fraud
## INDIVIDUAL CLAIM
### (Plaintiffs Ida Beverley)

2372.   Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

2373.  Plaintiff alleges a cause of action for actual and/or constructive fraud under the common law of the Commonwealth of Virginia.

2374.  Defendants made a material false representation in Plaintiff's Substitution of Trustee document filed in the Circuit Court for the City of Richmond, including but not limited to, that "Wells Fargo Bank, N.A." was the current Noteholder of Plaintiff's mortgage.

2375.  Upon information and belief, Defendants further misrepresented that the individual who signed the Substitution of Trustee document on behalf of "Wells Fargo Bank, N.A." purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. In reality, the Defendants prepared the substitute trustee appointment document and signed it themselves where it was notarized by someone who claimed to be the notary whose stamp appeared on the page and who claimed to have witnessed the signature of the alleged representative.

2376.  Upon information and belief, Defendants also misrepresented that the individual who notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

2377.  Upon information and belief, in their correspondence and letters to Plaintiff, Defendants made one or more material misrepresentations, including but not limited to, that the servicer of Plaintiff's loan was also the creditor to whom the debt was owed and the current noteholder of Plaintiff's mortgage, that Plaintiff's promissory note was unavailable and that Defendant PFCV was a validly appointed trustee.

2378. Defendants intentionally made these misrepresentations to Plaintiff and the City of Richmond Circuit Court with the intent to mislead them into believing these representations were true. Plaintiff relied on these misrepresentations to her detriment.

2379. As a result of Defendants' misrepresentations, Plaintiff suffered injury and is entitled to recover actual damages and costs against Defendants.

2380. Plaintiff also suffered substantial unliquidated and noneconomic damages for the damage to her reputation, her time and her ongoing distress over the subject debt.

2381. Additionally, because Defendants' actions were willful and with knowledge of their untruthfulness or with conscious disregard for Plaintiff's rights, Plaintiff is entitled to an award of punitive damages.

### Count XXXXII: Fraud
### INDIVIDUAL CLAIM
### (Plaintiffs Anthony and Carolyn Reid)

2382. Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

2383. Plaintiffs allege a cause of action for actual and/or constructive fraud under the common law of the Commonwealth of Virginia.

2384. Defendants made a material false representation in Plaintiffs' Substitution of Trustee document filed in the Circuit Court for Henrico County, including but not limited to, that "Wells Fargo Bank, N.A." was the current Noteholder of Plaintiffs' mortgage.

2385. Upon information and belief, Defendants further misrepresented that the individual who signed the Substitution of Trustee document on behalf of "Wells Fargo Bank, N.A." purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such

legal standing. In reality, the Defendants prepared the substitute trustee appointment document and signed it themselves where it was notarized by someone who claimed to be the notary whose stamp appeared on the page and who claimed to have witnessed the signature of the alleged representative.

2386.   Upon information and belief, Defendants also misrepresented that the individual who notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

2387.   Upon information and belief, in their correspondence and letters to Plaintiffs, Defendants made one or more material misrepresentations, including but not limited to, that the servicer of Plaintiffs' loan was also the creditor to whom the debt was owed and the current noteholder of Plaintiffs' mortgage, that Plaintiffs' promissory note was unavailable and that Defendant PFCV was a validly appointed trustee.

2388.   Defendants intentionally made these misrepresentations to Plaintiffs and the Henrico County Circuit Court with the intent to mislead them into believing these representations were true. Plaintiffs relied on these misrepresentations to their detriment.

2389.   As a result of Defendants' misrepresentations, Plaintiffs suffered injury and are entitled to recover actual damages and costs against Defendants.

2390.   Plaintiffs also suffered substantial unliquidated and noneconomic damages for the damage to their reputation, their time and their ongoing distress over the subject debt.

2391.   Additionally, because Defendants' actions were willful and with knowledge of their untruthfulness or with conscious disregard for Plaintiffs' rights, Plaintiffs are entitled to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the putative class members, move

for class certification and for actual, statutory, compensatory, punitive and treble damages

against the Defendants; for declaratory and injunctive relief; for attorneys' fees and costs; and

such other relief the Court deems just, equitable, and proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,
**PLAINTIFFS**

By_____
Of Counsel

Matthew J. Erausquin, VSB No. 65434
Janelle E. Mason, VSB No. 82389
*Attorneys for the Plaintiffs*
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Rd., Ste. 600
Alexandria, VA 22314
(703) 273-7770 - Telephone
(888) 892-3512 – Facsimile
matt@claleglal.com
janelle@clalegal.com

Leonard A. Bennett, VSB No. 37523
Susan Rotkis, Esq. VSB #40639
*Attorney for the Plaintiffs*
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
(757) 930-3660 - Telephone
(757) 930-3662 – Facsimile
lenbennett@clalegal.com
srotkis@clalegal.com

Kristi Cahoon Kelly, Esq., VSB No. 72791

*Attorney for the Plaintiffs*
SUROVELL ISAACS PETERSEN & LEVY PLC
4010 University Drive, 2nd Floor
Fairfax, VA 22030
(703) 277-9774
(703) 591-9285 Facsimile
kkelly@siplfirm.com

Dale W. Pittman, VSB No. 15673
*Attorney for the Plaintiffs*
THE LAW OFFICE OF DALE W. PITTMAN, P.C.
The Eliza Spotswood House
112-A West Tabb Street
Petersburg, VA 23803
(804) 861-6000
(804) 861-3368 Facsimile
dale@pittmanlawoffice.com