**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| GEORGE BOYD, et al. ) | |
| *individually and on behalf of all* ) | |
| *others similarly situated,* ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. 3:12cv700 |
| v. ) | |
| ) | |
| LAW OFFICES OF SHAPIRO, BROWN, & ) | |
| ALT, LLP, et al., ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
TRANSFER VENUE AND CONSOLIDATE**

COME NOW the Plaintiffs, by counsel, and for their Opposition to the Defendants'

Motion to Transfer Venue and Consolidate, they respectfully submit this memorandum of law.

## INTRODUCTION

Defendants operate a national foreclosure mill.  None of their principals are located in the

Norfolk Division.  The Defendants have employees stationed throughout the state and their primary

management, Gerald M. Shapiro, Kristine D. Brown, and Gerald Alt all work out of the Defendants'

Northern Virginia office.   And the Parties share this lack of prominent connection to Hampton

Roads.  36 of 44 named Plaintiffs reside in the Richmond Division and none reside in the Norfolk

Division.   33 of the 36 pieces of real property at issue in this case are located in the Richmond

Division. Furthermore, 33 out of the 36 loans at issue and foreclosures challenged occurred in the

Richmond Division.   Further, nearly every third party witness known to the parties resides either in

the Richmond Division or outside the state. There is simply no way that Defendants can support a

change of venue on convenience grounds and even less so when the Court applies the required

deference to the Plaintiffs' choice of forum.

Defendants know this and therefore only feign interest in forum *non conviens*. Instead, their primary argument is a prayer to send this case to Norfolk so that it can be joined with several other cases now stayed before United States District Court Judge Allen. *See Moore v. Law Offices of Shapiro & Burson, LLP*; *Andrade v. Law Offices of Shapiro & Burson, LLP*; *Waters-Levy v. Law Offices of Shapiro & Burson, LLP*; *Gudym v. Law Offices of Shapiro, Brown & Alt, LLP*; *MacNaughton v. Law Offices of Shapiro, Brown & Alt, LLP*; *Campos-Carranza v. Law Offices of Shapiro, Brown & Alt, LLP*, Consolidated Civil Action No. 4:11-cv-122 (E.D. Va.); *Akbar v. Law Offices of Shapiro, Brown & Alt, LLP*, Civil Action No. 1:11cv1194 (E.D. Va.); *Redditt v. Law Offices of Shapiro, Brown & Alt, LLP*, Civil Action No. 2:12-cv-521 (E.D. Va). But even these cases are not consolidated for litigation. In fact, Defendants opposed anything other than temporary consolidation for settlement purposes alone. And even then, all such cases are not before Judge Allen. *See Payne v. Law Offices of Shapiro, Brown, & Alt, LLP*, Civil Action No. 4:12-cv-87 (E.D. Va.). Even this purpose – mediation and settlement – has only a tangential connection to Norfolk. Instead, the unsuccessful mediation to date has been supervised by the Honorable Dennis W. Dohnal (Ret.), conducted at the Richmond Troutman Sanders office and attended only by the Defendants' out of state principals. Not one employee from the Virginia Beach office has participated in settlement meetings or litigation to date.

There are no rules or even equity-based justification for sending this Richmond Division case to Norfolk. Defendants' motion must be denied.

### STANDARD OF LAW

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." This section "is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of

convenience and fairness." *Samsung Elect. Co., Ltd. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 715 (E.D. Va. 2005) (internal citations and quotations omitted). The moving party, in this case Defendants Shapiro and PFC, must show that a transfer of venue is warranted under Section 1404(a). *Id.* (citing *The Original Creatine Patent Co., Ltd. v. Met-Rx USA, Inc.*, 2005 WL 1048748, *1 (E.D. Va. 2005)).

The decision to transfer an action under this statute is committed to the sound discretion of the district court. *Heinz Kettler GMBH & Co. v. Razor USA,* LLC, 750 F. Supp. 2d 660, 667 (E.D. Va. 2010); *see also One Beacon Ins. Co. v. JNB Storage Trailer Rental Corp.*, 312 F. Supp. 2d 824, 828 (E.D. Va. 2004). In exercising its discretion under the statute, it is necessary for the district court to consider and balance a number of factors, including:

> (1) ease of access to sources of proof; (2) the convenience of the parties and witnesses; (3) the cost of obtaining the attendance of witnesses; (4) the availability of the compulsory process; (5) the interest in have local controversies decided at home; (6) in diversity cases, the court's familiarity with the applicable law; and (7) the interest of justice.

*Id.* at 715-16 (citing *One Beacon Ins. Co.*, 312 F. Supp. 2d at 828).

Although Section 1404(a) provides no guidance on the weight that should be given to the factors in consider a motion to transfer venue, the district court must consider all relevant factors in deciding whether to grant the motion. *Id.* (internal citations omitted). However, there are certain factors that should be given heavier weight when deciding such a motion: "the principal factors to consider, however, are the plaintiff's choice of forum, witness convenience, access to sources of proof, party convenience, and the interest of justice." *Id.* at 716 (citing *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 633 (E.D. Va. 2003)).  Additionally, as this Court has previously explained,

> The burden is on the moving party to show that transfer to another forum is appropriate, see *General Foam Plastics Corp. v. Kraemer Export Corp.*, 806 F. Supp. 88, 89 (E.D.Va.1992), and the movant "must show that 'the balance of convenience among the parties and witnesses is *strongly* in favor of the forum to which transfer is sought.'" *Id.* at 90 (emphasis in original) (citations omitted).

*Carolina Casualty Insur. Co. v. Mares*, 826 F. Supp. 149, 152 (E.D. Va. 1993).

## ARGUMENT

**I.      Whether or not the case could technically have been brought in Norfolk, it belongs in Richmond.**

28 U.S.C. § 1391 provides that a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2).[1] A case is properly brought in a division of this Court where a substantial party of the events or omissions giving rise to the claim occurred. LR 3(c). Almost all of the events in this case – indeed, the vast majority – occurred in the Richmond Division.

Furthermore, the Defendants' foreclosure activities conducted outside of the Richmond Division mostly occurred in their Northern Virginia office. The Defendants' primary management, Gerald M. Shapiro, Kristine D. Brown, and Gerard Alt work out of the Manassas office. Upon information and belief, the signing of affidavits, trustee's deeds, and post-auction sale processing of foreclosed properties also occurred in the Defendants' Northern Virginia Office, as confirmed by a whistleblower who came forward to expose the fraud that occurred in the Defendant's foreclosure practice. *See generally, Aff. of Jose Portillo* (attached hereto as Exhibit "A").

Defendants do not and cannot challenge the fact that the events and the legal violations and injuries occurred in the Richmond Division.  An action alleging claims under the Fair Debt Collection Practice Act ("FDCPA") arises where the consumer receives a violative letter. *See Lachman v. Bank of Louisiana*, 510 F. Supp. 753 (N.D. Ohio 1981); *Bailey v. Clegg, Brush &*

---

[1] As the Court knows, the Local Rules track the same standard for determining which Division is proper within the District.  LR 3(c).

*Assoc., Insc.*, 1991 WL 143461 (N.D. Ga. 1991); *Russey v. Rankin*, 837 F. Supp. 1103 (D.N.M. 1993). The Eastern District of Virginia has also held that venue in a FDCPA case is proper in a Division where the debt collector targeted a significant portion of its debt collection activities. *See Richardson v. William Sneider & Associates, LLC*, 4:12CV25, 2012 WL 3525625 (E.D. Va. July 24, 2012) *report and recommendation adopted,* 4:12CV25, 2012 WL 3525621 (E.D. Va. Aug. 14, 2012).

Much of the wire and mail fraud alleged in the Plaintiffs' Racketeer Influenced and Corrupt Organizations Act ("RICO") count was targeted towards residents of the Richmond Division. *See generally* Compl. Most of the residences that were foreclosed upon or suffered an attempted foreclosure by the Defendants are located in the Richmond Division. *See* Compl. ¶¶ 178, 242, 296, 354, 413, 463, 522, 562, 609, 651, 697, 741, 783, 828, 877, 918, 956, 1004, 1031, 1068, 1155, 1232, 1256, 1309, 1349, 1388, 1428, 1474, 1537, 1591, 1646, 1701, 1755. The majority of the fraudulent Substitution of Trust documents, Trustee's Deeds, and Foreclosure Accountings described in the Complaint were filed with Circuit Courts or Commissioners of Accounts located in the Richmond Division. *See generally* Compl. Additionally, many of the actions taken by the Defendants and their employees related to the Plaintiffs' claims occurred in the Richmond Division, including but not limited to conducting the foreclosure auctions of the Richmond Division properties at courthouses located within the Richmond Division; accessing and utilizing court and land records within the Richmond Division in reference to Plaintiffs' properties located within the Richmond Division; filing documents in the land records at the courthouses located in the Richmond Division; and checking the property tax records in the counties located in the Richmond Division in order to verify that the Plaintiffs were current on their property tax payments. The Defendants took all of these actions in Caroline County,

Chesterfield, Fredericksburg, Hanover County, Henrico County, King and Queen County, Lunenburg County, Powhatan, the city of Richmond, and Spotsylvania County with regards to the Plaintiffs who suffered a foreclosure or attempted foreclosure in those areas. None of these actions were taken in the Norfolk Division with respect to any of the Plaintiffs in the Complaint. Finally, the overwhelming majority of the letters that the Plaintiffs allege violated the FDCPA were sent to consumers residing in the Richmond Division. *See generally* Compl. Therefore, venue is proper in the Richmond Division.

### A.    The Plaintiffs' choice of forum is entitled to substantial weight.

It is well established that, in evaluating whether to transfer a case to another venue, courts generally give substantial weight to a plaintiff's choice of forum. *Lycos, Inc. v. Tivo, Inc.*, 499 F. Supp. 2d 685, 692 (E.D. Va. 2007) (citing *Telepharmacy Solutions, Inc. v. Pickpoint Corp.*, 238 F. Supp. 2d 741, 743 (E.D. Va. 2003). *See also Acterna, LLC v. Adtech, Inc.*, 129 F. Supp 2d 936, 938 (E.D. Va. 2001). Defendants argue that this Court should disregard the Plaintiffs' choice of forum in this case because their suit is the result of "forum shopping", that they have selected a forum other than their home forum, that their claims bear little relation to the Richmond Division, and that the Plaintiffs originally selected another forum in which to litigate and simultaneously is engaged in litigation in that forum. Defs.' Mem. in Supp. of its (sic) Mot. to Transfer and Consolidate 10-11, ECF No. 14. Defendants also argue that the Plaintiffs' choice of forum in this case should not be afforded substantial weight because the case is a class action. These arguments are all unavailing.

First, the Plaintiffs have not engaged in forum shopping. The majority of Plaintiffs in this lawsuit suffered foreclosures or attempted foreclosures within the Richmond Division – two in Caroline County, eight in Chesterfield, one in Fredericksburg, one in Hanover County, thirteen

in Henrico County, two in King and Queen County, two in Lunenburg County, one in Powhatan, seven in the city of Richmond, and two in Spotsylvania County. Many of the documents at issue in this case, including the Substitution of Trustee documents, Trustee's Deed, Deeds of Trusts and Foreclosure Accounting, will be located in the Circuit Courts and Commissioner of Accounts' offices located in those counties. And although the Plaintiffs have not alleged their current residence in the Complaint, they have certainly alleged the counties in which the properties that the Defendants foreclosed upon or attempted to foreclose upon are located. *See* Compl. ¶¶ 178, 242, 296, 354, 413, 463, 522, 562, 609, 651, 697, 741, 783, 828, 877, 918, 956, 1004, 1031, 1068, 1155, 1232, 1256, 1309, 1349, 1388, 1428, 1474, 1537, 1591, 1646, 1701, 1755.  Furthermore, even if some of the Plaintiffs have moved out of the Richmond Division after the events alleged in their Complaint, as the Defendants implicate (*See* Defs.' Mem. in Supp. of its (sic) Mot. to Transfer and Consolidate 11, ECF No. 14), they are still obligated to bring their suit in the district and division where "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). *See also* LR 3(c). Under the applicable venue statue and local rules, the current residence of the Plaintiffs is not considered. *See generally* 28 U.S.C. § 1391; LR 3.  Although five Plaintiffs do not have any connection to the Richmond Division, as the Defendants assert, the vast majority of the Plaintiffs in this Complaint still live in the Richmond Division, as well as owned (or still own) property that was the subject of a foreclosure, or attempted foreclosure, by the Defendants, within the Richmond Division. Therefore, they have chosen their home forum in which to litigate this case. Additionally, *none* of the Plaintiffs reside in, owned or own property in, or have any connection whatsoever to the

Norfolk Division. Plaintiffs certainly did not engage in forum shopping when they decided to file suit in their home forum, a place in which most of the events alleged in the complaint occurred.

Second, the parties are not engaged in similar litigation currently pending before the Norfolk Division and Judge Allen. The Defendants are correct in their assertion that they have similar lawsuits pending against them in the Norfolk Division.  Defs.' Mem. in Supp. of its (sic) Mot. to Transfer and Consolidate 11, ECF No. 14. *See e.g.*, *Moore v. Law Offices of Shapiro & Burson, LLP*; *Andrade v. Law Offices of Shapiro & Burson, LLP*; *Waters-Levy v. Law Offices of Shapiro & Burson, LLP*; *Gudym v. Law Offices of Shapiro, Brown & Alt, LLP*; *MacNaughton v. Law Offices of Shapiro, Brown & Alt, LLP*; *Campos-Carranza v. Law Offices of Shapiro, Brown & Alt, LLP*, Consolidated Civil Action No. 4:11-cv-122 (E.D. Va.); *Akbar v. Law Offices of Shapiro, Brown & Alt, LLP*, Civil Action No. 1:11cv1194 (E.D. Va.); *Redditt v. Law Offices of Shapiro, Brown & Alt, LLP*, Civil Action No. 2:12-cv-521 (E.D. Va); *Payne v. Law Offices of Shapiro, Brown, & Alt, LLP*, Civil Action No. 4:12-cv-87 (E.D. Va.). However, the Plaintiffs in this case have never been involved in litigation against the Defendants prior to the filing of this lawsuit, and certainly never agreed to file their case in the Norfolk Division. Therefore, the Defendants' assertion that "the parties are engaged in similar litigation currently pending before the Norfolk Division and Judge Allen," Defs.' Mem. in Supp. of its (sic) Mot. to Transfer and Consolidate 11, ECF No. 14, is completely incorrect and does not in any way support an argument that this case should be transferred to the Norfolk Division.

Finally, Defendants' argument that the Plaintiffs' choice of forum in this case should not be afforded substantial weight because the case is a class action is fatally flawed.  The basis for this occasional assertion is that in a national class, the local residence of the named Plaintiff should have less influence over a determination of venue because all other class members would

be scattered across the nation. But this idea is inapposite to this case. The named Plaintiffs almost all reside in the Richmond Division. But so will nearly all class members. Defendants' refusal to understand and articulate why some courts have reduced a Plaintiff's choice of venue in a nationwide class action lawsuit is fatal to its position.

In support of their argument, the Defendants cite to this Court's decision in *Byerson v. Equifax Information Services*.[2] Defs.' Mem. in Supp. of its (sic) Mot. to Transfer and Consolidate 8, ECF No. 14. However, Defendants' reliance on the *Byerson* case is misguided. In that case, Judge Payne held that

> Courts often give less weight to the plaintiff's choice of forum in class actions. In class actions, the named plaintiff's choice of forum is afforded little weight because in such a case, there will be numerous potential plaintiffs, each possibly able to make a showing that a particular forum is best suited for the adjudication of the class' claim. But here, the Plaintiffs' choice of forum is amenable to inexpensive discovery and trial because the forum is home to the Plaintiffs and to key non-party witnesses. Where that is the case, a plaintiff's choice of forum is entitled to significant weight that is not materially diminished merely because the case is a class action.

*Byerson v. Equifax Information Servs., LLC*, 467 F. Supp. 2d 627, 633 (E.D. Va. 2006) (internal citations and quotations omitted). Even in *Byerson*, the Court afforded the Plaintiff, who was from the Eastern District of Virginia, but not the Richmond Division, deference to her choice of forum. However, the Richmond Division is the home forum of the Plaintiffs (see discussion above), as well as to almost all key non-party witnesses that are located in Virginia (see discussion below). Additionally, the class definitions in the Complaint are specifically limited to property that was subject to a foreclosure or attempted foreclosure in the Richmond Division, meaning that all putative class members will also be located in the Richmond Division. *See* Compl. ¶¶ 1810, 1827, 1844, 1858, 1872, 1899, 1902, 1904, 1905, 1908, 1910, 1912, 1914. This,

---

[2] The Defendants also cite to two other cases, one in the Second Circuit, and the other in the Southern District of New York. Neither is binding on this Court.

as it did in the *Byerson* case, means that keeping this case in the Richmond Division will result in a less expensive discovery process and trial. Therefore, even though the instant case is a class action, it should remain in the Richmond Division.

**B.     A transfer to the Norfolk Division would greatly inconvenience and prejudice the Plaintiffs and their witnesses.**

Determination of a motion to transfer requires the court to "weigh the convenience of the parties and witnesses in litigating in either venue." *The Original Creatine Patent Co., Ltd. v. Met-Rx USA, Inc.*, 387 F. Supp. 2d 564, 570 (E.D. Va. 2005).  This factor is of considerable importance in a court's determination of whether a transfer is appropriate under Section 1404(a). *Samsung Elect. Co., Ltd*, 386 F. Supp. 2d at 718. The party asserting inconvenience "'has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience.'" *The Original Creatine Patent Co., Ltd.*, 387 F. Supp. 2d at 570  (quoting *Koh*, 250 F. Supp. 2d at 636). When considering this factor, "this court draws a distinction between party-witnesses and non-party witnesses and affords greater weight to the convenience of non-party witnesses." *Lycos, Inc.*, 499 F. Supp. 2d at 693 (citing *Samsung Elect. Co., Ltd*, 386 F. Supp. 2d at 718).

Although this case is still in the very early stages of litigation and the Plaintiffs have not identified all of their witnesses, there are several non-party witnesses located in the Richmond Division. First, SunTrust Bank serviced at least one Plaintiff's loan, and allegedly signed the very Substitution of Trustee document at issue in this case. Plaintiffs anticipate that they will seek SunTrust's testimony to establish the validity of its signature on the Substitution of Trustee document, as well as to question SunTrust about its procedures regarding the transfer of a mortgage to the Defendants for foreclosure. The Plaintiffs also allege that SunTrust is part of the

RICO enterprise, so they will seek discovery to ascertain the extent of SunTrust's role in the enterprise. SunTrust's Mortgage division is headquartered in the Richmond Division.

Additionally, the only US Department of Housing and Urban Development ("HUD") field office in Virginia is located in Richmond. Plaintiffs anticipate that they will seek the testimony of this organization in regards to its FHA regulations. Upon information and belief, the Richmond field office would also be in possession of documents relating to the Plaintiffs' FHA loans, and would be able to testify as to whether the Defendants sought the in person meeting prior to foreclosing on Plaintiffs' FHA backed loans, as required by the Plaintiffs' Deeds of Trust and the applicable law incorporated into those Deeds of Trust.

Plaintiffs also intend to seek the testimony of their friends and family members to testify to the emotional toll that the foreclosures or attempted foreclosures took on the Plaintiffs, including Warren Beverley, Paola Boyd, Rebecca Damiani, and Tina Ott. Each of these witnesses would able to testify in this Division, but would be severely burdened if forced to testify in Norfolk.  Each of these third party witnesses has provided the specifics of the inconvenience to be suffered if this case was transferred.

For example, Warren Beverley suffers from severe health issues related to his back and shoulders, and also has occasional seizures. Decl. of Warren Beverley ¶ 4 (attached hereto as Exhibit "B"). This makes traveling long distances very difficult for him. *Id.* As Mr. Beverley only lives about 15 minutes away from the federal courthouse in Richmond, it would be much easier for him to testify if this case were to remain in this court. *Id.* at ¶ 6. Conversely, if Mr. Beverley had to travel to the Norfolk Division in order to testify, it would cause him significant hardship. *Id.* at ¶ 5.

Additionally, Paola Boyd, Rebecca Damiani, and Tina Ott all have work obligations that would make it difficult for them to testify in Norfolk. *See* Decl. of Paola M. Boyd ¶¶ 4-5 (attached hereto as Exhibit "C"); Decl. of Rebecca Damiani ¶¶ 4-5 (attached hereto as Exhibit "D"); Decl. of Tina Ott ¶ 2-3 (attached hereto as Exhibit "E"). All of these witnesses live less than an hour away from Richmond federal courthouse, but it would take them about three hours to travel to the Norfolk federal courthouse. Ex. C, ¶¶ 5, 7; Ex. D, ¶¶ 5, 6; Ex. E, ¶¶ 3, 6. Additionally, both Paola Boyd and Tina Ott have school-aged children that they care for. Ex. C, ¶ 5; Ex. E, ¶ 4. If they were required to travel the long distance to Norfolk in order to testify, they would have to find someone to watch their children while they were traveling to and from Norfolk. Finally, Tina Ott has to help her husband, Plaintiff Michael Ott, travel because of his health issues. If this case were transferred to Norfolk, it would be much more difficult to assist her husband in getting to the Norfolk federal courthouse, which is several hours away from their home. Ex. E, ¶¶ 3, 5. It would be much easier for them to travel to the federal courthouse in Richmond, which is approximately one hour away from their home. Ex. E, ¶ 6.

Although Plaintiffs' counsel has not yet identified the entire set of these potential friend and family member witnesses, given that the vast majority of the Plaintiffs reside within the Richmond Division, Plaintiffs' counsel believes that the remaining witnesses would be located in the Richmond Division as well.

This Court has observed that "party witnesses are the parties themselves and those closely aligned with a party, and they are presumed to be more willing to testify in a different forum, while there is no such presumption as to non-party witnesses." *Samsung Elect. Co., Ltd*, 386 F. Supp. 2d at 718. Additionally, "when the appearance of witnesses can be secured regardless of the forum's location through court order or persuasion by an employer who is a

party to the action, this factor becomes less important." *Id.* at 719 (internal quotations omitted). Finally, convenience of the parties rarely, if ever, justifies transfer if the transfer would merely shift the balance of inconvenience from the defendant to the plaintiff. *George Mason Univ. Found., Inc. v. Morris*, 3:11-CV-848, 2012 WL 1222589, *9 (E.D. Va. Apr. 11, 2012) *appeal dismissed,* 479 F. App'x 450 (4th Cir. 2012) (citing *Bd. of Trs., Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1259 (E.D. Va. 1988); *E. Scientific Mktg., Inc. v. Tekna–Seal, Inc.*, 696 F. Supp. 173, 180 (E.D. Va. 1988)).

In support of their contention that the Richmond Division would be inconvenient for their parties and witnesses, the Defendants have submitted the declarations of five Shapiro employees. *See* Defs.' Mem. in Supp. of its (sic) Mot. to Transfer and Consolidate Ex. B-F, ECF No. 14. However, these declarations are not entitled to substantial weight. All of the declarations are signed by employees of Defendant Shapiro and there is a presumption that employees of a party can be persuaded to attend court by their employer. *See e.g.*, *Samsung Elect. Co., Ltd*, 386 F. Supp. 2d at 719. The inconvenience to these five potential witnesses, all of whom are employees of Defendant Shapiro, certainly does not outweigh the inconvenience that the Plaintiffs' non-party witnesses would suffer from having to testify in the Norfolk Division. Further, the Defendants have falsely claimed that they do not have any witnesses in the Richmond Division. Defs.' Mem. in Supp. of its (sic) Mot. to Transfer and Consolidate 4, ECF No. 14.   The Defendants certainly employ personnel to conduct foreclosures in the Richmond area.   For example, the Defendants appear personally at each Richmond Division courthouse almost daily to conduct foreclosure sales. A chart showing the Defendants' scheduled foreclosure sales in the month following the filing of this memorandum of law is attached hereto as Exhibit "F".  Upon information and belief, an employee (or employees) of the Defendants located within the

Richmond Division appear at these sales. Additionally, not a single principal of the Defendants is located at their Norfolk satellite office. Kristine D. Brown, Gerald B. Alt, and Gerald M. Shapiro, the principal managers of the Defendants, all work out of the Manassas office, and each of them apparently lives out of state.  Indeed, the majority of the Defendants' past and/or present partners live outside of both the Richmond and Norfolk Divisions – upon information and belief, from the best public record information sources available online:

> Kristine D. Brown lives at 11302 Creek Shore Place, Rockville, Maryland 20852;
>
> John Burson lives at 1816 N. Van Buren Street, Arlington, Virginia 22205;
>
> Joseph Kirsch lives at 600 Roxburch Terrace, # 181, Bel Air, Maryland 21015;
>
> Gerald Shapiro lives at 2140 Painters Lake Road, Highland Park, Illinois 60035;
>
> Don Meinhold lives at 113 Emerald Road, Silverthorne, Colorado 80498;
>
> David Kreisman lives at 4201 Lake Cook Road, Northbrook, Illinois 60062; and
>
> Gerald Alt lives at 1227 W. Gold Road, Libertyville, Illinois 60048.

However, to the extent Defendants assert that their necessary witnesses are in the Norfolk Division, they all but guarantee that Richmond will provide a more certain and easier access to third party proof.  Federal Rules 30 and 45 limit the reach of a deposition or trial subpoena to 100 miles from the respective courthouse. *See* FED. R. CIV. P. 30(a)(1); FED. R. CIV. P. 45(b)(2)(B). For a Norfolk Division case, the rules cannot reach far past Richmond.  It cannot force attendance or production from Northern or Western Virginia witnesses.  In contrast, the Richmond Division is even within 100 miles of Washington, D.C. and Northern Virginia, where Fannie Mae and Freddie Mac, large sources of proof in this case, are located. Nearly every non-party located in the state and region is subject to subpoena within this District and Division given that it is situated centrally within the Commonwealth.

14

There are several former employees of the Defendants that the Plaintiffs intend to call as witnesses in this case that are subject to this Division's subpoena power. Most of these employees worked in the Defendants' Northern Virginia office, still reside in the Northern Virginia area, and would not be subject to the subpoena power of the Norfolk Division under Rule 45. For example, the Plaintiffs intend to offer the testimony of Jose Portillo, who is a resident of Fairfax County. Ex. A., ¶ 2. Jose Portillo worked as a paralegal for the Defendants and witnessed the Defendants' employees forging signatures on several types of legal documents, including on affidavits and trustee's deeds, which form the basis of many of Plaintiffs' claims against the Defendants. *See generally* Ex. A.  The Plaintiffs also intend to seek the testimony of Mary Elisabeth Hennigan, Nicole B. McGuire (formerly known as Nicole Boggs), and Terri Lynn McEuen (formerly known as Terri Matthys). As former employees of the Defendants, all of these individuals have information relating to the Plaintiffs' claims as alleged in the Complaint. Upon information and belief, Ms. Hennigan lives at 4106 Paces Ferry Road, Chester, Virginia 23831 and Ms. McGuire lives at 10809 Hamiltons Crossing Drive, Fredericksburg, Virginia 22408. Both are located in the Richmond Division.  Upon information and belief, Terri McEuen lives at 361 Oakleigh Lane, Bumpass, Virginia 23024, which is located just 42 miles away from the federal courthouse in Richmond and is subject to this Division's subpoena power under Rule 45. Both Ms. McGuire and Ms. McEuen live over 100 miles away from the Norfolk federal courthouse and therefore the Norfolk Division would not be able to compel the testimony of these witnesses under Rule 45.

Furthermore, even if this Court determined that the declarations of Defendant Shapiro employees merited consideration, it would also have to consider the inconvenience that the Plaintiffs would suffer as a result of having to travel to the Norfolk Division to litigate their

claims. There are 44 named plaintiffs in the instant case. All of them have family obligations, jobs, and/or other hardships that would make traveling to the Norfolk Division just as inconvenient as it would be for the five employees to travel to the Richmond Division.

For example, Plaintiffs Ida Beverley, George Boyd, and David Damiani all live and work within half an hour of the Richmond federal courthouse. *See* Decl. of Ida Beverley ¶¶ 3, 5 (attached hereto as Exhibit "G"); Decl. of George Boyd ¶¶ 1, 2, 5 (attached hereto as Exhibit "H"); Decl. of David Damiani ¶¶ 1, 2 (attached hereto as Exhibit "I"). It would be very difficult of them to get enough time off of work in order to litigate their cases in Norfolk, as they all live approximately two hours away from the federal courthouse in Norfolk. Ex. G, ¶ 4; Ex. H, ¶¶ 2, 4; Ex. I, ¶ 4. Additionally, Plaintiff George Boyd has a child who attends school in Henrico County. Ex. H, ¶ 6. If he had to travel to the Norfolk Division to litigate his case, he would have to find someone to care for her while he was traveling to and from Norfolk. *Id.*  Furthermore, Plaintiff David Damiani has a dog that he would have to board if he had to travel to and from Norfolk in order to litigate his case. Ex. I, ¶ 5. Finally, all of these Plaintiffs intend to call witnesses located in the Richmond Division in support of their claims and have other sources of proof located within the Richmond Division. Ex. G, ¶¶ 6-10; Ex. H, ¶¶ 7-11; Ex. I, ¶¶ 6-9.

Similarly, Plaintiffs Sheida Borhani, Mohammad Mohassel, and Michael Ott all live within two hours of the federal courthouse in Richmond. Decl. of Sheida Borhani, ¶ 4 (attached hereto as Exhibit "J"); Decl. of Mohammad Mohassel, ¶ 4 (attached hereto as Exhibit "K"); Decl. of Michael Ott, ¶ 3 (attached hereto as Exhibit "L"). Sheida Borhani and Mohammad Mohassel work approximately two hours away from the federal courthouse in Richmond. Ex. J, ¶ 4; Ex. K, ¶ 4. It would be difficult for both of them to get enough time off of work in order to litigate their cases in the Norfolk Division. Ex. J, ¶ 1, 3; Ex. K, ¶¶ 1, 3. Additionally, each of

these three Plaintiffs have children in school and would have to find someone to care for their children while they traveled to and from the Norfolk federal courthouse, which is approximately a five to seven hour round trip drive and would be made over the course of at least two days. Ex. J, ¶¶ 3, 5; Ex. K, ¶¶ 3, 5; Ex. L, ¶¶ 2, 4. Conversely, if the case remained in the Richmond Division, they would be able to make the trip in one day. Plaintiff Michael Ott would suffer severe hardship if this case were transferred to the Norfolk Division, as he suffers from disc deterioration in his back. Ex. L, ¶ 1. For this reason, it is best that he does not travel long distances, such as the approximately two and a half hour drive to the Norfolk federal courthouse. Ex. L, ¶¶ 1-2. Finally, these Plaintiffs intend to call several witnesses in the Richmond Division in order to support their claims and have documents related to their case located within the Richmond Division. Ex. J, ¶¶ 6-8; Ex. K, ¶¶ 6-8; Ex. L, ¶¶ 5-7.

If this Court were to accept the Defendants' argument that this case should be transferred to the Norfolk Division because of the inconvenience to the Defendants' own employees, it would merely shift the inconvenience from the Defendants to the Plaintiffs, which the Court has previously observed as "rarely, if ever, justified. *See George Mason Univ. Found., Inc.*, 3:11-CV-848, 2012 WL 1222589 at *9; *Bd. of Trs., Sheet Metal Workers Nat'l Fund v.*, 702 F. Supp. at 1259; *E. Scientific Mktg.*, 696 F. Supp. at 180.

### C.    Nearly all sources of proof are located in the Richmond Division.

Just as several non-party witnesses are located in the Richmond Division, so are the non-party sources of proof necessary to the litigation of this case. The vast majority of the foreclosures at issue occurred in the Richmond Division. Similarly, the vast majority of the real estate agents who were involved post-foreclosure are in the Richmond Division. The appraisers who will testify as to the lost equity in these homes are in the Richmond Division.  The relatives,

friends, spouses and neighbors of all Plaintiffs and other class members and who witnessed the foreclosure or attempted foreclosure of the Richmond Division real estate are in the Richmond Division.  And of course, nearly all of the named Plaintiffs are still in the Richmond Division.

There are of course other sources of proof necessarily in the Division.  For example, lenders such as SunTrust Mortgage, which is headquartered in Richmond, are anticipated to be in possession of several documents necessary to the Plaintiffs' RICO claim.  As stated previously, Plaintiffs have alleged that SunTrust, as a servicer, is part of the RICO enterprise and therefore the Plaintiffs will be seeking significant discovery from it, including any contracts or other agreements that it has with the Defendants, the fee structure of its agreement with the Defendants, its part in manufacturing the fraudulent Substitution of Trustee documents used to initiate foreclosure on the Plaintiffs' and putative class members' homes, as well as any documentation in reference to Fannie Mae,  Freddie Mac, FHA and VA loans, including the roles of the foreclosure attorneys in any attempted foreclosures in Virginia.

Furthermore, there are documents related to the Plaintiffs' foreclosures or attempted foreclosures located at various Circuit Courts and Commissioners' of Accounts offices located in the Richmond Division, including those in Caroline County, Chesterfield, Fredericksburg, Hanover County, Henrico County, King and Queen County, Lunenburg County, Powhatan, the city of Richmond, and Spotsylvania County. These documents, including Substitution of Trustee documents, Trustee's Deeds, Deeds of Trust, Foreclosure Accountings, and the documents submitted to the Commissioners of Account to support the Foreclosure Accountings, will help support the Plaintiffs' claims alleged in the Complaint.

**D.     The interests of justice mandate that this case remain in the Richmond Division.**

The interest of justice factor under 28 U.S.C. § 1404(a) "encompasses public interest factors aimed at systemic integrity and fairness. The most prominent elements of systemic integrity are 'judicial economy and the avoidance of inconsistent judgments.'" *Lycos, Inc.*, 499 F. Supp. 2d at 695 (internal citations omitted). In evaluating fairness, the Eastern District of Virginia considers "docket congestion, interest in having local controversies decided at home, knowledge of applicable law, unfairness in burdening forum citizens with jury duty, and interest in avoiding unnecessary conflicts of law." *Id.* (internal citations omitted). However, docket considerations are only a minor consideration where the convenience and other justice factors weigh in favor of transfer. *Id.* at 696 (citing *GTE Wireless, Inc. v. Qualcomm, Inc.*, 71 F. Supp. 2d 517, 520 (E.D. Va. 1999). *See also Cognitronics Imaging Sys., Inc. v. Recognition Research, Inc.*, 83 F. Supp. 2d 689, 699 (E.D. Va. 2000). In fact, docket considerations should not override the other factors weighing against a transfer. *See e.g.*, *The Original Creatine Patent Co., Ltd*, 387 F. Supp. 2d at 752.

Keeping this case in the Richmond Division will not result in inconsistent judgments or unnecessary conflicts of law. As discussed below, the *Boyd* complaint alleges several claims that the Norfolk cases do not, including fraud, civil conspiracy, and RICO violations. Resolving the claims in the *Boyd* complaint will not affect the Norfolk cases or judgments at all. To the extent that there is FDCPA overlap between the *Boyd* and Norfolk cases, there are no legal issues that have not already been addressed in the Eastern District of Virginia, which has become well acquainted with FDCPA claims over the last 15 years and has developed a significant body of case law regarding this statute. Further, it is more likely that the present case will reach

conclusion before the Norfolk cases, each still in its infancy and without either a trial date or a Rule 16(b) conference.

Additionally, since almost all of the foreclosures alleged in this case occurred within the Richmond Division, this Division has an interest in deciding the case, as it is a local controversy. None of the Plaintiffs have any connection whatsoever with the Norfolk Division. Furthermore, this Court is familiar with the legal issues presented by this case, as there are similar cases pending before this Court against other foreclosure attorney firms, many of which are also pending before Judge Payne. *See Naim v. Samuel I. White, P.C.*, 3:11-cv-168 (E.D. Va.) (Payne, J.); *Goodrow v. Friedman & MacFadyen, P.A.*, 3:11-cv-20 (E.D. Va.) (Lauck, M.J.)

And as discussed above, transferring this case to the Norfolk Division will pose significant hardship to Plaintiffs' non-party witnesses located within the Richmond Division. This fact, combined with the hardship that the Plaintiffs will suffer if this case is transferred to Norfolk, as well as the fact that the other justice factors support the Plaintiffs' contention that this case should remain in the Richmond Division, mean that the Court should not place significant weight on the assert that the transfer of this case to the Norfolk Division would result in a reduction of docket congestion. *See Lycos, Inc.*, 499 F. Supp. 2d at 696; *See e.g.*, *The Original Creatine Patent Co., Ltd*, 387 F. Supp. 2d at 752.

In light of all of these factors, the Defendants have not met their burden to show that this case should be transferred to the Norfolk Division. Accordingly, this case should remain in this Court.

## II.   This case should not be consolidated with *Moore* for pretrial and settlement purposes.[3]

The Federal Rules of Civil Procedure provide that, if actions before the court involve a common question of law or fact, a court may consolidate the actions. FED. R. CIV. P. 42(a)(2). Additionally, the court may join for hearing or trial any or all matters at issue in the actions or issue any other orders to avoid unnecessary cost or delay. FED. R. CIV. P. 42(a)(1) & (3). The party seeking the consolidation under Rule 42(a) has the burden of persuading the court that consolidation is desirable. *Diagnostic Devices, Inc. v. Taidoc Technology Corp.*, 3:08-CV-559, 2009 WL 2734835, *2 (E.D. Va. August 26, 2009) (citing 81 A.L.R. Fed. 732). When considering a motion to consolidate, the court considers the risk of inconsistent adjudications of common legal and factual issues; the burden on the parties, witnesses, and judicial resources posed by multiple lawsuits; the length of time required to conclude multiple suits as against a single one; and the relative expense to all concerned of the single trial versus multiple-trial alternatives against the specific risks of prejudice and possible confusion which might result from consolidation. *See Arnold v. Eastern Air Lines, Inc.*, 681 F.2d 186, 193 (4th Cir. 1982). To consolidate the instant case with the cases already pending in the Norfolk Division would pose a burden to Plaintiffs' non-party witnesses, would drastically increase the time to conclude all of the lawsuits, and would result in confusion of the legal issues in the case. Further, there is little basis to even consider the request given that the Norfolk Division cases before Judges Allen and Jackson remain in their infancy and that discovery has not even commenced.

---

[3] Defendant's counsel's argument in the present motion is remarkable given the fervency with which the same defense team fought to avoid consolidation of a much more appropriate set of cases in *Adkins v. Encore Capital Group, Inc.* and transfer of a set of Norfolk cases into the Richmond Division. *See Adkins v. Encore Capital Group, Inc.*, Civil Action No. 3:11-cv-00334-JRS ECF No. 21 (E.D. Va., September 22, 2011).

In support of their Motion to Consolidate, the Defendants urge the Court to believe that the issues in this case are virtually identical to the issues in the cases pending in the Norfolk Division. *See* Defs.' Mem. in Supp. of its (sic) Mot. to Transfer and Consolidate 2, 3, 6, 7 21, 22, ECF No. 14. In support of their position, the Defendants offer a chart purporting to show the similarities between all of the cases. Defs.' Mem. in Supp. of its (sic) Mot. to Transfer and Consolidate 6, ECF No. 14. However, the Defendants' chart is misleading in that the state court claims in the *Andrade* case were dropped in that case's First Amended Complaint, leaving only FDCPA claims. *See Andrade v. Shapiro & Burson, LLP,* 2:11cv523, ECF No. 27 (E.D. Va. February 23, 2012). Once the chart is corrected, it becomes clear that the cases pending before the Norfolk Division contain almost exclusively FDCPA claims.[4] The instant case contains several claims that are not in the other complaints, including fraud, civil conspiracy, and, most importantly, a RICO claim. These additional claims set the *Boyd* complaint well apart from the cases pending in the Norfolk Division and are evidence of the fact that the *Boyd* case shares only minimal common questions of law or fact with the Norfolk cases.

Even if the Court does find that the cases share enough common issues of law and fact to warrant consolidation, consolidation would drastically increase the time to conclude all of the lawsuits. Litigating the additional issues of law and fact raised by the *Boyd* case, specifically the fraud, civil conspiracy, and RICO counts, will extend the time it would otherwise take the court to resolve the issues in the Norfolk cases, which are almost exclusively FDCPA claims. Additionally, most of the FDCPA claims in the Norfolk cases are brought on behalf of an individual, whereas the *Boyd* FDCPA claims are brought on behalf of a class. Consolidating the

---

[4] The *Campos-Carranza and Redditt* cases also contain a breach of fiduciary duty claim. The *Campos-Carranza* case also contains a declaratory judgment claim, which is not found in any of the other cases.

*Boyd* class claims will extend the time that it would otherwise take to resolve the individual FDCPA class claims, as a class certification motion will have to be heard and decided by the court. Furthermore, the *Boyd* plaintiffs will have to conduct a significantly greater amount of discovery in order to sufficiently investigate their RICO claims. This will prejudice the Norfolk plaintiffs, who do not have to conduct discovery on those issues in order to prove their case.

Consolidating the *Boyd* case with the Norfolk cases would also result in confusion of the legal issues in the case. None of the plaintiffs in the Norfolk cases have alleged a RICO violation, civil conspiracy, or fraud. If the *Boyd* case was consolidated with the Norfolk cases, Plaintiffs believe that the Defendants would attempt to merge these complex legal issues into the other cases, which would not only be inappropriate, but would prolong the resolution of those cases.

Consolidating the cases would also be burdensome to the Plaintiffs' non-party witnesses. As discussed above, Plaintiffs intend to seek the testimony of several non-party witnesses located within the Richmond Division, including without limitation, witnesses from the HUD field office in Richmond, SunTrust Mortgage, and friends and family members of the Plaintiffs. Forcing these witnesses to travel to the Norfolk Division to testify in a courthouse over 100 miles away would severely impact the Plaintiffs' ability to present this testimony before the court.

Based on the factors as discussed above, including the absence of significant common issues of law and fact, an increase in the time it would take to conclude the already pending Norfolk cases, confusion of legal issues in the cases, and the burden on non-party witnesses, the Defendants have not met their burden to show that consolidation of these cases is warranted and therefore their Motion to Consolidate should be denied.

## CONCLUSION

For the reasons stated above, the Defendants' Motion to Transfer and Consolidate should be denied.

Respectfully submitted,
**PLAINTIFFS,**
*individually and on behalf of all*
*others similarly situated*


By: _____/s/_____
                    Of Counsel


Matthew J. Erausquin, VSB No. 65434
Janelle E. Mason, VSB No. 82389
Casey S. Nash, VSB No. 84261
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
Tel:    (703) 273-7700
Fax:    (888) 892-3512
matt@clalegal.com
janelle@clalegal.com
casey@clalegal.com

Kristi C. Kelly, Esq., VSB No. 72791
SUROVELL ISAACS PETERSEN & LEVY PLC
4010 University Drive, Suite 200
Fairfax, VA 22030
Telephone 703.251.5400
Facsimile 703.591.9285
kkelly@siplfirm.com

Leonard A. Bennett, VSB No. 37523
Susan M. Rotkis, VSB No. 40693
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, VA 23601
Telephone (757) 930-3660
Facsimile (757) 930-3662 Facsimile
lenbennett@clalegal.com
srotkis@clalegal.com

Dale Wood Pittman, VSB No. 15673
THE LAW OFFICE OF DALE W. PITTMAN, P.C.
112-A W Tabb Street
Petersburg, VA 23803-3212
Telephone (804) 861-6000
Facsimile (804) 861-3368
dale@pittmanlawoffice.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 29th day of January, 2013, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

John C. Lynch (VSB No. 39267)
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone: (757) 687-7765
Facsimile: (757) 687-1504
john.lynch@troutmansanders.com

*Counsel for the Defendants*

_____/s/_____
Casey S. Nash, VSB No. 84261
Consumer Litigation Associates, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
Tel:     (703) 273-7700
Fax:     (888) 892-3512
casey@clalegal.com
